# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-mj-08175-BER

UNITED STATES OF AMERICA,

    v.

THIAGO DE SOUZA PRADO,

    Defendant.
_____/

## RELEASE ORDER

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987).

The Government moves to detain Defendant Thiago De Souza Prado without bond pending trial. *See* 18 U.S.C. §3142. Mr. Prado is charged by Indictment in the District of Massachusetts with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 3149. The Government moved for pre-trial detention of Defendant on the basis of risk of nonappearance. I held a detention hearing on May 21, 2021. After stating my reasons on the record, I orally ordered Mr. Prado released on conditions, including electronic monitoring. This Order summarizes and further explains my conclusion that pretrial detention is not justified. At the Government's request, I stayed the release order to allow an appeal to the District of Massachusetts. 18 U.S.C. § 3145(a)(1).

## BACKGROUND

**1. The Bond Order**

I ordered Mr. Prado released on a $100,000 personal surety bond with

conditions. In addition to standard conditions of release, such as no firearms, no contact with victims or witnesses, and no possession of a passport, I imposed special conditions pursuant to 18 U.S.C. § 3142(c)(1)(B), including that Mr. Prado is to be on electronic monitoring and his wife is to surrender her passport.

### 2. The Bail Reform Act

An arrested individual must be brought before a judicial officer "without unnecessary delay." Fed. R. Crim. P. 5(a)(1)(A). The person is entitled to a judicial determination whether he will (1) be released on personal recognizance or an unsecured appearance bond, (2) be released on a condition or combination of conditions, (3) detained temporarily to permit revocation of conditional release, deportation, or exclusion, or (4) detained pending trial. 18 U.S.C. § 3142(a). Under limited circumstances, the Government can request a pretrial detention hearing, at which the Court must determine "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Notably, the conditions need not definitively *ensure* the defendant's appearance; they must merely *reasonably assure* that appearance.

The Government may request a detention hearing for (1) a crime of violence, 18 U.S.C. § 3142(f)(1)(A), (2) an offense for which the maximum sentence is life imprisonment or death, 18 U.S.C. §3142 (f)(1)(B), (3) an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 18 U.S.C. § 3142(f)(1)(C), (4) a felony that involves a minor victim or involves

2

possession of a weapon, 18 U.S.C. § 3142()(1)(D), (5) a case that involves a serious risk that the defendant will flee, 18 U.S.C. § 3142(f)(2)(A), and (6) a case involving a serious risk of obstruction of justice or witness tampering. 18 U.S.C. § 3142(f)(2)(B); *see United States v. Giordano*, 370 F. Supp. 2d 1256, 1260 (S.D. Fla. 2005) (J. Torres) ("It is uniformly accepted, based upon these provisions of the statute and the relevant legislative history, there are only six instances that permit a court to convene a detention hearing."). At the detention hearing, the Court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C.A. § 3142(g).

A defendant can be detained only if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §

3

3142(e)(1). The Government must establish by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance as required. United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).

In assessing a defendant's risk of non-appearance, the Court considers multiple factors, such as:

> whether a defendant has substantial foreign ties, has access to considerable funds to finance flight from the jurisdiction, or has manifested or demonstrated an intent to flee if arrested . . . [M]ore than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of flight. A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention.
>
> Relevant factors that support a serious risk finding include the use of a number of aliases, unstable residential ties to a community, efforts to avoid arrest, or hidden assets. Evidence of a serious intent to flee the country in response to an indictment also justifies detention as a serious risk of flight. Of course, evidence that a defendant had already attempted to flee prosecution would certainly bolster a finding of a serious risk of flight, especially where the defendant had foreign contacts who could aid in his flight.
>
> In economic fraud cases, it is particularly important that the government proffer more than the fact of a serious economic crime that generated great sums of ill-gotten gains. Merely having access to significant funds is not enough; evidence of strong foreign family or business ties is necessary to detain a defendant even in the face of a high monetary bond.

*Giordano*, 370 F. Supp. 2d at 1263–64 (citations omitted).

If the Court determines that release on conditions is appropriate, it must impose "the least restrictive further condition, or combination of conditions," that will reasonably assure the Defendant's appearance and the safety of the community. 18

4

U.S.C. § 3142(c)(1)(B); *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (per curiam)(policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant."). Those conditions may not include "a financial condition that results in the pretrial detention of the Defendant." 18 U.S.C § 3142(c)(2).

## FINDINGS

The sole basis for the Government to request a detention hearing here was that Mr. Prado poses a "serious risk of flight." *See* 18 U.S.C. § 3142(f)(2)(A). There is no other statutory basis for a detention hearing. Although I could not locate any precedent defining the standard for a "serious risk of flight" under Section 3142(f)(2)(A), textually, a "serious" risk of flight is a heightened level of risk. *See* SERIOUS, Black's Law Dictionary (11th ed. 2019) ("weighty; important"). Not just any possibility of flight will be sufficient to entitle the Government to seek pretrial detention.

The Court makes the following findings regarding the § 3142(g) factors. The evidence at the hearing consisted of the Pretrial Services Report, the affidavit in support of the Criminal Complaint, the Indictment, the Government's proffer, Mr. Prado's proffer, and the testimony of FBI Analyst Bryn Schweda.

1. **Nature and Circumstances of the Offense**

The offense alleged here is an economic crime punishable by up to 20 years imprisonment. There is no allegation that it involved the possession or use of a firearm or other weapon. There is also no suggestion of obstruction of justice or witness tampering. The Government alleges that the offense involved the use of the

5

dark web, the fraudulent acquisition of personal identifying information, and the use of technology to mislead a GPS device.

