IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-cr-10158-7-MLW |
| ) | |
| (7) THIAGO DE SOUZA PRADO ) | |
| ) | |
| Defendant ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT THIAGO PRADO'S
MOTION FOR PRE-TRIAL RELEASE**

The government respectfully files this opposition to Defendant Thiago Prado's *pro se* motion for pre-trial release (ECF No. 542-1) (the "Motion"), in which he contends that his pre-trial detention to date exceeds the limitations of the Fifth Amendment's Due Process Clause.

The First Circuit considers several factors in assessing whether continued detention violates a defendant's due process rights, including (1) "the seriousness of the charges," (2) "the strength of the government's proof that defendant poses a risk of flight or a danger to the community," (3) "the strength of the government's case on the merits," (4) "the length of the detention that has in fact occurred," (5) "the complexity of the case," and (6) "whether the strategy of one side or the other has added needlessly to that complexity." *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986). Here, these factors do not support Prado's claim that his pretrial detention violates his due process rights.

First, the potential sentence that Prado faces highlights that these charges are serious. If convicted on both counts, Prado will serve a two-year mandatory minimum sentence for aggravated identity theft, as well as an additional, potentially lengthy sentence for his role in the charged wire fraud conspiracy, based in part on hundreds of thousands of dollars in losses attributable to Prado. *See* ECF No. 263 at 47 (transcript from November 22, 2021 detention

1

hearing) ("The Government estimates, without dispute at this point, that basically the advisory guideline range for the wire fraud charges, if proven, are about 46 to 78 months depending on whether the defendant would get acceptance of responsibility[.]").  The allegations in the Indictment place Prado at the heart, rather than at the periphery, of the conspiracy.  *See* ECF No. 189, Second Superseding Indictment, at ¶¶ 39 (obtaining driver's licenses), 40-41 (procuring Social Security numbers), 47 (applying for driver accounts using fraudulently obtained identifiers), 53 (circumventing companies' fraud detection systems), 55 (purchasing and selling GPS "spoofing" technology), 56 (arranging driver's license editing).  The Indictment describes coordinated activity by Prado and co-conspirators that relied on systematic identity theft and involved deception on a large scale.

Second, with respect to proof of flight risk, the Court previously concluded, at the November 22, 2021 detention hearing, that several factors created "a substantial incentive for the defendant to flee," including that he is likely to be deported, that his spouse also was subject to removal, that Brazil (Prado's home country) does not extradite its citizens, that Prado could flee to other parts of the United States or to Mexico, and that similarly situated defendants in this case fled or attempted to flee.  ECF No. 263 at 49-51.  Further, the Court noted that "[t]he evidence indicates [Prado] knows how to make and obtain false identification, including [] fraudulent Social Security cards, fraudulent drivers' licenses."  *Id*.  Prado continues to present a flight risk that no combination of release conditions could reasonably mitigate.[1]

---

[1] At the detention hearing, the government highlighted Prado's acquisition and active use and distribution of GPS "spoofing" technology, which enables users to manipulate the location data projected from electronic devices. ECF No. 263 at 20-22. The government also stressed that four similarly situated co-defendants had crossed into Mexico and flown, or attempted to fly, to Brazil to avoid prosecution, and that a fifth co-defendant was unaccounted for. *Id*. at 27-29.

Third, the Court previously observed that the weight of the evidence against Prado, as described by the government at the November 22, 2021 detention hearing, is "very strong." ECF No. 263 at 48 ("The Government's evidence, as explained to me, includes 4,100 WhatsApp chats between Prado and his co-defendant Aguiar where they discussed the details of the scheme; bank records; also [Zelle] transfers of about $110,000 to the defendant's accounts through apps; rideshare records; evidence that the defendant personally altered at least 12 driver's licenses by putting his own picture on them. In addition, there are cooperating witnesses."). The Court's observation remains accurate.

Fourth, as to the length of Prado's pretrial detention, there is little or no indication that Prado's pretrial detention will last considerably longer. To date, Prado has been detained for approximately 16 months. In its Order canceling a pretrial conference schedule for August 24, 2022, the Court stated that it would "reschedule the hearing on Prado's [pending pretrial] motions and initial pretrial conference after any additional Rule 11 hearings are completed on or about October 27, 2022, and it has become clear whether any defendants in addition to Prado wish to proceed to trial." ECF No. 532 at 2. Every remaining defendant has stated that he intends to plead guilty. *See* ECF Nos. 490 (Clovis Placido), 504 (Philipe Pereira), 508 (Luiz Neto), 519 (Alessandro Da Fonseca), and 530 (Altacyr Neto).

The First Circuit in *Zannino* suggested that "in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement." However, courts following *Zannino* have considered due process challenges to pretrial detention on a case-by-case basis and found that similar periods of detention did not violate defendants' due process rights. *See*, *e.g.*, *United States v. Tortora*, 922 F.2d 880, 889 (1st Cir. 1990) ("At this stage of the proceedings, Tortora's pretrial incarceration" of more than a year and a half "has not been

so protracted as to support a due process claim."); *United States v. Carrozza*, 807 F. Supp. 156, 157 (D. Mass. 1992), *aff'd*, 4 F.3d 70 (1st Cir. 1993) ("All five defendants were detained pending trial, some for more than two years. After taking testimony and receiving other evidence, the court in December 1991 denied their motions to be released on Due Process and Sixth Amendment grounds." (citing *Zannino*)); *United States v. Montrond*, No. 09-cr-10278-NMG, 2011 WL 1560932, at *3 (D. Mass. Apr. 25, 2011) ("While [sixteen months is] a significant period of time, I do not feel that his length of incarceration standing alone, is violated of due process, given that he faces a mandatory minimum sentence of five years if convicted of the offenses charged, *i.e.*, substantially longer than sixteen months."); *cf. United States v. Cardona*, No. 17-cr-30072-TSH, 2020 WL 1905308, at *2 (D. Mass. Apr. 17, 2020) (finding that a 32-month period of pretrial detention would "cross the threshold from permissible regulation into impermissible punishment" under the circumstances of the case, where record indicated defendant played lesser role in conspiracy and did not cause any of the delay in his trial); *United States v. Daniels*, No. 98-cr-30040-MAP, 2000 WL 1611124, at *6 (D. Mass. Oct. 5, 2000) (ordering release of defendant who had been detained for two years under the presumption pursuant to 18 U.S.C. § 3142(e), where "resolution of [a significant pretrial] matter, conservatively speaking, is several months off and trial, if called for, even later" and after finding defendant was not "palpably dangerous" and defendant's proposed conditions of release would reasonably assure his appearance).

Fifth, this is a complex case, with eighteen defendants and evidence comprising voluminous WhatsApp and text messages, mostly in Portuguese; bank and Zelle records; records from several rideshare and delivery service companies; and one or more cooperating witnesses. Following the government's completion of automatic discovery, counsel for co-defendants requested additional periods of time to review the discovery and to discuss potential plea

4

agreements with the government. *See* Status Reports, ECF Nos. 151, 191, 228, 274, 306, and 371. The complexity of this case justifies the period during which Prado has remained detained. *See*, *e.g.*, *Montrond*, 2011 WL 1560932, at *3 ("Furthermore, this is a complex case involving multiple defendants, a cooperating witness, and audio/video recordings.").

Finally, the government has not delayed resolution of the charges against Prado. The government completed automatic discovery with respect to the original Indictment on June 25, 2021 and completed additional automatic discovery relevant to the Second Superseding Indictment on November 15, 2021. *See* ECF No. 406 (Final Status Report). While Prado is entitled to file pretrial motions, the government does not bear responsibility for delays from briefing and resolving these motions. *See Montrond*, 2011 WL 1560932, at *3 ("There is nothing to suggest that the Government has deliberately delayed the case.").[1]

In sum, Prado's sixteen-month detention alone does not support his due process argument, and the other *Zannino* factors favor his continued detention. As one court has opined, "[a]s a general rule, the stronger the justification for keeping a defendant in detention, the longer he or she can be detained without violating the due process clause." *United States v. Beverly*, 1988 WL 36988, at *2 (N.D. Ill. April 8, 1988). There remain strong reasons for keeping Prado in detention, especially where, here, the Court has indicated that Prado can expect a pretrial conference to be scheduled in the near future. Accordingly, Prado's motion should be denied.

---

[1] Prado speculates that four co-defendants "decided to postpone their rule 11 hearings seeking to wait on Mr. Prado's outcome." Motion at 3. This interpretation is contradicted by the motions to continue filed by each of these defendants. *See* ECF No. 490 (Placido's motion, requesting continuance for purposes of consulting immigration counsel and presenting a possible alternate disposition for the government's consideration); ECF No. 504 (Pereira's motion, based on counsel's pre-planned vacation); ECF No. 508 (L. Neto's motion, requesting continuance to allow further discussion with the government about reaching agreement as to loss amount); and ECF No. 519 (Da Fonseca's motion, citing "remain[ing] issues, identified and raised today, which would make a plea premature").

                                        Respectfully Submitted,

                                        RACHAEL S. ROLLINS
                                        United States Attorney

By:    */s/ David M. Holcomb*
            KRISTEN A. KEARNEY
            DAVID M. HOLCOMB
            Assistant U.S. Attorneys

Dated: September 29, 2022

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including standby counsel for *pro se* Defendant Thiago Prado, and that a paper copy will be sent by mail to Prado.

Dated: September 29, 2022

/s/ David M. Holcomb
DAVID M. HOLCOMB
Assistant U.S. Attorney