IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-10158-7-MLW |
| | ) | |
| THIAGO DE SOUZA PRADO, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S TRIAL BRIEF ADDRESSING
ANTICIPATED TRIAL ISSUES**

The government herein addresses several anticipated procedural, evidentiary, and substantive issues that may arise at the trial scheduled for March 6, 2023.

**I.    DEFENDANT'S *PRO SE* STATUS**

On December 17, 2021, the Court granted defendant Thiago Prado's motion to proceed *pro se*, granted attorney John F. Palmer's motion to withdraw as the defendant's counsel, and appointed Mr. Palmer to serve as standby counsel for the defendant "at least with regard to pretrial proceedings." ECF No. 257. The defendant's *pro se* status presents special considerations regarding his preparation for trial and his conduct at trial.

**A. Protective Order**

At the outset of this case, the parties moved the Court to enter a protective order that would "enable the government to produce relevant evidence to the defendants while protecting confidential information, including victim Social Security numbers and driver's license numbers, and defendant bank account numbers." ECF No. 105. The Court entered the operative Protective Order on June 15, 2021, ECF No. 109. Among other things, the Protective Order provides that, with respect to discovery materials marked "confidential," no copy of such materials may be left in the possession of the defendant, nor may the defendant write down, photograph, or otherwise record the

1

content of confidential discovery materials. The Protective Order further provides that "[t]he defendant may access and view the Confidential Discovery Materials solely in the presence of the defense (defense counsel or their office staff) and under the direct supervision and control of the defense." Given the nature of the charges here involving identity theft of thousands of victims, the government marked a bulk of its productions "confidential" where redacting victims' and co-conspirators' personally identifying information would have been unduly burdensome and, more importantly, would have severely limited the utility of the materials produced.

The government produced automatic discovery to the first appointed counsel for the defendant on or about June 21, 2021 and June 25, 2021. The government re-produced this discovery to Mr. Palmer after the Court appointed him to represent the defendant, on or about October 15, 2021. The government produced additional discovery to Mr. Palmer on or about November 15, 2021, after the grand jury returned the Second Superseding Indictment charging the defendant with aggravated identity theft. The government provided additional disclosures to the defendant on January 9, 2023 pursuant to the Court's Pretrial Order (ECF No. 621); at that time, the government provided Mr. Palmer with additional materials that were marked "confidential."

Consistent with the Protective Order and the scope of standby counsel's appointment, the defendant should review confidential discovery materials only in the presence of standby counsel in preparing his defense for trial, absent any modification of the Protective Order. The Protective Order's restrictions on the dissemination of documents containing confidential information of both identity theft victims and co-conspirators remain appropriate based on the defendant's continued detention and the risk that confidential information could be used or transmitted from within the detention facility. As of this filing, the government has not been advised that the Protective Order has presented any issues for defendant Prado in his preparation for trial.

### B. Conduct of Trial with Standby Counsel

The defendant has a constitutional right to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 836 (1975). However, *pro se* litigants are not excused from compliance with procedural rules. *Eagle Eye Fishing Corp. v. United States Department of Commerce*, 20 F.3d 503, 506 (1st Cir.1994). "Basic rules of courtroom protocol and procedure impose an obligation, both on counsel and on individuals acting as their own counsel, to comply with court rules and not file frivolous motions." *United States v. Gomez-Rosario*, 418 F.3d 90, 101 (1st Cir. 2005). Thus, the appointment of standby counsel to advise the defendant "is for the Court's benefit." *United States v. Friel*, 436 F. Supp. 2d 187, 189 (D. Me. 2006); *United States v. Gómez–Rosario*, 418 F.3d 90, 99 (1st Cir.2005) ("A court may appoint standby counsel even over the defendant's objections.").

Nevertheless, "the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. . . . If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded." *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984). Further, "participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.*

The *McKaskle* standards do not prohibit a district court from employing standby counsel to "ensure the defendant's compliance with basic rules of courtroom protocol and procedure." *Id.* at 183. For example, in *United States v. Gomez-Rosario*, 418 F.3d 90 (1st Cir. 2005), the First Circuit found that the district court had not abused its discretion in requiring standby counsel to screen a *pro se* defendant's motions and report those that standby counsel determined, in her

3

professional judgment, to be frivolous.  The First Circuit found that "[standby counsel's] ability to block [defendant] from filing motions that were irrelevant or 'totally out of bounds' cannot be said to constitute either interference with a 'significant tactical decision' or a preemption of [defendant's] ability to speak on a 'matter of importance.'"  *Gomez-Rosario*, 418 F.3d at 101 (quoting *McKaskle*).

In this case, the defendant has filed more than 20 *pro se* motions, many of which relied on clearly erroneous understandings of substantive law.  *See*, *e.g.*, ECF No. 339 (contending that 18 U.S.C. § 1349 lacks a penalty provision); ECF No. 368 (asserting that there is no federal offense of conspiracy to commit wire fraud).  Consistent with *McKaskle*, the Court may rely on standby counsel at trial to limit frivolous motions by the defendant without depriving the defendant of actual or apparent control over his own case.  Likewise, if necessary, the Court can and should enlist standby counsel to limit frivolous lines of questioning and any attempt by defendant Prado to elicit evidence the Court has deemed inadmissible.

## II.    EVIDENTIARY ISSUES

The government has filed motions *in limine* requesting that the Court make preliminary findings as to the authenticity and/or admissibility of certain evidence that the government anticipates offering at trial, including written and recorded communications between the defendant and co-conspirators.

### A. Admissibility of English Translations

The government anticipates offering into evidence English translations of Portuguese communications.  The government will seek a stipulation from the defendant that the translations that the government will offer into evidence are accurate.  However, if the defendant does not stipulate to the accuracy of the translations, the government will offer testimony by the translator(s)

who prepared the translations regarding the qualifications of the translator(s), the process of preparing the translations, and the accuracy of the prepared translations. *See*, *e.g.*, *United States v. Rengifo*, 789 F.2d 975, 982-83 (1st Cir. 1986) (noting that two translators testified that they transcribed conversations in Spanish and then translated them into English, and that defense counsel cross-examined the translators about their familiarity with different Spanish dialects). If the defendant does not articulate a challenge to the accuracy of the translations, then these translations should be admitted into evidence. *See United States v. Font-Ramirez*, 944 F.2d 42, 49 (1st Cir. 1991) ("In failing to submit an alternative [English translation] transcript or to raise specific objections, [defendant] lost the opportunity to effectively contest its admission.").

### B. Admissibility of Defendant's Statements

The defendant's statements, if offered by the government, are non-hearsay because they are statements of a party opponent. Fed. R. Evid. 801(d)(2)(A). The government may also introduce statements, whether oral or written, of third parties to provide necessary context or background to understand the defendant's statements. *See, e.g.*, *United v. Page*, 521 F.3d 101, 106 (1st Cir. 2008); *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995). Unlike the government, the defendant may not offer or elicit his own prior statements at trial because those statements are hearsay as to him. *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007). The defendant is not permitted to circumvent this rule by eliciting his own statements through the cross-examination of other witnesses. *United States v. Bauzo-Santiago*, 49 F. Supp. 3d 155, 157 (D.P.R. 2014) (prohibiting defendant from eliciting defendant's "out-of-court statement during cross-examination of government witnesses to impeach the witnesses") (citing *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) and *United States v. Hudson*, 970 F.2d 948, 956 (1st Cir. 1992)). Further, merely because the government presents only a subset of the defendant's out-of-court

statements, the defendant is not entitled to present other statements under the rule of completeness absent a need to avoid "misunderstanding or distortion." *United States v. Simonelli,* 237 F.3d 19, 28 (1st Cir. 2001) (rule of completeness "does not permit the admission of otherwise inadmissible evidence simply because one party has referred to a portion of such evidence, . . . rather, it operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement").

### C. Admissibility of Co-Conspirator Statements

The defendant is charged with a conspiracy to create fraudulent driver accounts with rideshare and delivery companies and to rent or sell the accounts to individuals who might not otherwise qualify to drive for those services (Count 1). The contours of the charged conspiracy, as well as descriptions of other co-conspirators involved, have been provided to the Court at 13 change of plea hearings to date. As described at these hearings, and as will be demonstrated at trial, each defendant worked with one or more co-conspirators over the course of the charged conduct—variously, by sourcing personally identifiable information ("PII") like Social Security numbers and driver's license information for each other, by creating the fake driver accounts with the rideshare or delivery companies, by distributing fake driver accounts to other individuals to use, by consulting with each other about how to keep fake accounts from being deactivated by the rideshare and delivery companies; and by using unauthorized technology like GPS "spoofing" or "bots" to further profit from the use of fake accounts. For all of these individuals who conspired with the defendant, their statements during the charged period are admissible under Fed. R. Evid. 801(d)(2)(E).

"Under Rule 801(d)(2)(E), an out-of-court statement made by a party's co-conspirator during and in furtherance of the conspiracy does not constitute inadmissible hearsay, even when

admitted for its truth." *United States v. Pena*, 24 F.4th 46, 61 (1st Cir. 2022) (*citing United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977) and Fed. R. Evid. 801(d)(2)(E)). Under *Petrozziello*, the Court must determine whether, "(1) when the statement was made, the declarant was a member of a conspiracy, (2) the defendant was also (or later became) a member of the same conspiracy, and (3) the statement was made in furtherance of that conspiracy." *United States v. Weadick*, 15 F.4th 1, 8 (1st Cir. 2021) (citing *United States v. Saccoccia*, 58 F.3d 754, 778-79 (1st Cir. 1995)); *accord Pena*, 24 F.4th at 61. A *Petrozziello* finding is made under a "preponderance of the evidence" or "more likely than not" standard, *Petrozziello*, 548 F.2d at 23, after consideration of the totality of the evidence, *United States v. Mitchell*, 596 F.3d 18, 23 (1st Cir. 2010).

The Court must make that *Petrozziello* inquiry at the close of all evidence. *See, e.g.*, *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980) (holding that the *Petrozziello* finding is to be made "at the close of all the evidence" and noting that "requiring trial courts to delay *Petrozziello* rulings until the conclusion of all the evidence would not create any significant additional demands or difficulties"); *accord United States v. Mangual-Garcia*, 505 F.3d 1, 8 (1st Cir. 2007) ("[T]his circuit requires the court to delay its final *Petrozziello* determination until the close of all evidence."). Thus, to the extent the defendant objects to the admissibility of co-conspirator statements offered under Rule 801(d)(2)(E), the Court may nevertheless conditionally admit them and, at the close of all the evidence, make a final determination out of the hearing of the jury. *Ciampaglia*, 628 F.2d at 638.

### D. Admissibility of Business Records and Public Records

The government intends to introduce certain business records, including bank account records, under Fed. R. Evid. 803(6) and 902(11). As is required by Fed. R. Evid. 902(11), the

government has provided the defendant with copies of these records and copies of certifications prepared by the records custodians pursuant to Fed. R. Evid. 902(11), and will continue to do so in a consistent fashion pursuant to its obligation to supplement discovery under Local Rule 116.7. The government hereby provides the defendant with notice of the government's intent to introduce the exhibits without the need for the testimony of a records custodian and asks for the defendant's assent. To the extent the defendant refuses to stipulate to their authenticity, the government may file an additional motion *in limine* for a preliminary finding of authenticity under Fed. R. Evid. 902(11).

The government will request the defendant's stipulation to the records' admissibility. Fed. R. Evid. 803(6) provides that business records may be admissible as self-authenticating, non-hearsay evidence "if certified according to Fed. R. Evid. 902(11)." *See Federal Trade Comm. v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 16 (1st Cir. 2010). Rule 902(11) provides for the admissibility of "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). The declaration under Rule 902(11) must establish that:

    A. the record was made at or near the time by—or from information transmitted by—someone with knowledge;

    B. the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and]

    C. making the record was a regular practice of that activity . . . .

Fed. R. Evid. 803(6). The court should admit the offered records as business records under Rule 803(6) that are properly certified as authentic copies of domestic records under Rule 902(11).

Because these records were created automatically in the ordinary course of their business operations, and not created for the purpose of this prosecution, their admission without a live witness does not present Confrontation Clause issues of the type underlying the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). *See United States v. Cameron*, 699 F.3d 621, 641-42 (1st Cir. 2012) (Yahoo! and Google subscriber records not created for the purpose of the prosecution are non-testimonial). The underlying records are accordingly admissible pursuant to Fed. R. Evid. 803(6) and 902(11). *See also Crawford*, 541 U.S. at 56 (noting that business records are non-testimonial "by their nature").

The government also may introduce certain public records under Fed. R. Evid. 803(8). Rule 803(8) provides an exception to the hearsay rule for public records from a public agency or office, relating to an activity of the office. "Records kept . . . [b]y public agencies may be admissible under the business records exception, Fed. R. Evid. 803(6), as well as under the public records exception, Fed. R. Evid. 803(8)." *United States v. Bohrer*, 807 F.2d 159, 162 (10th Cir. 1986) (internal citations omitted).

### E.  Admissibility of Summary Exhibits of Voluminous Records

The government may seek to admit exhibits that summarize voluminous financial and business records.  These "summary tools" are admissible "to clarify complex testimony and evidence" under Fed. R. Evid. 1006. *See United States v. McElroy*, 587 F.3d 73, 81 (1st Cir. 2009); *see also United States v. Appolon*, 695 F.3d 44, 61-62 (1st Cir. 2012) (affirming admission of summary exhibits that obviated the need for "the jury to sift through[] mortgage and sale records for each of the twenty-one properties involved in appellants' scheme[] and also facilitated tracing the scheme's proceeds").  Summary exhibits are admissible either individually or in addition to the underlying records.  *United States v. Milkiewicz*, 470 F.3d 390, 396–97 (1st Cir. 2006) ("[W]hile in most cases a Rule 1006 chart will be the *only* evidence the fact finder will examine concerning a voluminous set of documents, in other instances the summary may be admitted *in addition to* the underlying documents to provide the jury with easier access to the relevant information.") (citations omitted).  And the government may also elicit testimony to describe and explain the summary exhibits.  *McElroy*, 587 F.3d at 81 ("[S]ummary witness testimony may be permitted pursuant to Rule 611(a).") (citing *Milkiewicz*, 470 F.3d at 397–98 and *United States v. Stierhoff*, 549 F.3d 19, 27 (1st Cir. 2008)); *Appolon*, 695 F.3d at 63 (affirming introduction of summary witness testimony where testimony "was limited to introducing and explaining the summary charts [the summary witness] prepared").

### III.  JURY INSTRUCTIONS – CONSPIRACY TO COMMIT WIRE FRAUD

At prior proceedings in this case, the Court invited the parties to brief the question of whether conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 requires the government to prove the commission of an overt act in furtherance of the conspiracy.

While the First Circuit has not definitively resolved this question, every other circuit that has addressed the issue has concluded that Section 1349 does not require the government to prove the commission of an overt act. *United States v. Roy*, 783 F.3d 418, 420-21 (2d Cir. 2015); *United States v. Chinasa*, 489 F. App'x 682, 685-86 (4th Cir. 2012); *United States v. Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017); *United States v. Rogers*, 769 F.3d 372, 380-82 (6th Cir. 2014); *United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011); *United States v. Gonzalez*, 834 F.3d 1206, 1220 (11th Cir. 2016); *see also United States v. Thompson*, 990 F.3d 680, 684 (9th Cir. 2021) (commenting that the indictment, which charged conspiracy to commit wire fraud, "unnecessarily stat[ed] overt acts").

Recent First Circuit decisions suggest this Circuit would do the same. For example, in *United States v. Clough*, 978 F.3d 810 (1st Cir. 2020), the First Circuit cited Section 1349 in observing that "not every conspiracy statute in the United States Code mandates that the government prove [an overt at]." *Clough*, 978 F.3d at 817 n.11. In *United States v. Iwuala*, 789 F.3d 1 (1st Cir. 2015), the First Circuit omitted an overt act requirement in reciting the elements of conspiracy to commit health-care fraud in violation of Section 1349. *Iwuala*, 789 F.3d at 9-10 ("To prove conspiracy to commit health-care fraud under 18 U.S.C. § 1349, the government must prove beyond a reasonable doubt that an agreement existed to commit the underlying substantive offense (here, health-care fraud under 18 U.S.C. § 1347), that the defendant knew of the agreement, and that he voluntarily joined it with the intent to commit the underlying offense.").

These cases are consistent with Supreme Court precedent holding that, "where Congress had omitted from the relevant conspiracy provision any language expressly requiring an overt act, the Court would not read such a requirement into the statute." *Whitfield v. United States*, 543 U.S. 209, 213 (2005) (conviction for conspiracy to commit money laundering in violation of 18 U.S.C.

11

§ 1956(h) does not require proof of an overt act in furtherance of the conspiracy); *see also Salinas v. United States*, 522 U.S. 52 (1997) (same conclusion with respect to the RICO conspiracy statute, 18 U.S.C. § 1962(d)); *United States v. Shabani*, 513 U.S. 10 (1994) (same conclusion with respect to the drug conspiracy statute, 21 U.S.C. § 846).

Consistent with this case law, the government has proposed a jury instruction regarding conspiracy to commit wire fraud that does not include the commission of an overt act in furtherance of the conspiracy as an element.

\*   \*   \*

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ David M. Holcomb*
DAVID M. HOLCOMB
KRISTEN A. KEARNEY
Assistant United States Attorney

Dated: January 11, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF), as well as mailed to defendant Thiago De Souza Prado.

By:   */s/ David M. Holcomb*
DAVID M. HOLCOMB
Assistant United States Attorney