UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,

     Plaintiff,                      Criminal Action No.
                                        1:21-cr-10158-MLW-7
   v.

THIAGO DE SOUZA PRADO,

     Defendant.

_____


BEFORE THE HONORABLE MARK L. WOLF, DISTRICT JUDGE


MOTION



Tuesday, January 17, 2023
11:07 a.m.









John J. Moakley United States Courthouse
Courtroom No. 2
One Courthouse Way
Boston, Massachusetts

Rachel M. Lopez, CRR
Official Court Reporter
raeufp@gmail.com

1                        **A P P E A R A N C E S**

2

   On behalf of the Plaintiff:

3

        UNITED STATES ATTORNEY'S OFFICE - MASSACHUSETTS
4       BY:  DAVID M. HOLCOMB AND KRISTEN A. KEARNEY
        John Joseph Moakley Courthouse
5       One Courthouse Way, Suite 9200
        Boston, Massachusetts  02210
6       (617) 756-9043
        david.holcomb@usdoj.gov
7       kristen,kearney@udoj.gov

8

9   On behalf of the Defendant:

10       BY:  THIAGO DE SOUZA PRADO, Pro Se

11

12   On behalf of the Defendant, as standby counsel:

13       LAW OFFICE OF JOHN F. PALMER, P.C.
        BY:  JOHN F. PALMER
14       18 Main Street Extension
        Suite 201B
15       Plymouth, Massachusetts  02360
        (617) 943-2602
16       jpalmer@socialaw.com

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1
2          (In open court.)

3          THE DEPUTY CLERK:  The United States District Court

4     for the District of Massachusetts is now in session, the

5     Honorable Leo T. Sorokin presiding. THE DEPUTY CLERK:

6     Your Honor, this is the criminal matter 21-cr-10158, the

7     United States versus Thiago de Souza Prado.

8          THE COURT:  Would the court please administer the

9     oath to the interpreter.

10               (The interpreter, CLAUDIA AZOFF, was duly sworn to

11               interpret the following proceedings from Portuguese

12               into English and English in to Portuguese.)

13          THE INTERPRETER:  Good morning, Your Honor, Claudia

14     Azoff, Portuguese interpreter.

15          THE COURT:  Would counsel for the government and

16     standby counsel for Mr. Prado please identify themselves for

17     the record.

18          MR. HOLCOMB:  Good morning, Your Honor, David

19     Holcomb for the United States.

20          MS. KEARNEY:  And good morning, Your Honor, Kristen

21     Kearney for the United States.

22          THE COURT:  Okay.

23          MR. PALMER:  John F. Palmer, standby counsel.  Good

24     morning, Your Honor.

25          THE COURT:  Okay.  And Mr. Prado, do you want to

1    introduce yourself?

2              MR. DE SOUZA PRADO:  Yes.  Thiago Prado.

3    Defendant.

4              THE COURT:  Okay.  Thank you.  You may be seated.

5              All right.  On December 22, I issued what is

6    Document 621 in this case, which has 18 defendants, a

7    pretrial order.  I scheduled the trial to begin on March 6,

8    2023.  And in paragraph 5, I ordered that the parties,

9    including Mr. Prado, who's representing himself, file

10   proposed voir dire questions, proposed jury instructions, and

11   any motions in limine with supporting memoranda, by

12   January 11, 2023.

13             The government complied with that order.  Mr. Prado

14   did not.  As I informed Mr. Prado when I granted his request

15   to represent himself, he's required, as the Supreme Court,

16   among others, have said, to comply with all rules of

17   procedure and substantive law, and all court orders, I think.

18   I noted that the Supreme Court had essentially said that in

19   *Faretta*, F-a-r-e-t-t-a, 422 US 806, 836, note 46.

20             Pleadings by pro se litigants have to be liberally

21   construed, but there's no excuse for not obeying court orders

22   or following the Federal Rules of Criminal Procedure, the

23   local rules of the Court.  And when you fail -- if you

24   willfully, that is intentionally, essentially, fail to obey a

25   court order, that can be a contempt, it could be a criminal

1    contempt.  You could be imprisoned for six months, without a

2    jury trial, if I decided that was the appropriate sanction,

3    for willfully violating a court order.

4            I would prefer not to conduct contempt proceedings.

5    You have a right to represent yourself and I explained to you

6    all the risks of doing that.  You told me that you wanted to

7    represent yourself.  But once you've made that decision, you

8    have to, among other things, obey court orders.  And one of

9    your motions is a motion for speedy trial.  But when you

10   don't make the filings required by a pretrial order, you

11   injure my ability to prepare for and conduct a trial.

12           So I'm going to hear your motions and I hope decide

13   them this morning.  And I apologize for not starting at

14   10 o'clock as scheduled, but the government -- the defendant

15   filed a late motion.  There were 13 or 14 motions pending

16   now.  And when I issued my order last week, number 651, on

17   January 13th, last Friday, I noted that the government's time

18   to respond to the motion to dismiss for improper venue hadn't

19   expired.  The government filed something late on Friday, so

20   among other things, I've been looking at that.

21           But if I don't dismiss this case you'll have a

22   right to a trial, if you still want a trial.  But you don't

23   have a right not to obey my orders.  This is not the only

24   case that I have and I have to manage my docket.  And this

25   case has 18 defendants.  13 of them have pled guilty.  The

1    14th will plead guilty within the week.  So now I know who's

2    going to trial, you, and this has got to be done in an

3    orderly way, which means in the manner that I order.

4              Do you understand that, Mr. Prado?

5              MR. DE SOUZA PRADO:  Yes, I do, Your Honor.  And

6    I --

7              THE COURT:  If you're going to address the Court,

8    you need to stand up.

9              MR. DE SOUZA PRADO:  I'm sorry.  Yes, I do,

10   Your Honor.  I understand what you mean.

11             THE COURT:  And the record should reflect,

12   Mr. Prado is speaking in English and I can understand you.

13   You can understand me, evidently.  If you need something

14   interpreted, ask -- just tell me you'd like it interpreted,

15   and Ms. Azoff will do that, but are you comfortable

16   proceeding in English?  I think it will make it easier for

17   you to speak to me.

18             MR. DE SOUZA PRADO:  Yes, Your Honor.  I'm

19   comfortable.

20             THE COURT:  Okay.  So you just want to -- when it's

21   your turn to speak, you want to pull that microphone near you

22   and speak into it.  Okay?

23             MR. DE SOUZA PRADO:  Okay.  Thank you.

24             THE COURT:  All right.  In the order that I issued

25   on January 13th, I told you that the -- at least 13 pending

motions fell into groups, or many of them fell into groups.
They raise related issues, sometimes with overlapping
arguments.  So I've organized them for argument.  And the
order in which I intend to take them up are -- is slightly
modified, now that the motion for venue is fully briefed.

I'll hear argument on the motion for my recusal,
disqualification.  I'll hear argument on the motions
challenging conspiracy to commit wire fraud as a substantive
offense.  I'll hear argument on the motions concerning
aggravated identity theft.  I'll hear argument on the motion
concerning improper venue, allegedly, and I'll hear argument
on the motions concerning pretrial detention.  The speedy
trial issues.

I'll then address Mr. Prado's request to be in a
restorative justice program, if the case is not dismissed,
and then we'll discuss the trial.

Is there anything else that the parties feel should
be on the agenda for today?

MR. HOLCOMB:  Other than the issue of standby
counsel, Your Honor, I assume we'll be --

THE COURT:  Yes, I should have said that.
Mr. Palmer filed something late last night, asking for
confirmation that he had only been appointed standby counsel
for pretrial purposes.  Those are the terms of the order, but
we'll talk about it generally when we get to trial.  Okay.

1          Mr. Prado, is there anything else you think should

2    be on the agenda for today?

3          MR. DE SOUZA PRADO:  No, Your Honor, I think that's

4    all I have here, questions.

5          THE COURT:  And do you know that you can consult

6    Mr. Palmer, if you want or need to?

7          MR. DE SOUZA PRADO:  Yes, I do.

8          THE COURT:  Okay.  Pull that closer to you, it will

9    be easier for you to speak into it and it will be easier for

10   me to hear you.  All right?

11         MR. DE SOUZA PRADO:  Yes.

12         THE COURT:  Okay.  The first motion, which I said I

13   would hear argument is the motion for my recusal, for my

14   disqualification, pursuant to 18, United States Code,

15   Section 455(a), which would require my recusal, if a

16   reasonable person could question my impartiality.

17         It appears to me that the basis for the motion is

18   decisions I've made in this case, perhaps statements I've

19   made in this case.  But Mr. Prado, do you want to speak to

20   your motion, explain it, and why you believe a reasonable

21   person would question my impartiality in the circumstances of

22   this case?

23         MR. DE SOUZA PRADO:  Your Honor, I filed that

24   motion because I was feeling a little -- the Court was being

25   biased towards me for being pro se and ruling on my motions

1      without making findings on the merits.  But after -- that was

2      when I start studying the law and then I realized -- I read a

3      lot of cases that Your Honor have, and I want to withdraw

4      this motion right now.

5              THE COURT:  You want to withdraw this motion?

6              MR. DE SOUZA PRADO:  Yes.

7              THE COURT:  Okay.  I will allow you to withdraw

8      this motion.  You've essentially said to me you misunderstood

9      the law.

10             MR. DE SOUZA PRADO:  Yeah.  I'm sorry.

11             THE COURT:  The law.  And that it is, essentially,

12     the law that a meritorious motion for a judge's

13     disqualification can't be based on decisions that are made in

14     the defendant's case, except in extreme circumstances.  The

15     Supreme Court Justice Kennedy wrote that, in effect, in

16     *Liteky*, L-i-t-e-k-y, 510 US 540 and 558.  The First Circuit

17     has said that adverse rulings against a party, even if

18     strongly worded, are not a sufficient basis to cause a

19     reasonable, informed person to question the Court's

20     impartiality.

21             So I'll say two things.  One, your request that the

22     motion be withdrawn is allowed.  However, in any event, it

23     would not, based on what you had presented to me, or anything

24     else you could have presented to me, been meritorious.  Thank

25     you.

1            Okay.  The second set of motions, or the motions

2    challenging conspiracy to commit wire fraud as a substantive

3    offense, as I understand it, you argue that conspiracy to

4    commit wire fraud is not an independent offense, and that

5    it's necessary that you be charged with wire fraud.  And then

6    you seem to say, somewhat inconsistently, but you can take

7    inconsistent positions relating to different motions, that --

8    charging you with conspiracy violates the double jeopardy

9    clause, and the conspiracy to commit wire fraud is a petty

10   offense.

11           Do I understand your arguments, what your arguments

12   are correctly?

13           MR. DE SOUZA PRADO:  Yes.  -- sorry.  Yes.

14           THE COURT:  All right.  Do you want to speak to

15   your motion, please?

16           MR. DE SOUZA PRADO:  Yes.  Your Honor, this first

17   motion that I had to file this, the motion said the

18   conspiracy is a different offense than --

19           THE COURT:  Pull that closer to you and try to

20   speak a little more loudly and clearly.  You want to make

21   sure the court reporter can understand you and write it all

22   down right.  She's doing a very good job so far.  And you

23   want to make sure that I can hear you and understand you.

24           MR. DE SOUZA PRADO:  Okay.  So the first motion

25   that I filed in the double jeopardy was because the

1    prosecutor was -- was treating conspiracy and wire fraud as

2    one offense.  And the prosecutor said on the record that I

3    don't have to be charged for wire fraud once he charged me

4    for conspiracy.  And so far I understand that conspiracy

5    without the underlying offense leaves with no penalty

6    provision.

7                THE COURT:  Okay.

8                MR. DE SOUZA PRADO:  And I just -- I just can't

9    agree with the government saying that I don't have to be

10   charged for wire fraud and he only can charge me for the

11   conspiracy.  And conspiracy don't have any elements for the

12   wire fraud.  So that leaves it like no way that I can rebut

13   it, that I never commit a wire fraud, because conspiracy

14   don't have elements for wire fraud.

15               THE COURT:  Mr. Prado, I can see you're trying very

16   hard and I'm going to hear from the government briefly.  And

17   then I'm going to explain to you why you're wrong, what

18   you're missing.  And to me, although it's always up to you,

19   ultimately, why you would be -- your interest would be best

20   served having a lawyer.  Because this is the easy part of the

21   case.  You get to a trial, it gets more complicated, even if

22   you represent yourself.

23               What's the government's response with regard to the

24   motions to dismiss the conspiracy to commit wire fraud

25   charges, docket numbers 339-1, 358-1, 368, and 386-1.

1           MR. HOLCOMB:  Your Honor, the government's position

2      is that all four of these motions in this category rely on a

3      fundamental misunderstanding of the law.  The statutes, on

4      their very face, provide for separate offenses for

5      substantive wire fraud, under Section 1343, and conspiracy to

6      commit wire fraud under Section 1349.  I think in -- it's

7      fair to say that in many of the government's oppositions

8      filed to date, the government has explained that -- to

9      Mr. Prado that conspiracy is a separate offense.  It is the

10     agreement to commit, in this case, wire fraud, and that wire

11     fraud is the object of the conspiracy.

12           As to the argument of that Section 1349 lacks a

13     penalty provision, that's plainly wrong on the face of the

14     statute, which reads any person who attempts or conspires to

15     commit any offense under this chapter, which is Chapter 63,

16     which includes wire fraud, under 1343, shall be subject to

17     the same penalties as those prescribed for the offense, the

18     commission of which was the object of the attempt or

19     conspiracy.  In this case, the wire fraud statute, 1343, is

20     the statute with the penalty provision.

21           THE COURT:  What is the penalty provision?

22           MR. HOLCOMB:  The penalty provision, Your Honor,

23     Section 1343, provides that, in short, whoever commits wire

24     fraud under this -- shall be fined under this title or

25     imprisoned not more than 20 years, or both.  And Your Honor,

the government submits that the double jeopardy related
arguments and other arguments raised in these motions all
fail because they rest on that fundamental misunderstanding
of the law.

THE COURT:  Do you have 1343, the penalty
provision?

(The Court and the law clerk confer.)

THE COURT:  It's a challenge to sort out the -- the
various overlapping memos and to interpret them liberally,
and to try to understand, even if it's not clear, whether the
motion has any merit.

But the motions relating to the conspiracy to
commit wire fraud charge, docket numbers 339-1, 358-1, 368,
and 386-1 are hereby denied.

Mr. Prado claims that conspiracy to commit wire
fraud is not an independent offense, and he must be charged
with wire fraud.  He says that charging him with conspiracy
to commit wire fraud is impermissible double jeopardy, in
that conspiracy to commit wire fraud is a petty offense.
However, 18, United States Code, Section 1339 establishes
that conspiracy to commit wire fraud is a crime.  As with
other forms of conspiracy, the essence of the offense is the
agreement.  That's what juries are routinely instructed.
That's what they would be instructed, I expect, in this case,
pursuant to First Circuit decisions, such as *Paret*,

1    P-a-r-e-t, dash *Ruiz*, R-u-i-z, 567 F.3d 185.  Conspiracy to

2    commit wire fraud does not need to be charged with a

3    substantive charge of wire fraud.  See, for example, *United*

4    *States vs. Wyatt*, 561 F.3d 49 of 51.

5         18, United States Code, Section 1349 provides that

6    any person who conspires to commit any offense under this

7    chapter shall be subject to the same penalties as those

8    prescribed for the offense.  In section -- in 18, United

9    States Code, Section 1343, which establishes the substantive

10   wire fraud offense, the penalty provided is, in part,

11   imprisonment for more than 20 years.  So a crime that's --

12   can be punished by 20 years in prison is not a petty offense.

13   It's a federal offense.  I mean, it's -- it's a felony and,

14   therefore, you will have a right to a jury trial.

15        And there's no double jeopardy problem or issue.

16   First of all, you haven't been charged with two crimes.

17   Second, under *Blockburger*, 284 US 299 at 304, the test for

18   double jeopardy is whether one offense requires proof of a

19   fact which the other does not.  And the First Circuit has

20   written in *Fornia*, F-o-r-n-i-a dash *Castillo*, 408 F.3d 52 69,

21   that it's long been established that conspiracy to commit a

22   crime is not the same offense as the substantive crime for

23   double jeopardy purposes.  Because the agreement to do the

24   act is distinct from the completed act itself.

25        So as I said earlier, the -- conspiracy is an

agreement to commit a crime and it's the agreement itself

that's the crime.  The crime doesn't have to be

successfully -- the substantive crime, in this case the wire

fraud, the alleged goal of the conspiracy doesn't have to be

successfully completed for the crime of conspiracy to have

been conducted, committed.

So the conspiracy related motions are denied, as I

said.

Then there are three motions relating to aggravated

identity theft, numbers 467, 515-1, 552-1.  Mr. Prado, as I

understand it, argues that conspiracy to commit wire fraud,

under 18, United States Code, Section 1349, is not a valid

predicate offense for aggravated identity theft, and the two

year mandatory minimum consecutive sentence that a conviction

of aggravated identity theft carries.

Mr. Prado, do you want to speak to that motion?

MR. DE SOUZA PRADO:  Yes, Your Honor.  So I -- I

realized that after studying the *Schuyler* case, you know,

*Schuyler* --

THE COURT:  *Schuyler*?

MR. DE SOUZA PRADO:  Yes.

THE COURT:  Do you know --

MR. DE SOUZA PRADO:  And *Taylor* case that came last

year.

THE COURT:  What case?

1          MR. DE SOUZA PRADO:  *Taylor*.

2          THE COURT:  *Taylor*?

3          MR. DE SOUZA PRADO:  Yeah.  *Taylor vs. United*

4     *States*, 142 SCT 2015.

5          THE COURT:  I'm sorry, 142 Supreme Court 2003?

6          MR. DE SOUZA PRADO:  2015.

7          THE COURT:  I'm sorry.  What's the page?  2015?

8          MR. DE SOUZA PRADO:  2015.

9          THE COURT:  Did you cite *Taylor* in your submission?

10          MR. DE SOUZA PRADO:  Yes.  I had a motion, which is

11     number -- I believe it's 151-1, the whole -- the whole motion

12     is about *Taylor* case, which shows that --

13          THE COURT:  So this is the case that talks about

14     using a categorical approach to determine whether a crime is

15     a crime of violence, for the purposes of determining whether

16     somebody is, in that case, an armed career criminal, I think.

17          MR. DE SOUZA PRADO:  Actually, it's find what is a

18     classified for predicate offense for 924(c), which is 924(c).

19          THE COURT:  For --  okay.

20          MR. DE SOUZA PRADO:  Yes.  924(c) works the same

21     way as the identity theft charge that I got.

22          THE COURT:  All right.  But at the moment, I don't

23     think so, but I want to listen to you.

24          But hold on just one moment.

25          MR. DE SOUZA PRADO:  Sure.

1          THE COURT:  Okay.  Go ahead.

2          MR. DE SOUZA PRADO:  Yeah, so when we looked to the

3   predicate, according to *Schuyler* and *Taylor*, we need to

4   realize the elements for the identity theft is on the

5   predicate offense, which a conspiracy don't have it, don't

6   require the government to prove that I use or possess or

7   transfer the identification.  So I believe that -- that

8   conspiracy cannot be used as a predicate for 1028(a).

9          THE COURT:  And what is the government's response?

10         MR. HOLCOMB:  Your Honor, the government submits

11   that that's incorrect.

12         THE COURT:  Yeah, I'll give you the same

13   instruction I gave Mr. Prado.  Pull the microphone near you,

14   speak loudly and clearly into it, please.

15         MR. HOLCOMB:  Apologies, Your Honor.

16         The government submits that that's incorrect.  The

17   statutes are not analogous statutes.  Section 924(c)

18   describes an elements -- or includes an elements clause for

19   determining whether a crime is a crime of violence.  1028(a)

20   is entirely different.  Section (c) enumerates the qualifying

21   predicate offenses and states clearly that the term "felony

22   violation" enumerated in subsection (c) for purposes of being

23   a 1028(a) predicate means any offense that is a felony

24   violation of -- and it goes on to say at five: "Any provision

25   contained in Chapter 63, relating to mail, bank, and wire

1    fraud.  Chapter 63 includes Section 1349, the conspiracy

2    provision, which is itself a free standing felony violation

3    within Chapter 63."

4            So again, by the very -- on its very face,

5    Section 1028(a) includes conspiracy to commit wire fraud

6    under 1349 as a predicate offense.

7            THE COURT:  Essentially, for the reasons just

8    stated by the government, Mr. Prado's motions to dismiss the

9    aggravated identity theft charge on the theory that

10   conspiracy to commit wire fraud is not a predicate for

11   aggravated identity theft purposes is hereby denied.

12           As I said earlier, those are motions, Docket

13   Number 467, 515-1 and 552-1.

14           In essence, a person may be charged with aggravated

15   identity theft, under 18, United States Code,

16   Section 1028(A)(1), if he commits a predicate felony,

17   enumerated in Section (c) of 18, United States Code,

18   Section 1028(A).  And during and in relation to that

19   predicate felony, knowingly transfers, possesses, or uses,

20   without lawful authority, a means of identification of

21   another person.

22           Section 1028(A)(c)(5) includes, as predicate

23   offenses, any provision contained in Chapter 63, relating to

24   mail, bank, and wire fraud.  Conspiracy to commit wire fraud,

25   under 18, United States Code, Section 1349 is an offense

1    under Chapter 63.  Therefore, conspiracy to commit wire fraud

2    is a valid predicate offense for aggravated identity theft,

3    and if Prado is convicted of aggravated identity theft, the

4    statutorily imposed mandatory -- is convicted of conspiracy

5    to commit aggravated identity theft, the two year mandatory

6    consecutive sentence will apply.

7             Moreover, I find that the allegations in the

8    indictment are sufficient, if proven, to demonstrate that

9    Mr. Prado did knowingly transfer, possess, or use, without

10   lawful authority, a means of identification of another

11   person, in committing -- or in participating in the

12   conspiracy to commit wire fraud.

13             In essence -- okay.  So that's that.

14             I think at this point, I will take up the motion

15   alleging improper venue in the District of Massachusetts.

16   Wait a minute.  Wait.

17             All right.  As I understand it, at this point, I

18   have to accept as true the allegations in the indictment to

19   determine whether any of the alleged overt acts in

20   furtherance of the alleged conspiracy was committed in

21   Massachusetts.  If the answer to that is yes, under the

22   jurisprudence, I would deny the motion to dismiss for

23   improper venue, without prejudice, meaning that it can be

24   raised again after the evidence is heard at trial.

25             Do you want to be heard on your motion, Mr. Prado?

 1            MR. DE SOUZA PRADO:  Yeah, that's okay with me,

 2    Your Honor.  They're going to have to prove that those overt

 3    acts was committed in Massachusetts, right?

 4            THE COURT:  Well, that's actually an interesting

 5    question.  The First Circuit has never decided whether an

 6    overt act is an element or a requirement of a wire fraud

 7    charge.  But in taking guilty pleas from your 13

 8    co-defendants so far, the government's agreed that it would

 9    be prudent to, in effect, tell the jury that an overt act is

10    required, and then they would be required to prove that an

11    overt act occurred in Massachusetts, one, to obtain a

12    conviction, and two, although the standard is -- proof is

13    different, prove that venue was proper in Massachusetts.

14            Am I correct on the government's position?

15            MR. HOLCOMB:  Actually, Your Honor, I believe that

16    our jury instructions that we filed omit an overt act

17    requirement in describing the elements.

18            THE COURT:  Omit it?

19            MR. HOLCOMB:  That's correct.  For reasons

20    described in our trial brief that we submitted.

21            THE COURT:  Yeah, I haven't studied those yet.

22    Well, how would you deal with the venue issue, then?

23            MR. HOLCOMB:  As Your Honor has indicated, an overt

24    act in furtherance of the conspiracy being necessary for

25    venue is -- the government is required to prove that by a

1    preponderance.  And so I think --

2         THE COURT:  And to whom is it required to be

3    proven?  To the Court or to the jury?

4         MR. HOLCOMB:  I believe that case law is split on

5    that.  There is case law in which it has gone to the jury and

6    cases in which the Court has made that determination.

7         THE COURT:  Right.  And if -- this is -- this is

8    part of the reason I need briefing from somebody on your

9    behalf, Mr. Prado.  I don't know if you can -- I know you're

10   trying hard.  I don't know if you can understand all of these

11   legal nuances, but this will have to be sorted out.

12         Okay.  So Mr. Prado, as I understand it, you agree

13   that the issue of venue, based on the allegations in the

14   indictment, should be decided at trial.  And I'll figure out

15   who decides it by what's standard, rather than having the

16   case dismissed with prejudice now.

17         Is that your position today?

18         MR. DE SOUZA PRADO:  No, actually, I'd like to push

19   for the issue right now, if I had a choice.  Because I

20   believe that nobody had done anything in Massachusetts.

21         THE COURT:  You believe what?

22         MR. DE SOUZA PRADO:  That nobody had done any overt

23   act in Massachusetts.

24         THE COURT:  Maybe the government can point out some

25   of the -- did I take this back?  Some of the alleged overt

1   acts that occurred in Massachusetts.

2            MR. HOLCOMB:  Yes, Your Honor, just pulling from

3   the government's opposition, which is Docket Number 653.

4            THE COURT:  Okay.  Let me get it.

5            Let me have 653.  Oh, here.  It's in -- I got it.

6            That's the one you filed Friday?

7            MR. HOLCOMB:  That's correct, Your Honor.

8            THE COURT:  Just one minute.

9            And you're on page 3?

10           MR. HOLCOMB:  That is correct.  On page 3, the

11  government points out that the indictment alleges that

12  Mr. Prado and co-conspirators resided in Massachusetts and

13  Mr. Prado resided in Massachusetts on or about the dates of

14  the charged aggravated identity theft offense in Count 9, and

15  that those offenses occurred in the District of Massachusetts

16  and elsewhere.  And the indictment further alleges that --

17           THE COURT:  Hold on just one second.  Is Count 9

18  Mr. Prado's aggravated identity theft?

19           MR. HOLCOMB:  It is, Your Honor.

20           THE COURT:  Let me get it.

21           MR. HOLCOMB:  Specifically, Your Honor, if you're

22  there, the Count 9 alleges that, on or about February 23,

23  2019, in the District of Massachusetts, and elsewhere, the

24  defendant, Mr. Prado, did knowingly transfer, possess, and

25  use, without lawful authority, a means of identification of

1    another person, that is, a driver's license number ending in

2    7244 of Victim 9, during and in relation to the conspiracy to

3    commit wire fraud.

4            THE COURT:  And if I were asking you what's the

5    factual basis for that allegation, what do you expect the

6    evidence will show to flesh that out?  What did Mr. Prado do

7    in Massachusetts?

8            MR. HOLCOMB:  Your Honor -- Your Honor, what the

9    government is prepared to prove at trial is detailed in

10   Footnote 1 of that same filing, Docket 653.

11           THE COURT:  Let me see.  What page?

12           MR. HOLCOMB:  It's on page 4.  It's Footnote 1.

13           THE COURT:  Okay.

14           MR. HOLCOMB:  And it's just -- in brief, it states

15   that Rideshare Company A's records reflect that driver's

16   accounts were created with that company in the vicinity of

17   Overlook Ridge, in Revere, Massachusetts, where Mr. Prado

18   resided, and that records from Delivery Company B reflect

19   that accounts were created with an IP address that was

20   subscribed to Mr. Prado at that Overlook Ridge address.

21           And specifically, with respect to the charged

22   aggravated identity theft count, the government would present

23   WhatsApp chat messages between Mr. Prado and co-defendant,

24   Wemerson Aguiar, in which a photograph of that victim's

25   driver's license was exchanged.  And Mr. Aguiar obtained a

1    Social Security number for Mr. Prado and sent that Social

2    Security number back to Mr. Prado.  And then the evidence

3    would further show --

4            THE COURT:  Back to -- are you saying the evidence

5    will show that Mr. Prado was in Massachusetts during these

6    times, and Mr. Aguiar was sending him information or images

7    in Massachusetts?

8            MR. HOLCOMB:  Yes, Your Honor.  The government's

9    evidence is that both individuals were present in

10   Massachusetts, as they sent these messages, and also that

11   Mr. Prado was present in Massachusetts at a time when

12   Rideshare Company A's records will show that a driver account

13   was created with Victim 9's driver's license.

14           THE COURT:  And I'm hearing this argument in the

15   context of the 13 guilty pleas I've taken.  So essentially,

16   the wire fraud scheme was, in part, allegedly a scheme to

17   defraud rideshare companies like -- they're not named, Uber,

18   Lyft.  And that it was done in part by improperly obtaining

19   information on the identity of other people and selling it

20   and/or using it to open -- you know, to get people authorized

21   to be rideshare drivers under the identity that wasn't their

22   own.  That's part of it?

23           MR. HOLCOMB:  That's correct, Your Honor.  Those

24   are overt acts in furtherance of the charged wire fraud

25   conspiracy.

1          THE COURT:  All right.  Well, I'll say,

2   essentially, for the reasons stated in the government's

3   opposition to defendant's motion to dismiss indictment for

4   lack of venue, Docket Number 625-1, that motion is hereby

5   denied without prejudice to being revisited at trial.  In

6   essence, the defendant does have a constitutional right to be

7   charged in the district where the crime shall have been

8   committed, under the Sixth Amendment, also the Third

9   Amendment.  Venue is proper for present purposes, for the

10  conspiracy charges --

11          Well, venue is proper for conspiracy charges,

12  wherever an act in furtherance of the conspiracy took place,

13  as the Supreme Court said in *Whitfield*, 543, US 209 at 218.

14  For aggravated identity theft, venue is proper wherever the

15  predicate offense took place, as the Second Circuit wrote in

16  Magassouba, M-a-g-a-s-s-o-u-b-a, 619 F.3d 202 and 204.  And

17  as Judge Sorokin wrote in Acherman, A-c-h-e-r-m-a-n, 140

18  F.Supp.3d 113, at 117 to 18, a pretrial motion challenging

19  venue will only be found meritorious if the indictment's

20  allegations regarding venue are facially deficient.  Facially

21  deficient.  Here, the allegations are sufficient to establish

22  venue in Massachusetts.  It alleges a number of overt acts.

23  And I'm told that there will be evidence demonstrating overt

24  acts by Mr. Prado, among others, co-conspirators in

25  Massachusetts, in furtherance of the conspiracy.  Some of

1    those overt acts are explained in Footnote 1 of the

2    government's opposition to this motion, Docket Number 653.

3              Okay.  Next I'll take up the motions to dismiss for

4    violation of Mr. Prado's speedy trial rights.  Those motions

5    are number 461 and 605-1.  I think they have, essentially,

6    three grounds.  One is an alleged violation of constitutional

7    rights; and the second is alleged violation of the Speedy

8    Trial Act; and the third, violations of Rule 48(b).  I

9    thought I would start with the statutory -- alleged statutory

10   violations.

11             And just as an overview, this is a complex case

12   with 18 charged defendants, 15 in the United States, three

13   have been fugitives.  One has been found, I'm told, in

14   Brazil, and is subject to extradition.  There have been --

15   there's been discovery.  There have been motions by

16   co-defendants.  There have been motions that -- by Mr. Prado.

17   Sometimes he asks for hearings, and some of these I decided a

18   hearing would be necessary.  Because when they're difficult

19   to decipher motions and they have to be liberally construed,

20   I think it's -- I found it was necessary to have hearings on

21   these motions.  I've been dealing not just with Mr. Prado,

22   because I decided some of your motions previously, but I've

23   been dealing with 13 other defendants, 14 other defendants in

24   this case.

25             And the magistrate judge excluded, entered -- it

1    was frequently said with the agreement of defendants, orders

2    of exclusion for much time.  Other defendants filed motions,

3    which have the effect of stopping the speedy trial clock for

4    their co-defendants, including you, if a hearing is

5    necessary, while they're pending for a period of time.  And

6    you filed these many motions, which required hearings and --

7    so I think the chronology will show -- I can get into it more

8    deeply.  I mean, I did schedule a hearing on motions in

9    August.  I put it off in part because right before -- you

10   know, within a week before the hearing, I think you filed

11   your speedy trial motions.  The government has to have a

12   chance to respond.  Maybe you would want to file a reply.

13           So I want to try to make sure I understand your

14   motions, but -- and I'll -- I need to decide them.  But

15   what's your argument, please, that the Speedy Trial Act has

16   been violated?

17           MR. DE SOUZA PRADO:  My argument, Your Honor, is

18   that -- is that I file an affidavit more than a year ago

19   requesting a speedy trial, and I thought I was going to be

20   allowed to be pro se only for pretrial proceedings.

21           THE COURT:  You thought you were going to be pro se

22   only for pretrial proceedings?

23           MR. DE SOUZA PRADO:  Yes.

24           THE COURT:  And that you would have a lawyer for

25   trial?

 1          MR. DE SOUZA PRADO:  Yes.

 2          THE COURT:  I will have to go back and look at the

 3     discussion that we had.

 4          MR. DE SOUZA PRADO:  Yeah.

 5          THE COURT:  But my memory is that I warned you of

 6     the difficulty of representing yourself at trial.  It's

 7     something that I've been intending to discuss with you, after

 8     I decide the motions today.  But anyway, if you want a lawyer

 9     for trial, I think that would be a good idea, and that's not

10     what we're addressing right now.

11          MR. DE SOUZA PRADO:  Yes.

12          THE COURT:  But I know this is important -- all

13     important to you, but -- and you've worked hard on it, but I

14     think you may see from my rulings so far, like it's -- you

15     know, I see you worked hard.  You found the *Taylor* case, and

16     it talks about the categorical approach.  But there's a

17     difference in the language of the statute involved in *Taylor*

18     and the language here.  So the result is different.  The

19     approach is different, but we'll get to that because I can

20     see you're listening to me.

21          MR. DE SOUZA PRADO:  Yes.

22          THE COURT:  And understanding this or trying to

23     understand it as best you can.

24          MR. DE SOUZA PRADO:  Yes.

25          THE COURT:  Okay.  So -- here, so I'm -- tell me

```
 1    what -- why you believe your statutory speedy trial rights
 2    were violated.
 3              MR. DE SOUZA PRADO:  Because I -- if I had a
 4    hearing back in last August --
 5              THE COURT:  A hearing on what?
 6              MR. DE SOUZA PRADO:  On the first time that you
 7    schedule a hearing, if you had that hearing, I have like four
 8    more months to get Mr. --
 9              THE COURT:  Back in August?
10              MR. DE SOUZA PRADO:  Yes.
11              THE COURT:  Is that when you say if you had the
12    hearing in August?
13              MR. DE SOUZA PRADO:  Yes.  And it was supposed to
14    be, actually.
15              THE COURT:  Let me see if I've got some of this
16    right.
17              (The Court and the law clerk confer.)
18              THE COURT:  The pretrial conference was originally
19    scheduled for August 21st -- 24th, 2022.
20              Which motion?  Come here.
21              (The Court and the law clerk confer.)
22              MR. DE SOUZA PRADO:  That's the *Taylor* motion,
23    Your Honor.
24              THE COURT:  What's that?
25              MR. DE SOUZA PRADO:  That's *Taylor* motion.
```

```
 1              THE COURT:  Yeah, so there were a number of factors
 2    that went into the postponement.  But on August 18th, you
 3    filed Docket Number 515-1, which does argue that, under
 4    Taylor, the conspiracy to commit wire fraud is not a
 5    predicate.
 6              So I've got to give the government, under the local
 7    rules, they have 14 days to respond.  I can't properly
 8    conduct a hearing on a motion that -- you know, that you file
 9    at, essentially, the last minute, when the government hasn't
10    had a chance to respond.  So you contributed to the -- my
11    decision to postpone the hearing.  And then you filed other
12    motions since then and then some of them -- I'd have to go
13    through the docket, but in some of them you requested
14    hearings.  And as I explained, I want to give you a hearing
15    on your motions, because if you have something, but haven't
16    communicated the merits of your motion clearly to me, I want
17    to hear you.  So it's -- but --
18              And, you know, in this period, while the case has
19    been pending, I had a hearing on your motion to be released
20    from detention.  And I decided that the government had
21    satisfied its burden of proving that there were no
22    reasonable -- there was no combination of conditions that
23    would reasonably assure, not guarantee, that you wouldn't
24    flee, like three of the other defendants in this case.  But
25    anyway, so keep going.  Tell me what you want to tell me
```

1    about why you believe your statutory speedy trial rights were

2    violated.

3             MR. DE SOUZA PRADO:  Because they -- I found some

4    cases saying that delay over one year is presume --

5             THE COURT:  Presumptively.

6             MR. DE SOUZA PRADO:  Yeah.  Prejudice to the

7    defendant.

8             THE COURT:  Okay.  That's -- and that -- but you

9    read, I think, that there are other factors to be considered,

10   too.  And that's -- but you're right.  You've been detained

11   now, I think, 19 or 20 months.  Right?

12            MR. DE SOUZA PRADO:  (Nods head.)

13            THE COURT:  Is that what it is?

14            MR. DE SOUZA PRADO:  20 months.

15            THE COURT:  What's that?

16            MR. DE SOUZA PRADO:  20 months.

17            THE COURT:  20 months.

18            MR. HOLCOMB:  That's correct.

19            THE COURT:  So it's -- I understand that's

20   presumptive.  But you know what the other issues I need to

21   consider and am legally required to consider are in deciding

22   whether that's a violation of your statutory speedy trial

23   rights?  Do you remember?

24            MR. DE SOUZA PRADO:  I think you have to see if you

25   assert my right, which I did it over a year.

1          THE COURT:  Yeah and I think -- and these are

2     merging, but I think -- there are constitutional and

3     statutory rights.  I think the presumption right come into

4     play on the constitutional issue, *Barker vs. Wingo*.

5     Because --

6          All right.  Why don't you go on?  Is there more

7     you'd like to say on this?

8          MR. DE SOUZA PRADO:  No.

9          THE COURT:  Do you claim that you've been injured

10    in presenting a defense in some way, for example, that any

11    witnesses who might be helpful to you died or are not

12    available due to the passage of time?

13         MR. DE SOUZA PRADO:  No, Your Honor.  I was -- I

14    think I was prejudice because one of the allegations that the

15    government have is that I was controlling somebody else's

16    bank account and I was --

17         THE COURT:  You were controlling what?

18         MR. DE SOUZA PRADO:  I have access to somebody else

19    bank account, so that's the way the government was saying,

20    for raise my amount of money.  That they say they're

21    responsible for.

22         THE COURT:  Well, the amount of money you're

23    responsible for -- okay.  You've finally said something that

24    I don't think I understand.  For the analysis of the speedy

25    trial issues, what are you saying about the amount of money

1    they say you'd be responsible for?

2              MR. DE SOUZA PRADO:  Yes.  Because one of the

3    witness that was trying to connect it was the person that who

4    owns the bank account.  So I was trying to get this person in

5    the courtroom and tell the government or tell the Court

6    that --

7              THE COURT:  What person?

8              MR. DE SOUZA PRADO:  Andrielle.

9              THE COURT:  Andrielle.

10             MR. DE SOUZA PRADO:  Yeah, this is a name, a

11   Brazilian girl, that the government said that I was

12   controlling her bank account.  So that was part of my

13   defense, showing the Court that I have nothing to do with her

14   bank account.

15             THE COURT:  How -- do you know how to spell her

16   name?  A-n-d --

17             MR. DE SOUZA PRADO:  Andrielle.  Okay.  Here.

18             MR. DE SOUZA PRADO:  Her first name is

19   A-n-d-r-i-e-l-l-e and last name is Fredoruk.  I think it's

20   F-r-e-d-o-r-u-k.

21             THE COURT:  Okay.  I think that person is not a

22   co-defendant.

23             MR. DE SOUZA PRADO:  No.

24             THE COURT:  And is there a reason you couldn't call

25   that person as a witness at trial, if you wanted to now?

```
 1              MR. DE SOUZA PRADO:  I will try.  I'm not sure,
 2    because I already tried to call some people and they -- when
 3    they hear the phone call from the jail, they don't answer the
 4    phone.
 5              THE COURT:  Okay.  But do you have any evidence
 6    that -- if she was ever in Massachusetts or the United
 7    States, she's not here now?
 8              MR. DE SOUZA PRADO:  I don't know, Your Honor.
 9              THE COURT:  All right.  And --
10              MR. DE SOUZA PRADO:  I don't know if she's still
11    here or --
12              THE COURT:  Well, see, I don't -- did you explain
13    any of this to me in an affidavit, like what you think she
14    will say, if she testifies?
15              MR. DE SOUZA PRADO:  I can do that.
16              THE COURT:  No, you can, but you haven't.
17              MR. DE SOUZA PRADO:  No.
18              THE COURT:  If you do that, it's going to delay the
19    case longer.
20              MR. DE SOUZA PRADO:  Okay.
21              THE COURT:  Do you want to -- you know, I asked you
22    to try to break these up, but I think you've been talking
23    about some constitutional considerations, statutory
24    considerations.  And these are all related, but they are
25    somewhat different tests.
```

```
 1              Is there anything more that you'd like to say, on
 2    any -- what are all the grounds you think this should be
 3    dismissed because you haven't received a speedy trial?
 4              MR. DE SOUZA PRADO:  One other thing being very
 5    prejudiced of me is the fact that I have sleep apnea.
 6              THE COURT:  You had what?
 7              MR. DE SOUZA PRADO:  Sleep apnea.
 8              THE COURT:  Sleep apnea.
 9              MR. DE SOUZA PRADO:  Yes.  And the jail refused to
10    give me a machine and I have to go through all of this.  I
11    don't have -- I have limited research to the law library.
12              THE COURT:  Well, here, let me sort this out.  Do
13    you use a C dash P-A-P, a C-PAP machine?
14              MR. DE SOUZA PRADO:  Yeah, I'm a severe condition.
15              THE COURT:  Then I'm -- then I'm -- okay.  This is
16    really up to the marshal service.
17              MR. DE SOUZA PRADO:  Yeah.
18              THE COURT:  But the jail has a duty to give you
19    adequate medical care for a reasonable need.  And were you
20    using one of those C-PAP machines before you were detained?
21              MR. DE SOUZA PRADO:  Yes.
22              THE COURT:  Well, I'm directing the clerk to speak
23    to the marshals.
24              And Mr. Palmer, will you speak to the marshals, as
25    well?
```

 1          MR. PALMER:  I will.

 2          THE COURT:  About -- then I'll -- I guess I want to

 3    know -- where are you detained?  At Wyatt?

 4          MR. DE SOUZA PRADO:  Yes.

 5          THE COURT:  I want to know why Wyatt's denying him

 6    a C-PAP machine.  And if it's something that he was using

 7    before he was detained, why is it -- why it isn't medically

 8    necessary and what they're doing to otherwise address this

 9    medical need.  Because I believe a person can't get such a

10    machine without a prescription.

11          Did you have a prescription from a doctor for the

12    C-PAP?

13          MR. DE SOUZA PRADO:  Yes.  And I gave Mr. Palmer,

14    also, the medical -- the medical records.

15          THE COURT:  All right.  So that -- -- that's made

16    your detention more difficult.

17          I'm sorry, here.  Can you identify yourself?  Do

18    you mind speaking to this?

19          THE MARSHAL:  I was just saying I'm the detention

20    manager for --

21          THE COURT:  Can you say your name?

22          THE MARSHAL:  Chris Perez, Deputy Perez and --

23          THE COURT:  I'm not able to hear you.

24          THE MARSHAL:  I said I'm the detention manager and

25    coordinator for the marshals, so I'll look into it after the

1    hearings.

2            THE COURT:  Oh.  Oh, thank -- here.  Spell your

3    name for the record, please.

4            THE MARSHAL:  Perez, P-e-r-e-z.

5            THE COURT:  Thank you, Mr. Perez.  Marshal Perez.

6    There may be a good reason that they don't permit any

7    detainee to have a C-PAP, but sleep apnea affects a person's,

8    as I understand it, ability to sleep, and we want the

9    defendant well rested.  And if some doctor prescribed it for

10   him previously, it -- there needs to be a good reason not to

11   give it to him.  You can tell them the Judge said.

12           THE MARSHAL:  I'll get the information to your

13   clerk once I get it.

14           THE COURT:  I appreciate it.  Thank you very much.

15   All right, but --

16           MR. DE SOUZA PRADO:  I don't know if it counts, but

17   a lot of anxiety, lost my family, too, my wife.

18           THE COURT:  Where is your wife?

19           MR. DE SOUZA PRADO:  She's in Florida.  So we are

20   no longer together anymore because of this.

21           THE COURT:  She's in Florida?

22           MR. DE SOUZA PRADO:  Yes.

23           THE COURT:  She's -- as I recall from your

24   detention hearing, she's a deportable alien, too.

25           MR. DE SOUZA PRADO:  Yeah, she have asylum pending.

1    She just renew it --

2              THE COURT:  She has what?

3              MR. DE SOUZA PRADO:  Asylum.

4              THE COURT:  I'm sorry.  I can't -- we can't

5    understand him.

6              THE INTERPRETER:  Political asylum.

7              THE COURT:  She has political asylum?

8              MR. DE SOUZA PRADO:  Yes.

9              THE COURT:  She has been granted asylum, or she has

10   an application for asylum?

11             MR. DE SOUZA PRADO:  She's still pending.

12             THE COURT:  What?

13             MR. DE SOUZA PRADO:  She's still with the case in

14   pending.

15             THE COURT:  She's trying to get asylum.

16             MR. DE SOUZA PRADO:  She already has a work permit

17   and she's legal right now.

18             THE COURT:  Mr. Holcomb?

19             MR. HOLCOMB:  Your Honor, the government's

20   understanding is that there's a pending asylum claim.

21             THE COURT:  Right.  My understanding is that if

22   one -- application for asylum has been accepted but not

23   approved --

24             MR. DE SOUZA PRADO:  Yes.

25             THE COURT:  -- that person can work.

1          Okay, but do you expect your wife is going to be a

2   witness in this case.

3          MR. DE SOUZA PRADO:  I don't know, Your Honor.

4          THE COURT:  Does she have -- well, would you call

5   her as a witness?

6          MR. DE SOUZA PRADO:  I will ask her first, but --

7          THE COURT:  What will she testify to?  -- well,

8   here, you don't have to tell me that.  All right.  Don't

9   answer that question.

10         So basically, this has been an anxious period for

11  you because of the sleep apnea, because of the -- your wife

12  moved away, you haven't been able to talk to potential

13  witnesses because they won't take a call from the jail.  And

14  you're going to ask me to appoint a lawyer for you for trial?

15         MR. DE SOUZA PRADO:  Yes, Your Honor.

16         THE COURT:  If I don't dismiss -- and if I dismiss

17  this case, then there'd be the question of whether it should

18  be dismissed without prejudice.  That means the government

19  could just charge you again, and it would all start again.

20  Possibly.

21         Have you talked to Mr. Palmer about representing

22  you at trial?

23         MR. DE SOUZA PRADO:  Yes, but unfortunately he said

24  that he might be able to try the case in the fall and it's a

25  long way from now.

1          THE COURT:  Yeah, it's long.

2          MR. DE SOUZA PRADO:  I really like Mr. Palmer.

3          THE COURT:  You want Mr. Palmer.

4          MR. DE SOUZA PRADO:  No, I like it.  I don't say I

5    don't want it, but he's a good lawyer.

6          THE COURT:  I told you he's a good lawyer.

7          MR. DE SOUZA PRADO:  Yeah.

8          THE COURT:  I believe, as I recall.  Because he has

9    tried cases in front of me.

10         Well, I will appoint a lawyer to represent you --

11   and I know I'm jumping ahead a bit, but if I appoint a lawyer

12   to represent you and it's not Mr. Palmer, it's going to take

13   that lawyer a good amount of time to learn this case.  I will

14   say that if because of your desire to have a lawyer you -- we

15   can't have a trial soon, I would allow you to request, again,

16   that you be released before trial.  I'm not telling you I

17   would grant that motion, but I would reconsider it because of

18   the passage of time and other things because all of this is

19   organic.

20         Is there anything more you'd like to say on your

21   speedy trial related motions?

22         MR. DE SOUZA PRADO:  No, that's all I want to say,

23   Your Honor.  I feel that it was being violated because I

24   would always insist, pretty much all of my affidavits said

25   that I want to go for a speedy trial and --

 1              THE COURT:  Okay.

 2              MR. DE SOUZA PRADO:  -- Your Honor told me that you

 3    were going to grant me for pro se for pretrial procedures,

 4    but you're going to -- we're going to talk about trial when

 5    the time has come and we never had a chance to talk.

 6              THE COURT:  Well, you may have a more vivid memory

 7    than I do.

 8              And actually, I may take a break on this, because

 9    I'll have that transcript.

10              But it's your point, no matter what I said to you

11    previously.

12              MR. DE SOUZA PRADO:  Yes.

13              THE COURT:  I believe it would be in your best

14    interest to have a lawyer for any trial, and I believe it

15    would be in your best interest to have Mr. Palmer.

16              Let me ask -- again, I know I'm skipping ahead, but

17    this is of practical significance.  Let me do this.  The

18    government should speak to the speedy trial motions.  Go

19    ahead.

20              MR. HOLCOMB:  Thank you, Your Honor.  I don't know

21    that there's much more to cover on the Speedy Trial Act

22    question Your Honor has already covered.

23              THE COURT:  Well, go ahead.

24              MR. HOLCOMB:  The ends of justice exclusions that

25    the magistrate judge entered and --

1          THE COURT:  But speak to it.

2          MR. HOLCOMB:  But also defendant's own pro se

3    motions that he filed.  In addition to the ones already

4    noted, there was the August *Taylor* motion that was just

5    discussed, and then there were six subsequent motions between

6    September and up until I believe it was December 30th.  And

7    so really the -- it's the defendant's serial filing of the

8    pro se motions that is leading to an automatic exclusion

9    under the Speedy Trial Act that is just one of the -- several

10   reasons why the Speedy Trial Act period is not up and that is

11   not an issue here.

12          As to the constitutional questions, Your Honor, the

13   government briefed both the Fifth Amendment and Sixth

14   Amendment questions.  The Fifth Amendment claim that

15   Mr. Prado raised was a claim that his pretrial detention

16   violated the Fifth Amendment, not that his -- his

17   detention -- the delay led to lack of a fair trial, in

18   violation of the due process clause.  And so in the

19   government's brief, it somewhat repeats arguments earlier

20   made about the *Zannino* factors, but I would also note that as

21   to -- you know, acknowledging Mr. Prado didn't raise this

22   claim, as to a potential claim that the delay has resulted in

23   a due process violation in terms of not securing him a fair

24   trial, the standard was summarized by Your Honor in the *US v.*

25   *Bouthot* opinion, which is referenced in the government's

1    filing at docket 624.

2              THE COURT:  Hold on a second.  You're talking about

3    Bouthot, B-o-u --

4              MR. HOLCOMB:  That's correct.

5              THE COURT:  Can I have that?

6              That was 1980 what?

7              MR. HOLCOMB:  1988.

8              THE COURT:  Yeah, I remember the case vividly.  It

9    was prosecuted very honorably by Paul Kelly, as I recall.

10             Anyway.  One time.  It's okay.  Go ahead.

11             MR. HOLCOMB:  Your Honor, I cite *Bouthot* just

12   because it nicely summarizes the Fifth Amendment standard

13   for -- as to an unfair trial at page 297, "To prove a delay

14   violated those fundamental conceptions of justice, a

15   defendant must prove that, one, pre-indictment delay caused

16   substantial prejudice to his right to a fair trial, and two,

17   the government intentionally delayed indictment in order to

18   obtain a tactical advantage over the accused."

19             And so just briefly, I think with respect to the

20   first factor, whether the delay caused substantial prejudice

21   to his right to a fair trial, which Your Honor goes on to

22   note is not personal prejudice, but it relates directly to

23   his prejudice at trial, Mr. Prado has not come close to

24   indicating a potential prejudice that I think would satisfy

25   that factor.  And notwithstanding whether he could satisfy

1    the first factor, he hasn't made any claim that the second is

2    satisfied, that the government intentionally delayed

3    indictment in order to obtain a tactical advantage.  And so I

4    think that's why his Fifth Amendment due process argument

5    fails.

6            And Your Honor, just to make a couple other notes

7    while we're on the Fifth Amendment.

8            THE COURT:  What page on *Bouthot*?

9            MR. HOLCOMB:  It's 297.

10           THE COURT:  Okay.  Go ahead.

11           MR. HOLCOMB:  As to the arguments raised for the

12   first time today, there is, of course, a difference between a

13   witness not answering his calls, versus a witness not being

14   available, and the not answering the calls, needless to say,

15   likely may be the case three months ago, three months from

16   now, and so there's zero prejudice there.  And as to the

17   woman whose name on the account he's alleged to have

18   controlled, the last -- just for Your Honor's benefit, the

19   last that the government is aware, she is in Massachusetts.

20   So the government is not aware of that witness being

21   unavailable.

22           THE COURT:  And when he had control -- is this

23   somebody whose identity he stole, or this -- allegedly stole,

24   or someone who is an unindicted co-conspirator?  Who is this

25   person?

1          MR. HOLCOMB:  I would not call her an unindicted

2     co-conspirator.  She is somebody who the evidence shows that

3     Mr. Prado controlled her bank accounts by being able to

4     direct funds from co-defendants, or from at least one

5     co-defendant, I should say, to her bank account.  And those

6     funds were direct payment for identifiers that were being

7     exchanged over the course of the conspiracy.

8          THE COURT:  And she permitted her account to be

9     used, according to the government.

10          MR. HOLCOMB:  That's our understanding, yes,

11     Your Honor.

12          THE COURT:  All right.

13          MR. HOLCOMB:  And then, Your Honor, on the Sixth

14     Amendment speedy trial clause question, Mr. Prado has already

15     raised that the length of his detention so far may create a

16     presumption that it's presumptively long here.  But that

17     Your Honor has, in other opinions that we've cited, noted

18     that that's an assumption, and that's just a first threshold

19     assumption, but the real factors that the Court is to

20     consider are from *Barker v. Wingo,* 407 US 514, and those

21     factors are the length of the delay, the cause of the delay,

22     whether the defendant asserted his right to a speedy trial,

23     and whether the defendant was prejudiced by the delay.  And

24     the cases are clear that the focus -- the focus of this

25     inquiry is the reason for the delay.

1          In a couple of the cases that the government cited,

2    Your Honor found that the reason for delay was adequate and

3    there was no Sixth Amendment violation.  In Neto v. United

4    States, cited by the government in its opposition on --

5          THE COURT:  How do you spell that?

6          MR. HOLCOMB:  N-e-t-o.

7          THE COURT:  Go ahead.

8          MR. HOLCOMB:  It's cited on the government's

9    opposition on page 2.  This is, again, docket 624.  The

10   reason for the delay were the defendant's pretrial motions.

11   And then in the *Maxwell* case, cited on page 3 of the

12   government's opposition, the reasons for the delay were --

13         THE COURT:  You're talking about my decision or the

14   First Circuit decision in *Maxwell*?

15         MR. HOLCOMB:  Your Honor's decision.  The reasons

16   noted for the delay were the time to review discovery, as

17   required by co-defendants, a motion to sever, and a motion to

18   dismiss, as well as adequate time to prepare for trial.

19         And so, Your Honor, the government submits here

20   that there are more than adequate reasons for the delay --

21   that justified the delay here, including the complicated

22   nature of this fraud scheme, the extensive discovery, the

23   numerous co-defendants in this case, the request by counsel

24   for those co-defendants for additional time to review the

25   extensive discovery, the appointment of counsel for Mr. Prado

1    twice, and then the proceedings to determine whether he would

2    proceed pro se.  Mr. Prado's filing of -- by our count, of

3    approximately two dozen pro se motions, and plea proceedings

4    with respect to the other co-defendants that would determine

5    who else, if anybody, would be Mr. Prado's co-defendant at a

6    trial.

7              THE COURT:  And there were motions filed by other

8    defendants, as I recall, in this case.

9              MR. HOLCOMB:  That's correct, Your Honor.

10             THE COURT:  And they -- they, you know -- two in

11   some instances required hearings.  They certainly required

12   work.  And to the extent that -- did I have hearings on

13   those -- on any of those motions?

14             MR. HOLCOMB:  They were release motions.

15             THE COURT:  Motions, right.

16             MR. HOLCOMB:  That had been appealed to Your Honor.

17             THE COURT:  Right.  And then I had hearings, and

18   the pendency of those motions was because they required

19   hearings would stop the speedy trial clock for their

20   co-defendants, by operation of law, as its been interpreted.

21   And, you know, it's -- the really striving to find ways that

22   are fair and efficient to resolve this 18 defendant case,

23   with 15 defendants who -- are not fugitives and very

24   important to determine who's going to trial.  Because

25   ordinarily, the parties -- defendants would go to trial

1    together.  So it's been a challenge.  I'm scheduled to

2    sentence 13 defendants the week of February 20th.  Anyway.  I

3    think it's -- or 13th, maybe.  13th.  One of those weeks.

4         Do you want to say something else, Mr. Prado?

5         MR. DE SOUZA PRADO:  Yes, I just wanted to let you

6    know that I live in a place like the size of this courtroom

7    for 20 months and I think this is -- I feel like this is

8    cruel punishment, too.

9         THE COURT:  Okay.  Wait a minute, you live in a

10   place the size of this courtroom?

11        MR. DE SOUZA PRADO:  A little bigger, but almost

12   the same size.

13        THE COURT:  Your cell is as big as this courtroom?

14        MR. DE SOUZA PRADO:  No, I have my cell, but the

15   place we're allowed to go is just like this size.

16        THE COURT:  It's okay.  Okay.  Thank you.

17        Essentially, for the reasons described by the

18   government, the defendant's speedy trial -- motion to dismiss

19   based on speedy trial considerations, statutory

20   constitutional Rule 48, are hereby denied.  Those are docket

21   numbers 461 and 605.  The defendant objects to his pretrial

22   detention -- I'll add the following:

23        Essentially, the government has described my

24   reasoning, and I'll amplify it or supplement it.  But there

25   were many exclusions of time entered by the magistrate judge

1    in the interest of justice, properly, and her orders say with

2    the agreement of the defendants.  There were many motions.

3    There were some motions filed by some of the 15 co-defendants

4    that required hearings that stopped the speedy trial clock

5    for statutory purposes.  Mr. Prado filed many motions and

6    including filing them before scheduled hearings, before other

7    motions, before the government had a chance to respond.  And

8    I'm not required to have hearings multiple times in the same

9    case, even though there were essentially 15 defendants in

10   this case, it's not the only case that I have.  In the past

11   year, I've dealt with two MS-13 murder cases, one of them had

12   six defendants.  There are other important things going on in

13   the courthouse and I have to manage my docket in a way

14   that's -- that's as fair and efficient for everybody as

15   possible.

16          But basically, Mr. Prado objects, in part, to his

17   pretrial detention on Fifth Amendment due process grounds,

18   and he requests release and dismissal of his indictment.

19   That's in docket 542-1 and 605-1.  Pretrial detention is

20   authorized when no condition or combination of conditions

21   will reasonably assure the appearance of the person is

22   required and the safety of any other person in the community.

23   And due process violations relating to pretrial detention are

24   analyzed, under the factors enumerated in *Zannino*, 798 F.2d

25   544 and 547.  They include the seriousness of the charges,

1    the strength of the government's proof that the defendant

2    poses a risk of flight, the strength of the defendant's

3    government case on the merits, the length of detention and

4    the complexity of the case, and whether one side or the other

5    is needlessly added to that complexity.

6            I did seriously consider some time ago whether

7    there were a combination of conditions that would reasonably

8    ensure Mr. Prado's appearance in the future, and the

9    government had proven that there were not at that time.

10           The charges are serious.  I was told that the

11   guidelines for Mr. Prado may be -- is more than 100 months in

12   prison, if the two year aggravated identity theft applies.

13   Maybe I misunderstood, and that's not more than 78 months,

14   which I recall mentioned at -- I found some place in my

15   notes, but those charges are serious.

16           Based on what I know from having taken guilty pleas

17   from 13 defendants and heard the government's recitation of

18   the evidence, the evidence against the defendant is strong,

19   creating a risk of flight -- well, creating a strong case on

20   the merits, and creating a significant incentive for flight.

21   The detention has been 20 months and that's a long time.  And

22   as I said, if asked, I'll reconsider it.

23           The case is certainly complex.  It involves a

24   series of schemes related -- well, a conspiracy involving a

25   number of people to do -- commit wire fraud in a variety of

1    ways and to steal and misuse the identities of many people.

2    And the government hasn't needlessly contributed to the

3    complexity or the length of the detention.

4         If I were to find that there was an

5    unconstitutionally long period of detention under the Fifth

6    Amendment, for due process purposes, I believe the remedy

7    would be to release the defendant, not to dismiss the

8    charges.  That was the conclusion of the court in *Brown*, 2008

9    Westlaw 20646929.

10        With regard to the statutory speedy trial alleged

11   violations, the Speedy Trial Act does require the defendant

12   be brought to trial within 70 days of the filing of the

13   indictment, unless there's excludable time, or because there

14   are pretrial motions pending a hearing.  A district court's

15   determination of the hearing is needed is essentially a

16   discretionary decision that the First Circuit has said

17   requires substantial deference, that's *Ibrahim*, 814 F.3d, 30

18   at 33, and time is excluded whether or not a delay in holding

19   a hearing is reasonably necessary according to the Supreme

20   Court in *Henderson*, 476 US 321 at 330.

21        In this case, as I described earlier, I felt that

22   with regard to the pro se motions, which were in some cases

23   difficult to decipher.  A hearing was necessary.  Mr. Prado

24   has shown that today.  We've had hearings and he has told me

25   things that he didn't put in his written submissions or made

1    clear and we've had the hearing.  And time is also excluded

2    when co-defendants have motions that require hearings under

3    the jurisprudence.

4           In addition, with regard to this case, as I

5    understand it, the period of time from his -- Mr. Prado's

6    initial appearance to his first pretrial motion now pending,

7    was July 1, 2021, to March 15, 2022.  During that period,

8    257 days, Magistrate Judge Dein entered orders she wrote with

9    the agreement of the parties, excluding time to -- to serve

10   the interest of justice, pursuant to 18, United States Code,

11   Section 3161(h)(7)(B)(4).  There were also motions filed by

12   Mr. Prado and his co-defendants during this time, which

13   resulted in periods of excludable time, if they had not

14   already been excluded by the magistrate judge.

15          Then there's the period of time from the filing the

16   first motion being addressed today, number 322, to the

17   hearing on his pretrial motions.  That's another 308 days, I

18   think.  But as I said, the time -- it's been necessary to

19   have the hearing and I found waiting until now to be

20   reasonably necessary, and indeed, in this period, Mr. Prado

21   kept filing additional motions.  So I was, in part, waiting

22   to see when this moving target would stop, so I could address

23   all the motions, since many of them relate to each other at

24   one time.

25          Mr. Prado requested oral argument on some of the

1    motions.

2         I entered orders excluding time under the ends of

3    justice, dockets number 377, 414, 532, 621.  As I said, the

4    rescheduling of his pretrial conference order for August 24th

5    was caused in part because on August 18th, he filed another

6    motion to dismiss that the government then had a chance to

7    respond to.  That's essentially the statutory analysis.

8         With regard to the constitutional analysis, the

9    Sixth Amendment does guarantee a speedy trial, *Barker v.*

10   *Wingo*, 407 US 514 at 530, sets out a four factor balancing

11   test, including the length of delay between indictment and

12   trial, the reason for the delay, the defendant's assertion of

13   a speedy trial right, and prejudice to the defendant.

14        I discussed this somewhat in *Maxwell* 247 F.Supp.2d

15   25 at 28, a case that was affirmed by the First Circuit, at

16   351 F.3d 35.

17        I recognize that courts generally assume that a one

18   year delay is presumptively prejudicial and sufficient to

19   trigger the *Barker v. Wingo* analysis and to be factored into

20   the result of it.  The reasons for the delay are a focus, as

21   the First Circuit said in *Muñoz–Amado*, 182 F.3d 57 at 62.  In

22   *Muñoz*, the First Circuit determined that the defendant's 12

23   pretrial motions contributed to the 19 month delay between

24   his indictment and trial, and ultimately concluded the

25   defendant's speedy trial rights were not violated.  Similar

1    conclusion was reached in *Casas*, a 60 defendant drug case.

2    425 F.3d 23 at 34.  The First Circuit held that the delays

3    were due in large part to the resolution of pretrial matters

4    consuming the appellants and their co-defendants.  And the

5    appellants had filed 13, 19, and 28 motions.  Many analogies

6    to this case.

7           With regard to prejudice, one is preventing

8    oppressive pretrial incarceration.  And I accept that this

9    detention has been difficult for Mr. Prado.  Detention is

10   always difficult, but we've been in a COVID environment.  I

11   recognize that he's anxious, but anybody being faced with,

12   you know -- charged with what Mr. Prado is in this case, and

13   faced with the prospect of possibly going to prison for eight

14   or more years, would and should be anxious.  But if -- as the

15   evidence with which I'm familiar suggests, it turns out he is

16   convicted, he'll get credit on his sentence for this period

17   of pretrial detention.  He wouldn't get credit if he were

18   released, even if he was on home confinement and electronic

19   monitoring.

20          And a major factor under *Barker* is whether the

21   defense will be impaired.  But there's no evidence that any

22   witness has been lost and any evidence has been lost.  And in

23   that sense, the defense has not been impaired by the delay.

24          So, basically, given the case's complexity, the

25   fact that delay is largely attributable not just to the

1   complexity of the case, but the way Mr. Prado has presented

2   his case when he decided to represent himself, that's

3   contributed to the delay.  The government has done nothing to

4   contribute to the delay.  And I did have to resolve matters

5   relating to co-defendants in these pretrial motions.

6          I know Mr. Prado asserted a speedy trial right, but

7   as I said, it hasn't prejudiced his interest, certainly his

8   right to a fair trial, ability to get a fair trial.  So I

9   don't find that the delay is unreasonable.  And Rule 38(b)

10  does allow a court to dismiss an indictment when there's been

11  unnecessary delay in bringing a defendant to trial.  The

12  defendant must show that the delay caused him prejudice or

13  was improperly motivated.  The Supreme Court -- the First

14  Circuit said in *Fleming*, 378 F.2d 502 at 504, Prado --

15  Mr. Prado has shown neither.  So the speedy trial motions are

16  denied.

17          Look, it's now five of 1:00 -- well, I want to say

18  one other thing.  Mr. Prado has requested that if he remains

19  detained, he wants to be in a restorative justice program.

20          Is that right?

21          MR. DE SOUZA PRADO:  Yes.

22          THE COURT:  And this program at Wyatt -- here, I'll

23  ask the probation officer to identify herself.

24          THE PROBATION OFFICER:  Good afternoon, Your Honor,

25  Martha Victoria from the probation office.

1          THE COURT:  And is there a restorative justice

2     program for which the defendant might be eligible at Wyatt

3     and is it continuing if his -- or will it be continuing if

4     his detention continues?

5          THE PROBATION OFFICER:  Your Honor, so the

6     restorative justice program at Wyatt was approved for a pilot

7     program of three sessions, to be held at Wyatt.  We had one

8     in July of 2022, one in October of 2022, and the third one is

9     scheduled for next week.

10          I'm advised that it's too late for Mr. Prado to

11    join a potential session next week, given the approvals that

12    are necessary to get into the program, as well as advanced

13    preparation that they do for the program.  There is -- that

14    would be the three pilot sessions.  It has been a success,

15    and so the hope is that the judges will need to meet and

16    approve further sessions to take place at Wyatt.  So there

17    are no further sessions scheduled for 2023, but if this case

18    gets continued, there may be further sessions this year,

19    subject to the Court's approval.

20          THE COURT:  You mean all the judges.

21          THE PROBATION OFFICER:  All the judges, exactly.

22    Not just you.  Yes, Your Honor.  All of the judges

23    collectively.

24          THE COURT:  Well, it sounds like there's no program

25    in which, as a practical matter, Mr. Prado, you could

1    participate in now.  However, if you're still detained and

2    you learn the program has started again, you can ask to be in

3    it.  You can tell me you asked to be in it.  And since I

4    understand you seriously want to be in it, I'll recommend it.

5    Okay?

6              MR. DE SOUZA PRADO:  Thank you, Your Honor.

7              THE COURT:  So we need to talk about the -- the

8    trial, but I think we're going to need to break for lunch in

9    a few minutes.

10             Mr. Prado, am I right, do I understand that you

11   would like counsel appointed for trial?

12             MR. DE SOUZA PRADO:  Yes, Your Honor, but at the

13   same time, I don't want the trial to be at the end of the

14   year.

15             THE COURT:  Yeah.  Well, you created the dilemma.

16   If you hadn't been representing yourself for all of this

17   time, you'd have a lawyer who would be up to speed, so to

18   speak.  And a lawyer who would have responded to the order

19   that I issued on December 22nd.  Do you want to tell me why

20   you didn't?

21             MR. DE SOUZA PRADO:  I received the order on

22   January 10th.

23             THE COURT:  You received it on January 10th?

24             MR. DE SOUZA PRADO:  Yes.

25             THE COURT:  Okay.  The right thing to do in those

1    circumstances -- and I don't know why you received it on

2    January 10th, when it was issued about three weeks earlier,

3    but I believe you --

4              MR. DE SOUZA PRADO:  Yeah, I got it.

5              THE COURT:  No, I believe you.  The right thing to

6    do is to file something, you know how to file things, and

7    say, "I didn't receive your order until January 10th.  Please

8    give me until X to respond."  And then I would have allowed

9    that, within reason.

10             All right, so Mr. -- we're not going to resolve

11   this before lunch, you know, but Mr. Palmer -- and we'll

12   separate out -- you can tell me about the scheduling issues,

13   but are you willing to represent Mr. Prado again, assuming

14   you're given a reasonable amount of time to prepare and your

15   other obligations are taken into account as to when the trial

16   in this case would be?

17             MR. PALMER:  Well, if -- I think to answer that

18   question, it depends upon the timetable of the Court.

19             THE COURT:  Okay.  Explain that to me, please.

20             MR. PALMER:  Well, I have not -- I've been

21   representing him pro se -- he's represented himself pro se.

22   I have not prepared the case and you've mentioned that it's a

23   complex case.  I have not delved into the details of the

24   discovery in this case.  So the way that I look at it, I

25   would be preparing the case as if new counsel were appointed

1    for trial, because I wasn't appointed for trial.  So having

2    that in mind, I've explained to Mr. Prado, there's no way I

3    could do March 6th.

4            THE COURT:  No.  And it wouldn't be March 6th.

5            MR. PALMER:  And I had suggested to him the fall.

6            THE COURT:  Well, here.  We need to go step by

7    step.  I mean, two things, or a series of things.  We'll take

8    a long enough break so you can -- it looks like you started

9    talking, but now Mr. Prado knows his case is not being

10   dismissed.  And in fact, I'll give you a chance to talk

11   probably beyond today, if necessary.  But Mr. Prado, you've

12   got a dilemma.  And you contributed to creating the dilemma.

13   I warned you about the risks of representing yourself.

14   You -- I'm satisfied you understood them.  You decided to

15   take them -- one of the risks was that you would change your

16   mind and you would want a lawyer for trial.  And I'll try to

17   look at the transcript of that colloquy before we come back,

18   but here's your dilemma at this point.  You could tell me --

19   and I'd ask you some more questions, I think, about it, that

20   you want to continue to represent yourself.  Then I would

21   have to explain to you the difficulty at trial of

22   representing yourself.

23           I assume you would like the jury to hear -- well,

24   if you wanted -- I won't assume anything.  I don't know

25   whether you would testify.  But anything you would say as

1   your own lawyer would not be evidence.  So if you didn't

2   present witnesses or testify yourself, the jury would have

3   only the government's evidence.  You could cross-examine the

4   witnesses, if you were able to do it properly -- well, to the

5   extent you were able to do it properly.  And you would have

6   to follow the rules of evidence and you would have to follow

7   the rules of procedure.

8          If you wanted to testify yourself, you couldn't

9   just get on the stand and start talking.  You'd have to ask

10  yourself a question and then wait to see if there was an

11  objection.  If there's no objection, you could answer it.  If

12  I sustained an objection, you couldn't answer it.  But it's a

13  challenging way to get information persuasively to a jury.

14  Those would be some of the issues.

15         If you want a lawyer, I would like to appoint

16  Mr. Palmer.  I would have to give him a reasonable time to

17  prepare.  And the other thing that I'm going to build into

18  this -- we have to go step by step -- is a chance for you, if

19  you're representing yourself, or Mr. Palmer, if he's

20  representing you -- and if I were to appoint a different

21  lawyer than Mr. Palmer, I agree, it would take that new

22  lawyer at least as long to prepare.  If you go to trial, you

23  need to be effectively represented by a well-prepared,

24  informed attorney.  So I don't know how long that would be.

25         If you have a lawyer, and even if you don't, now

1     that you know the case is not going to be dismissed -- well,

2     if you had a lawyer, you had a lawyer -- well, now that you

3     know the case is not going to be dismissed, your lawyer could

4     talk to the government on your behalf about whether there's

5     some mutually agreeable way to resolve the case.  You would

6     have the advice of a lawyer on that.  Is it in your interest

7     to go to trial?  I think -- I don't know if you and

8     Mr. Palmer have ever discussed this, but the federal -- the

9     sentencing guidelines, they're only advisory.  And I do have

10    to start every sentencing by correctly calculating the

11    guideline range.  But I can't presume that range is

12    reasonable.  And then there are a series of factors I have to

13    consider.  And the lawyers argue them, and the defendant, if

14    he wants, can speak.  And I decide what sentence is

15    sufficient and no more than necessary.

16             And I'm not trying to encourage you to plead

17    guilty.  It's entirely up to you.  I can't be involved with

18    that.  But I want you to be in a position to make an informed

19    decision to what you think is in your best interest.  And the

20    lawyers advise their clients.  The clients don't have to

21    follow their advice.  But 14 of the 15 defendants who aren't

22    fugitives in this case have each decided it was in their

23    interest to plead guilty.  Maybe you think the evidence is

24    much weaker against you than the others, but sometimes, not

25    always, there are benefits to pleading guilty.  Sometimes

1     there are not.

2              But I'm going to order that we do this.  It's five

3     after 1:00.  About how long will it take to get Mr. Prado

4     fed?  Maybe.

5              THE MARSHAL:  We could do whatever --

6              THE COURT:  I want to leave enough time for him to

7     talk to his standby counsel, Mr. Palmer.

8              Will he be fed within about 45 minutes or

9     something?

10             THE MARSHAL:  We could bring him down right now and

11    give him some lunch.

12             THE COURT:  Okay.  And Mr. Palmer may be getting

13    hungry, too.

14             MR. PALMER:  Let me just throw out an idea,

15    Your Honor.

16             THE COURT:  Go ahead.

17             MR. PALMER:  One is to -- if he definitely wants

18    counsel to represent him, and I'm getting the Court's drift

19    that you will appoint him counsel for the trial.

20             THE COURT:  Right.

21             MR. PALMER:  His decision, or my decision, frankly,

22    as to whether it's feasible for me might be related to a

23    rehearing on his motion to --

24             THE COURT:  This is where I was going next.  We're

25    on the same wavelength.

 1              MR. PALMER:  Okay.

 2              THE COURT:  I just want you to have a chance --

 3    we're not going to get this resolved today.

 4              MR. PALMER:  Okay.

 5              THE COURT:  I want you to have -- each have a

 6    chance to eat something.  I'd like to eat something, too, and

 7    begin discussing this.  And then we'll come back, I would

 8    say, around 2:30.  2:30.  And see where we are and how we

 9    should proceed.

10              But -- because I said, one of the -- like he has

11    been detained a long time.  I realize it.  I was engrossed in

12    the detention issues when I had to decide them, the way I get

13    immersed into almost everything that I have to decide.  But

14    time has gone by.  So -- and as I said, I would not consider

15    a motion for release at this time to be barred by what I

16    decided previously.  I would consider it essentially *de novo*,

17    in view of present circumstances.  The -- some of the

18    government's arguments may be exactly the same.  But so I'm

19    not saying I would grant release, but I am saying I would

20    consider it.

21              You know, whether he wants to move for release, it

22    may also relate to whether there's a chance that you would

23    resolve the case by agreement or want a chance to try to see

24    if you can.  Because as I said, if -- you know, if he's not

25    convicted, I will join him in regretting that he's been

1    locked up this long before trial.  If he is convicted, he'll

2    get credit for it.  He'll be able to get out faster.  These

3    are all things that I know you would discuss with him.  You

4    know all of this.

5          But why don't we come back at, say, 2:30, and in

6    this period, he'll eat.  The two of you should meet.  Tell me

7    what you propose and then you can -- we'll see where we go.

8    But I'll give you a time to report back to me.  Okay.

9          MR. PALMER:  Okay.

10         THE COURT:  After today.

11         MR. PALMER:  Well, so what I was going to suggest,

12   and I'll just throw it out there, is having a short status

13   date at which we could also have the motion for detention

14   reheard.  In other words --

15         THE COURT:  But you can -- that's possible.  I've

16   got -- my schedule is incredibly full, I'll tell you, just so

17   you know.  The next six weeks, I'm scheduled to resolve --

18   I'm starting a trial on February 6th.  It may -- I issued an

19   order on this last week -- interfere with my ability to hear

20   argument on common objections of the 13 defendants scheduled

21   to be sentenced in this case the week of February 13th.  In

22   order to do that, I'm having to postpone a hearing on a

23   motion to suppress, an evidentiary hearing.  I'm going to be

24   away from the courthouse for a couple of days at the

25   beginning of February and then, again, so --

 1            Talk to your client, but, you know, we spent the

 2    day on these motions.  I've -- you know, if there's a motion

 3    for detention, you'll have to -- the -- for release, again,

 4    you'll have to brief it.

 5            These prosecutors are busy.  They're going to be

 6    doing 13 -- in fact, one of them, now, is going to have to be

 7    postponed to the following week, but they've got many --

 8    they've got a lot to do in this case.  So I would hear the

 9    motion reasonably promptly, but Mr. Prado needs to understand

10    the context of this, because this is a US District Court,

11    it's not -- all right, just with this, I'll stop there.

12            MR. PALMER:  So I will talk to him, Your Honor.

13            THE COURT:  Yeah, talk to him about it.

14            MR. PALMER:  Just in terms of my own thinking and

15    scheduling, I know it seems like a long time in the future,

16    but September would be a better trial date for me.  However,

17    I know from my discussions already, that that's not

18    acceptable --

19            THE COURT:  But that's part of why I want you to

20    say.  You -- you discuss these things with him.  He may want

21    some time to think about whether he's going to represent

22    himself at trial, but as I said, now you can come back at

23    2:45.

24            MR. PALMER:  Okay.

25            THE COURT:  And I've got other things to do today.

1    Mr. Prado has a dilemma and if he -- but it's a dilemma that
2    he created.  If -- many of these motions, if they had been
3    filed by a lawyer, and they wouldn't have been, would be
4    regarded as frivolous, baseless, and the motions contributed
5    to the time it's taken to get to this motion hearing.  So he
6    can go to trial and represent himself, which I will, again,
7    go through the common questions to make sure he understands
8    what that is, or I'll appoint you.  And if I appoint you,
9    you'll have to have a reasonable time to prepare, and I'll
10   deal with this case as promptly as I can, but in the context
11   of all the other cases that I've got, including the 13 --
12   well, it's going to be 14 people, to sentence in this case.
13   14.  That's a lot.  All right.  We'll be in recess until
14   2:45.
15              (Court in recess at 1:14 p.m.
16              and reconvened at 2:46 p.m.)
17              THE COURT:  Actually, I think Marshal Perez may
18   have an update for us on the medical question.
19              THE MARSHAL:  Yes, Judge.  Wyatt reports that, upon
20   intake in June of 2021, Mr. Prado says he has a history of
21   sleep apnea and the medical doctor ordered for a C-PAP
22   machine to be allowed in from home, but that was in July of
23   2021.  He said the machine has never shown up.  There's zero
24   mention of sleep apnea issues in the medical record, but he
25   does mention that his MH meds make him sleep during the day,

1    and he wakes up with the side effects of his meds, nothing

2    about gasping or snoring, classic sleep apnea symptoms, and

3    he went through all 48 --

4                THE COURT:  Not too fast.

5                THE MARSHAL:  Sorry, Judge.  He said that he went

6    through about 48 medical record requests, and there was

7    nothing mentioned about sleep apnea issues, symptoms, or

8    C-PAPs since the intake.

9                THE COURT:  There are C-PAPs?

10               THE MARSHAL:  No.  He said there was no mention of

11   the sleep apnea symptoms or C-PAP since the intake.  He said,

12   upon his arrival, July of 2021, the facility allowed him to

13   bring it in, but nobody has ever dropped it off.

14               THE COURT:  So it's your understanding that the

15   facility would allow him to bring it in, if he had a C-PAP?

16               THE MARSHAL:  Yes, sir.

17               THE COURT:  All right.  Well, I think that,

18   Mr. Palmer, if you're going to be representing, we'll see

19   where we are, but either you or Mr. Prado can work with the

20   marshals to get him the C-PAP.

21               Okay, Mr. Prado?

22               MR. DE SOUZA PRADO:  Okay, Your Honor.

23               THE COURT:  All right.  Mr. Palmer, have you and

24   Mr. Prado talked about how he wishes to proceed?

25               MR. PALMER:  We did, Your Honor.

1          THE COURT:  And did he tell you how he wishes to

2     proceed?

3          MR. PALMER:  Right.  So --

4          THE COURT:  And Mr. Prado, I'm going to let

5     Mr. Palmer tell me what he understands about how you would

6     like to go ahead in this case and then I'll hear from you.

7          MR. PALMER:  So I think that it's clear now that

8     Mr. Prado wants representation.  He wants a lawyer to

9     represent him at trial.  As you know, I was only appointed

10    for pretrial proceedings.

11         THE COURT:  Actually, that's not quite right.  I

12    read the order, it said at least for pretrial proceedings.

13         MR. PALMER:  Right.

14         THE COURT:  And -- anyway, but go ahead.  It's not

15    material.

16         MR. PALMER:  All right.  So I have -- so I've

17    presented -- in terms of my representation to him and to the

18    Court, is that I have not prepared this case for trial, and I

19    would -- it's as if I'm new counsel.  That that's the way I

20    look at it.

21         THE COURT:  And I think it's the proper way to look

22    at it.

23         MR. PALMER:  Yeah.  And I would be asking for a

24    trial in September.  No earlier than September.  Now -- given

25    the complexity of the case.

1          Now, Mr. Prado, it may be that if the Court -- and

2     he's indicated that -- he's indicated that if the Court were

3     to appoint counsel who could try it earlier, could represent

4     to the Court that they would be able to try it earlier than

5     that date, that he would like to have other counsel

6     appointed, so he --

7          Now, both -- and this is the contingency.  The

8     calculus changes if the Court were to release him because one

9     of his concerns is continued detention, because that's one of

10    his complaints.  So the issues are related.

11         THE COURT:  Yeah.  They're related.

12         Mr. Prado, has Mr. Palmer accurately explained your

13    position?

14         MR. DE SOUZA PRADO:  He has, Your Honor.

15         THE COURT:  All right.  Well, let me tell you how

16    this works.  Again, because I read what I said to you and

17    what you said to me when you decided to represent yourself.

18    You're entitled to court appointed counsel.  And I continue

19    to believe it would be in your interest to have it.  You're

20    not entitled to the counsel of your choice.  And I don't

21    know, as a practical matter, how I would find anybody who's

22    qualified to represent you, who would tell me anything

23    differently than what Mr. Palmer just told me.

24         So as a practical matter -- and, in fact, you told

25    me at the December 17th, '21 hearing, when you said you

1    wanted to represent yourself for all purposes, including

2    trial, and you wanted that because you liked Mr. Palmer, you

3    knew he was a good lawyer, but he wouldn't file certain

4    motions that you wanted filed, like your *Taylor* motion.

5              MR. DE SOUZA PRADO:  Yeah.

6              THE COURT:  Do you remember that?

7              MR. DE SOUZA PRADO:  I do.

8              THE COURT:  Right.  And I said to you at the end of

9    the hearing, on page 21, that if you changed your mind about

10   representing yourself, you might not have a right to counsel,

11   but to let me know.  Just let me know.  But I went on to

12   say, "I continue to think that even if you work ten hours a

13   day, this is very risky business for you, and it's a decision

14   you may come to regret.  But you made it knowingly.  You were

15   fully involved -- informed of the risks involved.  But if at

16   some point you're sitting in prison for a long time, even

17   longer than you might otherwise have been sitting in prison,

18   or sitting in prison when a good lawyer might have kept you

19   out of prison, just remember, that's a result of the decision

20   that you made today."

21              So here's the dilemma.  If you want a lawyer to

22   start representing you now, if you want a lawyer to prepare a

23   motion for your release, I'll appoint Mr. Palmer.  I'm not

24   going to go through a futile and inappropriate effort,

25   because you have a relationship with Mr. Palmer, and he knows

1    something about this case, although not what he would need to

2    know to try it soon.

3             I'm not necessarily saying the trial will be in

4    September, Mr. Palmer.  That's reasonable.  Maybe it will

5    turn out that your work, your schedule suggests it could be

6    tried earlier.  But I think the operative assumption should

7    be we're talking about September.  And I'll hear from the

8    government on this, too.  And all time until trial would have

9    to be excluded for Speedy Trial Act purposes, statutory and

10   constitutional.

11            So here's the situation you have, Mr. Prado.  It's

12   exactly the one I anticipated when I urged you to keep

13   Mr. Palmer as your counsel in December 2021.  You can try the

14   case yourself, on or about March 6th or soon after.  Or you

15   can have Mr. Palmer represent you and we'll go step by step.

16   But you should understand that it's likely there will be no

17   trial before September.

18            MR. DE SOUZA PRADO:  Yeah, I -- I would like to

19   have Mr. Palmer as counsel.

20            THE COURT:  You what?

21            MR. DE SOUZA PRADO:  I would like to have

22   Mr. Palmer as my counsel and try on September.

23            THE COURT:  You want him to represent you at trial

24   in September --

25            MR. DE SOUZA PRADO:  Yes.

1           THE COURT:  -- if necessary.

2           MR. DE SOUZA PRADO:  Yes.

3           THE COURT:  Okay.  And you understand you're giving

4    up your statutory, constitutional, and any other rights you

5    might have to a speedier trial?

6           MR. DE SOUZA PRADO:  Until September.

7           THE COURT:  Until September.

8           MR. DE SOUZA PRADO:  Yes.

9           THE COURT:  Does the government have concern about

10   that?  Actually, do I have a calendar up to the end of the

11   year?

12          THE DEPUTY CLERK:  I think you have it up until

13   October.

14          MR. HOLCOMB:  Your Honor, the government does not

15   have a concern with that plan.

16          THE COURT:  All right.  I'm scheduling the trial.

17   And we'll be having another hearing and I'll issue a pretrial

18   order, but September is far off.  Sometimes people have

19   medical issues, sometimes my availability might change

20   somewhat, but I'll schedule the trial for Monday, September

21   11, 9:00 a.m.

22          As requested by the defendant, all time until then

23   is excluded in the interest of justice for all speedy trial

24   purposes, statutory, constitutional, under Rule 48.  Because

25   it's very much in Mr. Prado's interest and in the interest of

1    justice that he be represented by counsel, particularly

2    Mr. Palmer.  And the time to prepare that Mr. Palmer has

3    requested is reasonable and necessary to properly represent

4    Mr. Prado, who, as I said earlier, created this dilemma for

5    himself.

6            If, as I expect, the defendant wants to file a

7    renewed motion for pretrial release, I'm scheduling a hearing

8    on that motion for February 23rd, 2023, at 10:00 a.m.  The

9    motion shall be filed by February 3rd.  It will have to

10   describe with specificity the proposed conditions of release,

11   including where the defendant would reside.  I think last

12   time he was seeking release to Florida.  Framingham may also

13   have been mentioned, but I need to know precisely where.

14   Probation needs to be able to check any proposed residence.

15   And you should discuss with Mr. Palmer what proposed place he

16   thinks would give you your best chance of my finding that

17   there are conditions on which you can be released.  There

18   might be arguments that Framingham or Massachusetts is safer

19   than Florida.  I don't know.

20           Any opposition shall be filed by February 10.  Any

21   reply by February 15.  And we'll also discuss pretrial

22   issues.

23           I have some ambivalence about whether I should

24   direct that you confer about whether you can reach some

25   agreement to resolve this case before that February 23rd

1      hearing, once Mr. Prado knows whether or not he's going to be

2      released, he might have another piece of material information

3      from his perspective.  But do the parties think it

4      would be -- particularly the defendant, Mr. Palmer, think it

5      would be worthwhile for you to at least begin those

6      discussions with the government and your client?  You know,

7      there's a range of ways a case can be resolved, but -- or do

8      you want to wait until after February 23?  If you start the

9      discussions, it might, conceivably -- I'm not saying

10     predictably, save some work.  Because you should start

11     getting into the discovery and preparing for trial

12     immediately.

13                MR. PALMER:  We have talked, Your Honor.

14                THE COURT:  What's that?

15                MR. PALMER:  We have discussed -- I have discussed

16     with the government and --

17                THE COURT:  Yeah.

18                MR. PALMER:  -- we've sort of reached a dead end.

19     Let me put it that way.

20                THE COURT:  Right.  Okay.  But the -- and you may

21     again, but I think I'll do the following.  I gave you

22     February 3rd to file that motion.  Today is the 18th.  I'm

23     ordering that, by February 1, two weeks from today, talk to

24     your client, talk again with the prosecutors, and just report

25     whether you've reached an agreement to resolve the case.

1  And, you know, if you have, as 14 of Mr. Prado's

2  co-defendants have, you know, I'll have a Rule 11 hearing,

3  probably before February 23rd.  If not, we'll have that

4  hearing.  I'll decide the motion for release as soon as I

5  can, and issue a revised pretrial order.

6          But in the interim, neither party has to respond

7  further to my December 22, 2022 pretrial order.  All right?

8          Is there anything further in this matter for today?

9          Mr. Prado?

10          Your client has raised his hand.

11          MR. DE SOUZA PRADO:  I just want to apologize for

12  all the trouble and especially for the motion to recuse.  I

13  learned along the way, so I didn't know back then.

14          THE COURT:  That -- that's okay.  It's -- thank

15  you.

16          Court is in recess.

17          (Court in recess at 3:03 p.m.)

18

19

20

21

22

23

24

25

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4            I, Rachel M. Lopez, Certified Realtime Reporter, in

5       and for the United States District Court for the District of

6       Massachusetts, do hereby certify that pursuant to Section

7       753, Title 28, United States Code, the foregoing pages

8       are a true and correct transcript of the stenographically

9       reported proceedings held in the above-entitled matter and

10      that the transcript page format is in conformance with the

11      regulations of the Judicial Conference of the United States.

12

13                    Dated this 10th day of February, 2023.

14

15

16

17            /s/ RACHEL M. LOPEZ

18

19

20      _____
        Rachel M. Lopez, CRR
21      Official Court Reporter

22

23

24

25