UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 21-cr-10158-7-MLW |
| THIAGO DE SOUZA PRADO, | |
| Defendant | |

**GOVERNMENT'S TRIAL BRIEF ADDRESSING
ANTICIPATED TRIAL ISSUES**

The United States submits this trial brief to address evidentiary and legal issues pertinent to the trial of Thiago Prado, which is currently set to begin on September 11, 2023. The government anticipates that its case in chief will take at least five full trial days.

**THE INDICTMENT**

The grand jury returned a Third Superseding Indictment in this case as to the defendant Prado, leaving in place the Second Superseding Indictment as to all other defendants. The Third Superseding Indictment charges the defendant with one count of wire fraud conspiracy, three counts of wire fraud, and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1349, 1343, and 1028A, respectively. The conspiracy alleged in the Third Superseding Indictment represents a narrowing of the conspiracy relative to the prior indictment. Count One alleges a conspiracy involving the defendant, Wemerson Aguiar, Luis Alves Neto, Flavio Da Silva, and others known and unknown.

**EVIDENTIARY ISSUES**

The government has filed motions *in limine* requesting that the Court make preliminary findings as to the authenticity and/or admissibility of certain evidence that the government

anticipates offering at trial, including written and recorded communications between the defendant and co-conspirators.  The United States conferred with counsel for the defendant regarding stipulations as to authenticity of the evidence, reserving all other objections, but the parties could not agree.

### A.     Admissibility of English Translations of Brazilian Portuguese

The government anticipates offering into evidence English translations of Portuguese communications between the defendant and his co-conspirators.  Given the defendant's position on stipulations, the government will offer testimony by the translators who prepared the translations regarding the qualifications of the translators, the process of preparing the translations, and the accuracy of the prepared translations.  *See*, *e.g.*, *United States v. Rengifo*, 789 F.2d 975, 982-83 (1st Cir. 1986) (noting that two translators testified that they transcribed conversations in Spanish and then translated them into English, and that defense counsel cross-examined the translators about their familiarity with different Spanish dialects).  If the defendant does not articulate a challenge to the accuracy of the translations, then these translations should be admitted into evidence.  *See United States v. Font-Ramirez*, 944 F.2d 42, 49 (1st Cir. 1991) ("In failing to submit an alternative [English translation] transcript or to raise specific objections, [defendant] lost the opportunity to effectively contest its admission.").

### B.     Admissibility of Defendant's Statements

The defendant's statements, if offered by the government, are non-hearsay because they are statements of a party opponent.  Fed. R. Evid. 801(d)(2)(A).  The government may also introduce statements, whether oral or written, of third parties to provide necessary context or background to understand the defendant's statements.  *See, e.g.*, *United v. Page*, 521 F.3d 101, 106 (1st Cir. 2008); *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995).  Unlike the government,

the defendant may not offer or elicit his own prior statements at trial because those statements are hearsay as to him. *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007). The defendant is not permitted to circumvent this rule by eliciting his own statements through the cross-examination of other witnesses. *United States v. Bauzo-Santiago*, 49 F. Supp. 3d 155, 157 (D.P.R. 2014) (prohibiting defendant from eliciting defendant's "out-of-court statement during cross-examination of government witnesses to impeach the witnesses") (citing *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) and *United States v. Hudson*, 970 F.2d 948, 956 (1st Cir. 1992)). Further, merely because the government presents only a subset of the defendant's out-of-court statements, the defendant is not entitled to present other statements under the rule of completeness absent a need to avoid "misunderstanding or distortion." *United States v. Simonelli,* 237 F.3d 19, 28 (1st Cir. 2001) (rule of completeness "does not permit the admission of otherwise inadmissible evidence simply because one party has referred to a portion of such evidence, . . . rather, it operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement").

### C.    Admissibility of Co-Conspirator Statements

The defendant is charged with a conspiracy to create fraudulent driver accounts with rideshare and delivery companies and to rent or sell the accounts to individuals who might not otherwise qualify to drive for those services (Count 1). The defendant worked with one or more co-conspirators over the course of the charged conduct—variously, by sourcing personally identifiable information ("PII") like Social Security numbers and driver's license information, by creating the fake driver accounts with the rideshare or delivery companies, by distributing fake driver accounts to other individuals to use, by consulting with each other about how to keep fake accounts from being deactivated by the rideshare and delivery companies; and by using

unauthorized technology like GPS "spoofing" or "bots" to further profit from the use of fake accounts. For all of the individuals who conspired with the defendant, their statements during the charged period are admissible under Fed. R. Evid. 801(d)(2)(E).

"Under Rule 801(d)(2)(E), an out-of-court statement made by a party's co-conspirator during and in furtherance of the conspiracy does not constitute inadmissible hearsay, even when admitted for its truth." *United States v. Pena*, 24 F.4th 46, 61 (1st Cir. 2022) (*citing United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977) and Fed. R. Evid. 801(d)(2)(E)). Under *Petrozziello*, the Court must determine whether, "(1) when the statement was made, the declarant was a member of a conspiracy, (2) the defendant was also (or later became) a member of the same conspiracy, and (3) the statement was made in furtherance of that conspiracy." *United States v. Weadick*, 15 F.4th 1, 8 (1st Cir. 2021) (citing *United States v. Saccoccia*, 58 F.3d 754, 778-79 (1st Cir. 1995)); *accord Pena*, 24 F.4th at 61. A *Petrozziello* finding is made under a "preponderance of the evidence" or "more likely than not" standard, *Petrozziello*, 548 F.2d at 23, considering the totality of the evidence, *United States v. Mitchell*, 596 F.3d 18, 23 (1st Cir. 2010).

The Court must make that *Petrozziello* inquiry at the close of all evidence. *See, e.g.*, *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980) (holding that the *Petrozziello* finding is to be made "at the close of all the evidence" and noting that "requiring trial courts to delay *Petrozziello* rulings until the conclusion of all the evidence would not create any significant additional demands or difficulties"); *accord United States v. Mangual-Garcia*, 505 F.3d 1, 8 (1st Cir. 2007) ("[T]his circuit requires the court to delay its final *Petrozziello* determination until the close of all evidence."). Thus, to the extent the defendant objects to the admissibility of co-conspirator statements offered under Rule 801(d)(2)(E), the Court may nevertheless conditionally

admit them and, at the close of all the evidence, make a final determination out of the hearing of the jury. *Ciampaglia*, 628 F.2d at 638.

### D.     Admissibility of Business Records and Public Records

The government intends to introduce certain business records, including bank account records, under Fed. R. Evid. 803(6) and 902(11).  As is required by Fed. R. Evid. 902(11), the government will provide the defendant with copies of these records and copies of certifications prepared by the records custodians pursuant to Fed. R. Evid. 902(11), and will continue to do so in a consistent fashion pursuant to its obligation to supplement discovery under Local Rule 116.7.

Fed. R. Evid. 803(6) provides that business records may be admissible as self-authenticating, non-hearsay evidence "if certified according to Fed. R. Evid. 902(11)."  *See Federal Trade Comm. v. Direct Marketing Concepts, Inc*., 624 F.3d 1, 16 (1st Cir. 2010).  Rule 902(11) provides for the admissibility of "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11).  The declaration under Rule 902(11) must establish that:

A.      the record was made at or near the time by—or from information transmitted by— someone with knowledge;

B.      the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and]

C.      making the record was a regular practice of that activity . . . .

Fed. R. Evid. 803(6).  The Court should admit the offered records as business records under Rule 803(6) that are properly certified as authentic copies of domestic records under Rule 902(11). Because these records were created automatically in the ordinary course of their business

operations, and not created for the purpose of this prosecution, their admission without a live

witness does not present Confrontation Clause issues of the type underlying the Supreme Court's

decision in *Crawford v. Washington*, 541 U.S. 36 (2004).  *See United States v. Cameron*, 699 F.3d

621, 641-42 (1st Cir. 2012) (Yahoo! and Google subscriber records not created for the purpose of

the prosecution are non-testimonial).  The underlying records are accordingly admissible pursuant

to Fed. R. Evid. 803(6) and 902(11).  *See also Crawford*, 541 U.S. at 56 (noting that business

records are non-testimonial "by their nature").

The government also may introduce certain public records under Fed. R. Evid. 803(8).

Rule 803(8) provides an exception to the hearsay rule for public records from a public agency or

office, relating to an activity of the office.  "Records kept . . . [b]y public agencies may be

admissible under the business records exception, Fed. R. Evid. 803(6), as well as under the public

records exception, Fed. R. Evid. 803(8)."  *United States v. Bohrer*, 807 F.2d 159, 162 (10th Cir.

1986) (internal citations omitted).

### E.    Admissibility of Summary Exhibits of Voluminous Records

The government may seek to admit exhibits that summarize voluminous financial and

business records.  These "summary tools" are admissible "to clarify complex testimony and

evidence" under Fed. R. Evid. 1006.  *See United States v. McElroy*, 587 F.3d 73, 81 (1st Cir. 2009);

*see also United States v. Appolon*, 695 F.3d 44, 61-62 (1st Cir. 2012) (affirming admission of

summary exhibits that obviated the need for "the jury to sift through[] mortgage and sale records

for each of the twenty-one properties involved in appellants' scheme[] and also facilitated tracing

the scheme's proceeds").  Summary exhibits are admissible either individually or in addition to

the underlying records.  *United States v. Milkiewicz*, 470 F.3d 390, 396–97 (1st Cir. 2006)

("[W]hile in most cases a Rule 1006 chart will be the *only* evidence the fact finder will examine

concerning a voluminous set of documents, in other instances the summary may be admitted *in addition to* the underlying documents to provide the jury with easier access to the relevant information.") (citations omitted).  And the government may also elicit testimony to describe and explain the summary exhibits.  *McElroy*, 587 F.3d at 81 ("[S]ummary witness testimony may be permitted pursuant to Rule 611(a).") (citing *Milkiewicz*, 470 F.3d at 397–98 and *United States v. Stierhoff*, 549 F.3d 19, 27 (1st Cir. 2008)); *Appolon*, 695 F.3d at 63 (affirming introduction of summary witness testimony where testimony "was limited to introducing and explaining the summary charts [the summary witness] prepared").

### F.    Presentation of Personal Identifying Information

The presentation of evidence in this case necessarily requires disclosure of personal identifying information to the jury and to testifying witnesses.  The government will redact such information from public filings.  However, in order for witnesses to be able to testify intelligently about stolen identify information, it will be necessary to show the witnesses unredacted exhibits.  The government respectfully submits that, in such instances, the exhibits be displayed only to the Court, the parties, the jury, and the witness and that, to protect victim personal identifying information, exhibits containing such information not be displayed to the courtroom gallery.

### JURY INSTRUCTIONS – CONSPIRACY TO COMMIT WIRE FRAUD

At prior proceedings in this case, the Court invited the parties to brief the question of whether conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 requires the government to prove the commission of an overt act in furtherance of the conspiracy.

While the First Circuit has not definitively resolved this question, every other circuit that has addressed the issue has concluded that Section 1349 does not require proof of an overt act.  *United States v. Roy*, 783 F.3d 418, 420-21 (2d Cir. 2015); *United States v. Chinasa*, 489 F. App'x

682, 685-86 (4th Cir. 2012); *United States v. Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017); *United States v. Rogers*, 769 F.3d 372, 380-82 (6th Cir. 2014); *United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011); *United States v. Abreu*, 976 F.3d 1263, 1272 (11th Cir. 2020); *see also United States v. Thompson*, 990 F.3d 680, 684 (9th Cir. 2021) (commenting that the indictment, which charged conspiracy to commit wire fraud, "unnecessarily stat[ed] overt acts").

First Circuit decisions suggest this Circuit would do the same.  For example, in *United States v. Clough*, 978 F.3d 810 (1st Cir. 2020), the First Circuit cited Section 1349 in observing that "not every conspiracy statute in the United States Code mandates that the government prove [an overt act]."  *Clough*, 978 F.3d at 817 n.11.  In *United States v. Iwuala*, 789 F.3d 1 (1st Cir. 2015), the First Circuit omitted an overt act requirement in reciting the elements of conspiracy to commit health-care fraud in violation of Section 1349.  *Iwuala*, 789 F.3d at 9-10 ("To prove conspiracy to commit health-care fraud under 18 U.S.C. § 1349, the government must prove beyond a reasonable doubt that an agreement existed to commit the underlying substantive offense (here, health-care fraud under 18 U.S.C. § 1347), that the defendant knew of the agreement, and that he voluntarily joined it with the intent to commit the underlying offense.").

These cases are consistent with Supreme Court precedent holding that, "where Congress had omitted from the relevant conspiracy provision any language expressly requiring an overt act, the Court would not read such a requirement into the statute."  *Whitfield v. United States*, 543 U.S. 209, 213 (2005) (conviction for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) does not require proof of an overt act in furtherance of the conspiracy); *see also Salinas v. United States*, 522 U.S. 52 (1997) (same conclusion with respect to the RICO conspiracy statute, 18 U.S.C. § 1962(d)); *United States v. Shabani*, 513 U.S. 10 (1994) (same conclusion with respect to the drug conspiracy statute, 21 U.S.C. § 846).

Consistent with this case law, the government has proposed a jury instruction that does not include the commission of an overt act in furtherance of the conspiracy as an element.

## ANTICIPATED TRIAL TESTIMONY

At trial, the government expects to elicit testimony from at least the following witnesses regarding the topics indicated below.

One or more witnesses for each rideshare company witnesses will testify, if needed, to authenticate the company's business records and will testify about the company's respective driver requirements, the process of becoming a driver, the content of driver accounts, and the existence of accounts relating to the defendant and his co-conspirators.

A Massachusetts Department of Public Utilities witness will testify about the agencies oversight of rideshare companies and requirements for driver background checks.

A witness from a third-party background checking company will testify about work performed for the rideshare companies to vet potential rideshare drivers.

Multiple victim-witnesses are expected to testify that they did not authorize the defendant to create rideshare accounts in their names, that the pertinent information possessed, transferred, and used by the defendant was their information, and that they were not rideshare drivers in the relevant period or, indeed, ever.

A co-conspirator will testify (through an interpreter) about his or her involvement in the scheme with the defendant and their jointly undertaken activity.  The co-conspirator will also authenticate and explain his or her WhatsApp messages with the defendant, including messages involving the buying and selling of Social Security numbers and the creation of fraudulent rideshare accounts.  Finally, the co-conspirator will testify about the defendant's admissions during

the course of the conspiracy about the involvement of other co-conspirators and the defendant's execution of the scheme to defraud.

An FBI linguist will testify about the translation of Brazilian Portuguese communications between and among the defendant and his co-conspirators.

An FBI agent will testify about the content of the translated communications and show the jury how the communications relate to documents embedded within the communications stream. For example, the WhatsApp chats between the defendant and his co-conspirators include driver's licenses, and the agent can show the jury how the chats worked.  The government expects to move into evidence items such as certified copies of driver's licenses and vehicle registrations, during such agent testimony.  The FBI agent will also testify about the location of devices linked to fraudulent accounts and to the defendant, based on information from rideshare company business records.

A Massachusetts RMV witness will testify as to the existence of Massachusetts driver's licenses and vehicle registrations for the victims.

A Social Security Administration witness will testify as to the existence of bona fide Social Security numbers for the victims.

Absent a ruling from the Court that the government can authenticate electronic evidence from an Apple search warrant and from a co-conspirator's phone by means of certifications under Federal Rule of Evidence 902(11) and 902(13), an Apple witness will testify to the content of such certifications, and FBI technical witness will testify that pertinent communication exhibits derive from the authentic Apple and phone materials.  The government will file a motion *in limine* on this issue.

An FBI financial analyst may testify in summary form regarding financial analysis of accounts through which fraud proceeds flowed.

The government reserves the right to call additional witnesses in response to arguments or representation made by the defendant, evidence presented by the defendant, or objections by the defendant to the authenticity of business records.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     /s/Kriss Basil_____
        DAVID M. HOLCOMB
        KRISS BASIL
        Assistant United States Attorney


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/Kriss Basil
KRISS BASIL
Assistant U.S. Attorney