**2. Weight of the Evidence**

The Indictment establishes probable cause that Mr. Prado participated in a large-scale conspiracy to defraud ride-sharing and delivery companies. The evidence of his involvement is substantial. The affidavit in support of the Criminal Complaint describes Mr. Prado's role in the scheme as:

> The investigation has revealed that, as part of the scheme, PRADO prepared and submitted applications using fraudulent identifiers; rented and sold fraudulent driver accounts; purchased and traded driver's licenses and Social Security numbers; sold GPS "spoofing" technology to drivers; and exchanged information with other conspirators about how to circumvent the Rideshare/Delivery Companies' fraud detection systems.

Complaint Affidavit ¶ 77. It is unclear how much money Mr. Prado personally obtained from the alleged scheme. He faces significant penalties if convicted.

**3. History and Characteristics of the Defendant**

Mr. Prado is a Brazilian national who came to the United States on a non-immigrant visa in 2003. He overstayed his authorized entry and is therefore presently subject to removal proceedings. There is an immigration detainer in place. He has been married since 2017. His wife is also a Brazilian national who lacks immigration status, although she is seeking asylum based on being in physical danger if she returns to Brazil. Mr. Prado has a valid Brazilian passport. He resided in Massachusetts from 2003 until early 2021, when he, his wife, their infant child, and his 15-year-old stepson relocated to Boca Raton, Florida. His mother and two sisters reside in Massachusetts, as does his 14-year-old son from a prior relationship.

6

He has minimal assets, which are exceeded by his debts.

### 4. Defendant's Criminal History

Mr. Prado's criminal history involves multiple motor vehicle related charges with unknown dispositions. There are also two domestic violence charges, both of which were dismissed. He has one conviction – for a motor vehicle offense in 2015. He has no record of failing to appear in court as required.

### 5. The Nature and Seriousness of the Danger to Any Person or the Community that would be posed by the Defendant's Release

The Government is not seeking detention based on danger to the community.

## DISCUSSION

In support of its request for pretrial detention, the Government proffered that several co-conspirators tried to flee from the United States when they learned of the charges. It also proffered that, as a practical matter, Brazil does not extradite its own citizens.

I disregard the first argument. There is no evidence of Mr. Prado's relationship to these third parties who attempted to flee, including no evidence that he was aware that they tried to flee or that he assisted in those efforts. It would be improper to impute their conduct to Mr. Prado. The issue before me is whether *Mr. Prado* presents a serious risk of flight that cannot be mitigated by conditions of release, not whether other people pose such a risk. Mr. Prado's situation must be assessed solely based on his own conduct and situation.

I give little weight to the second argument. I acknowledge that a defendant

7

may be motivated to flee if he knows extradition is unlikely.[1] That motivation must be considered in the context of whether the defendant has other motives to flee, has the ability to flee, and whether conditions can sufficiently mitigate that risk. For the reasons discussed below, those other factors over-ride any inference arising from Mr. Prado knowing that extradition is unlikely.

The Pretrial Services Report reflects several alleged aliases, all of which appear to be permutations of Mr. Prado's correct name. I give that evidence no weight. The charged offense involved acquiring and using false identification information from the dark web and manipulating a GPS device. I recognize that this evidence creates an inference that Mr. Prado can evade the Court's location monitoring system, obtain false identification, and abscond. I discount this inference because there is no evidence in the record that the technology used to manipulate the ride-sharing GPS system could defeat the Court's location monitoring technology.

Mr. Prado has no current ties to Brazil. His mother, sisters, wife, and children all live in the United States. He left Brazil almost two decades ago and has not returned. There is no evidence that he has family there, today. He also lacks the economic ability to flee and sustain himself and his family. Finally, requiring Mr. Prado and his wife to surrender their passports and placing him in a location monitoring program would make it extremely difficult for him to flee the country with an infant child. Together, these conditions reasonably assure his presence as

---

[1] There is no evidence in the record that Mr. Prado was aware of Brazil's alleged non-extradition policy prior to the Government's proffer at the hearing.

8

required.

As further conditions designed to reasonably assure Mr. Prado's presence in court, I considered requiring his mother and/or sisters to co-sign his appearance bond. I also considered authorizing Pretrial Services to conduct searches of his computers and other electronic devices to ensure that he was not accessing the dark web. Ultimately, given Mr. Prado's waiver of removal and the other factors that indicated he would not flee between the time of his release here and his appearance in Massachusetts, I concluded these additional conditions were best left to the discretion of the court with original jurisdiction.

## **CONCLUSION**

When the Government seeks to detain a presumptively-innocent citizen before trial, it must support that request with competent and credible evidence sufficient to meet its burden of proof. The Government has not met its burden of showing by a preponderance of the evidence that no condition or combination of conditions is sufficient to reasonably assure the Defendant's appearance as required. In particular, a preponderance of the evidence does not show that the conditions I imposed are insufficient to reasonably assure Mr. Prado's appearance as required. Although I did not articulate this alternative basis in my oral ruling, after further review of the record, I also find that the Government did not meet its threshold burden of showing that Mr. Prado poses a *serious* risk of flight. As such, the Government cannot seek pretrial detention.

For the foregoing reasons, it is hereby **ORDERED** that the Government's

motion for Pretrial Detention is **DENIED** and that Mr. Prado be released on the conditions announced from the bench on May 21, 2021. This Order is **STAYED** pending further order of the United States District Court for the District of Massachusetts.

**DONE and ORDERED** in chambers at West Palm Beach, Florida, this 24th day of May, 2021.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE