UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

)
UNITED STATES OF AMERICA,        )
                                 )              Criminal Action
          Plaintiff,             )              No. 21-10158-MLW
                                 )
v.                               )
                                 )
THIAGO DE SOUZA PRADO,           )
                                 )
          Defendant.             )
                                 )

BEFORE THE MARK L. WOLF
UNITED STATES DISTRICT JUDGE

HEARING

August 2, 2023
2:49 p.m.

John J. Moakley United States Courthouse
Courtroom No. 2
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RPR, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

```
 1    APPEARANCES:

 2    On Behalf of the Government:
      Kriss Basil
 3    David M. Holcomb
      United States Attorney's Office MA
 4    1 Courthouse Way
      Suite 9200
 5    Boston, MA 02210
      617-756-9043
 6    kriss.basil@usdoj.gov
      david.Holcomb@usdoj.gov
 7
      On Behalf of the Defendant:
 8    John F. Palmer
      Law Office of John F. Palmer, P.C.
 9    18 Main Street Extension
      Suite 201B
10    Plymouth, MA 02360
      617-943-2602
11    Jpalmer@socialaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                     P R O C E E D I N G S
 2               (The following proceedings were held in open court
 3     before the Honorable Mark L. Wolf, United States
 4     District Judge, United States District Court, District of
 5     Massachusetts, at the John J. Moakley United States Courthouse,
 6     One Courthouse Way, Courtroom 2, Boston, Massachusetts, on
 7     August 2, 2023.)
 8    (Case called to order.)
 9               THE COURT:  You may be seated.  Although counsel
10     should please identify themselves for the Court and for the
11     record.
12               MR. BASIL:  Good afternoon, Your Honor.  Kriss Basil
13     for the United States, and with me is AUSA David Holcomb.
14               MR. HOLCOMB:  Good afternoon, Your Honor.
15               MR. PALMER:  John F. Palmer for Thiago Prado.  Good
16     afternoon, Your Honor.
17               THE COURT:  Actually, the interpreter is interpreting,
18     but, Mr. Palmer, I understand, and I was going to start with
19     this anyway, that Mr. Prado doesn't need the interpreter.  Is
20     that correct?
21               MR. PALMER:  Yes, that's correct.  What I would
22     request, Your Honor, is that the interpreter be here as backup,
23     but in general we've been conducting these hearings in English.
24               THE COURT:  Yes.  Well, she's here.  Here, stop
25     interpreting, please.  It distracts me, among other things, or
```

1    potentially does.  She's here and we can do that today.  But
2    it's very difficult for the District Court to get interpreters
3    these days, and it's expensive.  So if it's necessary, we'll do
4    it for future proceedings, including the trial.  If it's not
5    necessary, it's an expense and a complication.  So I'm going to
6    do it today.  And I'll discuss this with Mr. Prado.  We'll see
7    how this goes.  Okay?

8            MR. PALMER:  Okay, fine.

9            THE COURT:  Because he, for a long time, has been
10   anxious to get this case tried, and I think Mr. Fleming has
11   interpreters lined up for the September 11 trial date, two
12   weeks, but, you know, we don't want to lose a day or more
13   because there's a problem with interpreters if an interpreter
14   is not needed.  Okay?

15           All right.  So I'll have the clerk administer the oath
16   to the interpreter, and she'll identify herself.

17           (Interpreter duly sworn.)

18           INTERPRETER:  Alexandra Hurley, for the record,
19   Portuguese interpreter.

20           THE COURT:  Thank you.  Okay.  We're here pursuant
21   primarily to my July 20, '23 order under seal.  On July 17, the
22   defendant filed a motion, Mr. Prado filed a motion to proceed
23   pro se, meaning represent himself.  It wasn't clear to me,
24   because of the way it was phrased, whether he wanted to
25   represent himself in filing motions only or also at trial, and

 1   I issued an order seeking clarification of that.

 2          On July 26, Mr. Palmer reported that the defendant

 3   wanted to proceed pro se for the purpose of filing motions and

 4   to conduct the trial.  And I had explained to him previously

 5   what conducting the trial would entail because he was pro se

 6   until about January of this year.

 7          Yesterday, on August 1, Mr. Palmer reported that

 8   Mr. Prado wanted to represent himself only for the purpose of

 9   filing and arguing motions but not for trial.  All of these

10   submissions are on the docket.

11          Is that Mr. Prado's request today?

12          MR. PALMER:  Yes, Your Honor.  You know, in further

13   conversation with him, there are two specific motions he wants

14   to file.

15          THE COURT:  In a way you're anticipating me, but go

16   ahead.

17          MR. PALMER:  One is a motion to dismiss, and he's got

18   the motion here.  And the other is a motion to raise to the

19   Court the question of his prior counsel's representation.

20          THE COURT:  Okay.  Here.  Let me tell you, this is

21   helpful, and I'm going to hear from Mr. Prado too.  In fact, I

22   want to hear from Mr. Prado.  So Mr. Prado, here, stand up.

23   What is it you want to do right now?  And it's not all up to

24   you of course, but I want to make an informed decision.

25          THE DEFENDANT:  Your Honor.

1          THE COURT:  Pull the microphone by you though, please,

2     to make sure I can hear you.

3          THE DEFENDANT:  Yes.  I came to respectfully ask you

4     permission to file those two motions.  One is about my previous

5     lawyer and now became the prosecutor on my case, and I feel

6     some kind of violating my right to a fair trial, so I want to

7     raise that.

8          THE COURT:  Who was your prior lawyer, Mr. Levy?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Joshua Levy, the acting U.S. Attorney?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.

13          THE DEFENDANT:  And our relationship end kind of messy

14     because I ended up calling him a liar.  He didn't like the way

15     I said it, and I just feel like he's going to be biased against

16     me, so I want to raise it.

17          THE COURT:  Let me ask the government, is Mr. Levy

18     walled off from this case?

19          MR. BASIL:  Yes, Your Honor, Mr. Levy is walled off.

20     He's recused from the case.  I'm not even allowed to put

21     reports about this case into the weekly reports that would go

22     to the front office.  I do not report to him, neither does

23     Mr. Holcomb, in any respect on this matter.  Our direct report

24     is the criminal chief, Amanda Stracken.

25          THE COURT:  So in that motion, what relief do you

1    want?  What would you like done?

2          THE DEFENDANT:  I was thinking about asking for a

3    change of venue or refuse the prosecution, you know.

4          THE COURT:  Well, I'm not going to refuse the

5    prosecution.  By my calculation, as of September 11, 2023,

6    you'll have been in custody for 28 months.  I don't know if

7    you'll be convicted.  And if you're convicted, I can't say

8    exactly what the guidelines are.  But I had my law clerk try to

9    calculate them.  I don't know if they exclude acceptance of

10   responsibility.  They did.

11         I think your guideline range would be about 42 to 48

12   months.  You've got 17 co-defendants in this case.  Four of

13   them are fugitives.  12 have been sentenced.  One who has pled

14   guilty has not.  You know that.

15         I don't know what sentence I'm going to give you.  I'm

16   not saying I wouldn't give you a higher sentence than everybody

17   else, but nobody's got a sentence of more than 45 months.  If I

18   got a motion -- a change of venue just means you go to another

19   place.  You get the same prosecutors.  It doesn't go to another

20   U.S. Attorney's Office.  Or maybe it would.  But that would

21   mean a very long delay in your trial.  And you're going to stay

22   locked up, and I'm still going to be the judge.  So have you

23   thought about that?

24         THE DEFENDANT:  No, but now that you say, Your Honor,

25   but I feel that I still have a due process violation by the

1   fact that everything I told this lawyer is exposed to the

2   prosecution.

3        THE COURT:  This is helpful because if I let you file

4   that motion, I'll have the government respond, and they'll have

5   to put in writing with an affidavit what steps have been taken

6   to assure that no confidential information Mr. Prado gave

7   Mr. Levy before Mr. Levy was appointed first assistant, now the

8   acting Attorney General, was made known to the prosecution team

9   and used against Mr. Prado.

10       There are -- it's not unprecedented.  That means it's

11   happened before.  In fact, it happens regularly in some areas

12   where certain prosecutors have to be walled off from a case.

13   It means they can't participate in it.  They can't receive any

14   information about it.  They can't provide any information

15   concerning it.

16       For example, sometimes there are parallel civil and

17   criminal investigations.  The criminal investigation, the U.S.

18   Attorney can use the grand jury to get information, but that

19   doesn't mean that information can automatically and

20   unilaterally be disclosed to the civil attorneys, sometimes

21   investigating also whether, for example, false claims were made

22   to the U.S. government to get money.  That could be a criminal

23   offense.  It could be a civil offense.  But they would need a

24   court order to allow the evidence from the grand jury to go to

25   the civil attorneys.

1              Mr. Basil is shaking his head.  I still remember that

2       right.  So he's shaking his head yes.  So there are procedures

3       that have been found, when they're followed, to provide

4       safeguards consistent with due process.  But, you know -- when

5       did you learn your lawyer became a prosecutor in the U.S.

6       Attorney's Office in Massachusetts?

7              THE DEFENDANT:  So I learned that like two or three

8       months ago because he also participated in Restorative Justice

9       program, and I had some neighbors on the block that told me

10      about this.  And then I ask Mr. Palmer, and Mr. Palmer

11      confirmed.

12             THE COURT:  You knew that Mr. Levy was your lawyer

13      originally, right?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And then you knew he was no longer your

16      lawyer and you got a new lawyer, right?

17             THE DEFENDANT:  Yeah.

18             THE COURT:  I haven't looked at the filing.  And

19      Mr. Levy became the First Assistant United States Attorney at

20      least about a year and a half ago.

21             THE DEFENDANT:  Yeah.

22             THE COURT:  And you're telling me that you didn't know

23      until recently that he had become a prosecutor?

24             THE DEFENDANT:  Yes, Your Honor.  Because actually I

25      had a confirmation when Mr. Palmer give me a copy of the motion

1    that the government filed, and I saw his name on the motions,

2    so that was a confirmation.

3            THE COURT:  You had not received that before?

4            THE DEFENDANT:  No.

5            THE COURT:  All right.  What's the other motion -- so

6    is that your motion to dismiss?

7            THE DEFENDANT:  No.  That's the -- actually that one

8    I'm going to start working on right now.

9            THE COURT:  I don't know that you need to do much more

10   work on it.  I think maybe I'll just have the government

11   respond to it and see if you need to respond to it.

12           What's the other motion you want to file?

13           THE DEFENDANT:  The other motion, Your Honor, it's

14   about a new Supreme Court case decision that just came out, and

15   also Abdelaziz, First Court decision.

16           THE COURT:  What Supreme Court decision?

17           THE DEFENDANT:  Simonelli.

18           THE COURT:  And what else?

19           THE DEFENDANT:  The other one is called Percoco,

20   P-e-r-c-o-c-o.

21           THE COURT:  Is that a Supreme Court decision, too?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And what did you understand they say?

24           THE DEFENDANT:  I understand, Your Honor, that wire

25   fraud only covers the real property, traditional property

1    rights and doesn't cover intangible rights, and the prosecution

2    has charged me for creating accounts.  So my understanding is

3    that Uber account is not property.  And I think Abdelaziz in

4    the First Circuit deals with the same issue.

5           THE COURT:  When were these cases decided?

6           THE DEFENDANT:  May, May 11.

7           THE COURT:  And today is August 2.  So you've

8    previously filed, by my count, at least 19 motions.  Some of

9    them you withdrew, pro se motions.  13 of them, after doing a

10   lot of work trying to figure out what you were arguing, I

11   denied, in January I think.

12          And I'm concerned, because now the parties are and

13   should be in trial preparation mode, that you not file any --

14   many of those motions were frivolous, just utterly

15   unmeritorious, once I could make sense of them.  And now we're,

16   in your case, focused on getting to trial.  It's not the only

17   case I have.  But otherwise, are you satisfied with Mr.

18   Palmer's work as your lawyer?

19          THE DEFENDANT:  Every time I raise a law issue, Mr.

20   Palmer -- Mr. Palmer don't agree to move it for the motions

21   that I need him to do it.  But I'm satisfied with Mr. Palmer

22   according to the facts of the case.

23          THE COURT:  Well, I'm not going to get into the

24   details, but I've ordered a lot of money to go to Mr. Palmer,

25   and not just Mr. Palmer, to prepare your case for trial.  So

1   you don't want to try the case yourself instead of Mr. Palmer,

2   right?

3            THE DEFENDANT:  If I have to, Your Honor, yes.

4            THE COURT:  Well, here.  What you're asking is to file

5   two motions.

6            THE DEFENDANT:  Yes.

7            THE COURT:  And have Mr. Palmer try the case, correct?

8            THE DEFENDANT:  Yes.

9            THE COURT:  With regard -- so here is what I was

10   thinking of doing based on what I knew before I heard from you.

11   And I've told you this before, I have the discretion, the power

12   to allow what's called hybrid representation.  That would be

13   Mr. Palmer trying the case and letting you file some motions.

14            However, I've cited these cases to you previously.

15   One of them is Nivica, 887 F.2d 1110-1121, First Circuit 1988.

16   That's rarely appropriate to allow, but I do have the power to

17   do it.  I also have the discretion to place reasonable

18   limitations on arrangements if I allow this kind of hybrid

19   representation, and this includes requiring that you not file

20   any more frivolous motions.

21            One of the things I can do is require that Mr. Palmer

22   review what you want to file and approve it and say, "This is

23   not frivolous."  And I would define "frivolous" essentially for

24   him.  But one case that stands for that proposition is

25   Gomez-Rosario, 418 F.3d 90-97, 100-102, a 2005 First Circuit

1    case.

2           Here is my present thought, because I want to keep

3    your case on track.  If I don't start your trial on September

4    11, it probably won't be tried before December at the earliest

5    and maybe next year.  And I have lots of other cases.  I'm

6    going to let you file the first motion, the one relating to

7    Mr. Levy.  And in fact, to move this along, unless the

8    government wants to see it in writing -- I mean, what relief

9    are you seeking?  What do you want as a remedy in that?

10          THE DEFENDANT:  Your Honor, to be honest, this second

11   motion, the one I have here is the most important for me.

12          THE COURT:  The second one?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Here.  Let's talk about the second one.

15   And that's it, it's only going to be these two motions, right?

16          THE DEFENDANT:  Would you like to take a look at it?

17          THE COURT:  What's that?  Have you written it already?

18          THE DEFENDANT:  Yes, it's right here.  I have one copy

19   for you and one for the clerk.

20          THE COURT:  Have you shown it to Mr. Palmer?

21          THE DEFENDANT:  Yes, I gave Mr. Palmer a copy and

22   prosecutors.

23          THE COURT:  Has he read it?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Mr. Palmer, coming in here I was thinking

1    that with regard to any motion, coming in here having read

2    everything I read that was submitted, that I'd have you look at

3    it and essentially -- let me finish -- essentially apply the

4    standard of Federal Rule of Civil Procedure 11(b)(1) to (3) and

5    review it and authorize filing.

6              And I'm summarizing what's in Rule 11, Civil Rule 11.

7    Authorize filing.  If it's not filed for an improper purpose,

8    if you think, you know, there's either a justification under

9    existing law or a nonfrivolous argument for extending, revising

10   the law, and that there's a factual foundation -- well, factual

11   contentions would have evidentiary support.

12             MR. PALMER:  I've reviewed it, Your Honor.

13             THE COURT:  What's that?

14             MR. PALMER:  I have reviewed it.  I don't think it's

15   frivolous.

16             THE COURT:  You don't think it's frivolous?

17             MR. PALMER:  No.

18             THE COURT:  Let's see, these cases were all decided

19   this year, so this couldn't have been filed when I was dealing

20   with the other many motions to dismiss.

21             MR. PALMER:  That's true.

22             THE COURT:  Did you prepare this yourself, Mr. Prado,

23   or did somebody help you?

24             THE DEFENDANT:  No.  I did it 100 percent.

25             THE COURT:  All right.  Because whoever -- if somebody

1    helps you, they've got to sign the document, and they have to

2    be a lawyer, I mean, if someone else writes it.

3         THE DEFENDANT:  No.  The only thing, I have a friend

4    review for spelling issues.  That's it.

5         THE COURT:  You have a friend who what?

6         THE DEFENDANT:  To review, to fix some spelling,

7    misspelling.

8         THE COURT:  Misspellings?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Okay.  Three counts, 18 United States

11   Code, Section 1028A(a)(1) and (2).  That must be aggravated

12   identity theft, correct?

13        MR. BASIL:  Yes, yes, Your Honor.

14        THE COURT:  For aggravated identity theft, as charged

15   here, it has to be in connection with another crime.  Is that

16   right?

17        MR. BASIL:  That is correct, Your Honor.  The

18   predicate is wire fraud.

19        THE COURT:  I'm not going to decide this now, but I'm

20   thinking out loud as I'm reading this.  Two things.  One,

21   you've got law regarding 12(b).  There's also a line of cases,

22   and I wrote about them many years ago in a case called Djokich,

23   and I've done more since, where if resolving a case issue

24   pretrial is sufficiently substantially intertwined with the

25   merits of the case, then you don't decide it before trial.  You

1    have the trial.  You see what the facts are and decide.  I

2    don't know how that applies here.  But it looks, from what I've

3    glanced at, that your argument is that the Uber accounts are

4    not -- no drinking water, please -- the Uber accounts are not

5    property.  That's the argument.

6              THE DEFENDANT:  The main argument is, Your Honor.

7              THE COURT:  But let me finish.  The indictment alleges

8    that you received money in connection with establishing false

9    accounts.  So I think you're going to get a response from the

10   government that, even if the accounts aren't property -- and

11   this is good to raise it now.  I want to make sure I instruct

12   the jury properly if and when we get there -- that you made

13   false representations, that is, to get money essentially.  Have

14   you thought about that?

15             THE DEFENDANT:  Yes, Your Honor, I thought about it,

16   and I never had intention to get any money from companies.  The

17   allegation says that the money came here from drivers renting

18   accounts, not from companies.

19             THE COURT:  I've sentenced 12 of your co-defendants,

20   and actually, every single one of them got money from the

21   companies.  And in fact, I didn't count, in calculating the

22   guidelines, the payments they got from other drivers because I

23   didn't have enough information to determine how much it was.

24             Does the government allege -- these are just

25   allegations now -- that Mr. Prado received payments from the

1   companies, Uber, Lyft, Instacart, et cetera?

2            MR. BASIL:  Your Honor, in the third superseding

3   indictment it's limited to Uber and Lyft.  Those are the

4   companies we're talking about.

5            THE COURT:  Uber and Lyft?

6            MR. BASIL:  Yes.  What we allege are that the accounts

7   that he created and had payments, at least some of them had

8   payments made on them, that the purpose of having those

9   accounts created was to have payments made on them.

10           THE COURT:  Payments to him?

11           MR. BASIL:  So the payments there are payments that

12   end up in his wife's possession.  There are not payments, as

13   I'm thinking about it right now, that go directly into his

14   account.

15           THE COURT:  But some went to his wife's account?

16           MR. BASIL:  Yes.  And so, Your Honor, just to put a

17   fine point on it, the theory would also be that he creates the

18   account.  He gives it to someone and is causing, through that

19   deception, payments to be made, and he gets a cut of that in

20   the form of a payment back to him.

21           THE COURT:  Payments.  And this implicates a statute

22   that I used to know very well, and I don't think it was very

23   well understood, 18 United States -- well, it may implicate 18

24   United States Code, Section 2(b).  Section 2(a) is aiding and

25   abetting when somebody knows a crime is being committed and

1    intentionally does something to help it succeed.  2(b) is

2    causation, when you cause an innocent intermediary to do

3    something that would be a crime if the person was fully

4    informed of what was going on.  Anyway.

5            MR. BASIL:  Your Honor, in this case, both of those

6    prongs could be implicated, depending on who has the account

7    that's being used.

8            THE COURT:  Well, this issue of whether accounts

9    constitute money -- constitute property probably relates to the

10   jury instructions at a minimum.

11           I'm looking at page -- the government -- has the

12   government received this yet?

13           MR. BASIL:  I received it when we came into court,

14   Your Honor.

15           THE COURT:  All right.  I'm looking at page 8.  You

16   say, "Accordingly, the government must prove not only that wire

17   fraud defendants engaged in deception but also that money or

18   property was an object of the fraud."  So it could be money,

19   getting money was an object of the fraud, which is common in

20   fraud cases.  People commit bank fraud to get money from the

21   bank by means of false representations.

22           Percoco looks like it was an honest services fraud

23   case, and that's not this case.

24           THE DEFENDANT:  I just write Percoco so we can exclude

25   intangible loss.

1        THE COURT:  So, what?

2        THE DEFENDANT:  We can exclude intangible loss.

3        THE COURT:  I haven't understood this case to be about

4   intangible loss.  It's been about, I've thought, loss of money,

5   and I know more about the conspiracy than I usually do because,

6   as I said, I've sentenced 12 of your co-defendants.  Abdelaziz,

7   this is admissions slots.  Again, this focuses on property, not

8   money.

9        Did you ask Mr. -- actually, I'm not actually going to

10   get into what you discussed with Mr. Palmer.  So you want to

11   proceed based on this and not have Mr. Palmer file this kind of

12   motion raising these points.  Is that right?

13        THE DEFENDANT:  Yes, Your Honor.  I just feel like I

14   say -- I go straight to the point, yeah.

15        THE COURT:  All right.  And Mr. Palmer, you don't

16   think this is frivolous, that it's, you know -- well, basically

17   it's not frivolous, and even if it was seeking an extension of

18   the law, there's a colorable argument.

19        MR. PALMER:  I don't think it's frivolous, Your Honor.

20   I really can't get into the discussions that we've had.

21        THE COURT:  No, I don't want you to, as you've seen.

22        All right.  So let's talk about the other motion with

23   regard to Mr. Levy.  How quickly could you file something in

24   writing?

25        THE DEFENDANT:  I just need like five days to prepare

1    something simple.  I don't want to go too extensive.

2           THE COURT:  And then this is it?

3           THE DEFENDANT:  That's it.

4           THE COURT:  Just these two motions?

5           THE DEFENDANT:  (Nods.)

6           THE COURT:  My tentative view is that I'll allow the

7    filing of this motion to dismiss.  And maybe I'll -- I mean,

8    there will be a threshold question perhaps of whether it's

9    amenable to being decided before the trial on the merits.  And

10   if it is, then there's a question of whether this is

11   meritorious and whether, perhaps, the jury instructions, which

12   I haven't looked at yet, should be narrowed to money, not

13   property, in order to avoid and hopefully promote some finality

14   in this.  But does the government want to be heard on whether I

15   should allow the filing of this pro se motion?

16          MR. BASIL:  Yes, Your Honor, just very briefly.  So

17   bearing in mind that I have read it in the -- I've read

18   portions of it as the Court has been reviewing it, so it's

19   difficult to respond in great detail.

20          The indictment alleges that the purpose of this was to

21   obtain money.  It tracks the statutory language.  So the word

22   "property" is in there, but the whole purpose of this, the

23   government's theory of the case all along has been the purpose

24   of the accounts is to get the companies to pay money to people

25   under fraudulent circumstances.  So there is a deception as to

1    the identity of the person, and that is used in order to get

2    money under false pretenses from the company.

3           So on its face, the indictment does allege that the

4    purpose is to obtain money, and that is enough on the standard

5    for a motion to dismiss.  What Mr. Prado was asking the Court

6    to do effectively is like a Rule 29 motion in advance of trial.

7           THE COURT:  Here, a couple of things.  That's what I

8    meant about whether this merges with the trial on the merits,

9    and I'll find an order and cite cases that are now 12 or 15

10   years old.  There may be more.  But that's it.

11          There's something else you would probably have to

12   brief.  For example, Count One, the conspiracy count charges a

13   scheme and artifice to defraud and to obtain money and property

14   by means of materially false and fraudulent pretenses, et

15   cetera.  As I frequently do and I believe I've done in taking

16   pleas in this case, for some reason I don't understand, when

17   this alleges a scheme to obtain money and property, that means

18   money or property.

19          MR. BASIL:  The government is of the same view, Your

20   Honor, that in charging language "and" means "or."  It's the

21   disjunctive, and the Court is entirely correct as to accepting

22   as to one as the other.

23          THE COURT:  You should find the authority for

24   something that's so familiar that I can't remember what case or

25   cases say "and" means "or."

1          All right.  But I think in the circumstances and in

2    part because it may help me refine jury instructions if the

3    case isn't dismissed, I'm going to allow, I'm going to allow

4    Mr. Prado to file this motion based on Simonelli and two other

5    cases by Monday, August 7.  That's next Monday.  Okay?  This

6    one you're filing today.

7          THE DEFENDANT:  Yes.

8          THE COURT:  I'm allowing this to be filed today.

9    What's the minimum reasonable time for the government to

10   respond?

11         MR. BASIL:  Your Honor, we could respond in a week.

12   Could we say -- I've forgotten, Your Honor, from working many

13   days in a row, what day of the week is today?  Wednesday.

14         THE COURT:  Wednesday, I think.

15         MR. BASIL:  The time blends together.  If we could

16   respond next Thursday, if we could have something back to the

17   Court.

18         THE COURT:  Yes, that's fine.  And next Thursday is

19   the 2nd -- today is the 2nd.  It's the 10th.  So the government

20   will respond.  And if you want to file a reply, Mr. Prado, I'm

21   ordering that you file that by the 17th.  I'm going to give you

22   a week, too, okay?

23         THE DEFENDANT:  Your Honor, the only problem is, it

24   always takes me almost ten days to receive everything that they

25   file.

1          THE COURT:  It takes ten days for you to receive --

2          THE DEFENDANT:  Yeah.

3          THE COURT:  Mr. Palmer will get it.  Is there some way

4     you can get it to him promptly?

5          MR. PALMER:  I send things priority mail, but they

6     still don't get to him for three or four days later for some

7     reason.  This is a Wyatt issue.

8          THE COURT:  All right.  So I'm going to give you

9     until, how about Monday the 21st, is that reasonable?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Wait a minute.  Did I do that right?  Yes.

12    You're going to file on the 10th.  And you're going to get 11

13    more days.  Okay?

14         THE DEFENDANT:  Thank you, Your Honor.  Thank you.

15         THE COURT:  All right.  Now, how quickly -- what's

16    essentially the minimum reasonable amount of time for you to

17    file your motion relating to Mr. Levy?

18         THE DEFENDANT:  I will have it in the mail by next

19    Wednesday, maybe earlier.

20         THE COURT:  No.

21         THE DEFENDANT:  Okay.  Monday.

22         THE COURT:  No, no.  This is getting too drawn out.

23    Mr. Palmer, I expect after some discussion I'm going to allow

24    the motion to amend the protective order so you don't have to

25    be there when Mr. Prado reviews all the discovery, but we're

1    not going to rely on the mail for this.  I'm going to give him

2    a deadline, and you're going to have to send somebody to go get

3    it and then you can file it electronically for him.

4              MR. PALMER:  Okay.

5              THE COURT:  Okay?

6              MR. PALMER:  Me?

7              THE COURT:  You can send somebody else.

8              MR. PALMER:  I'm a one-man operation.

9              THE COURT:  You can hire somebody to go down there and

10   get it.

11             MR. PALMER:  I'll pick it up.

12             THE COURT:  Whatever.  You may have some things to

13   discuss.  I'm ordering that it be filed by the 10th, and that

14   means filed by the 10th, so picked up before the 10th.  And

15   it's a pro se filing.  So does the government want a week to

16   respond?

17             MR. BASIL:  Yes, Your Honor.  Thank you.

18             THE COURT:  17th.  Then again, you're going to have to

19   respond more promptly.  You're going to have to file your

20   response to this by the 25th, and again, if necessary, Mr.

21   Palmer will hire some kid to go down and get it from you or

22   something.

23             THE DEFENDANT:  Actually, I can have the counselor

24   email it to Mr. Palmer.

25             THE COURT:  You can have what?

```
 1              THE DEFENDANT:  I can ask the counselor to email it to
 2    Mr. Palmer.
 3              THE COURT:  Email it?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  That would be great.  If he doesn't have
 6    to make the trip, that's better.  He can focus on preparing
 7    your case.
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  Email it, okay.  But this is going to go.
10    We have a pretrial conference I think on September 8, and now
11    there are going to be more issues to deal with.  But that's it,
12    no more motions, right?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Because I'm relying on that in exercising
15    my discretion to let you do this.  Understand?
16              THE DEFENDANT:  Yes, I do, Your Honor.
17              THE COURT:  Okay.  You may be seated.
18              MR. BASIL:  Your Honor, if I may just for a moment, I
19    don't mean to complicate things for the Court, but in preparing
20    for today, I just went back and looked at, I believe the Court
21    has done so but I just want it to be on the record under United
22    States v. Blinn, which is a 2017 First Circuit case, even in a
23    hybrid situation, there should be a colloquy between the Court
24    and defendant under Faretta, and I believe the Court has done
25    that.
```

 1          THE COURT:  On Faretta?

 2          MR. BASIL:  Yes, Your Honor.  I believe the standard

 3   is whether he knowingly and intelligently gives up the rights

 4   he would otherwise have by proceeding in this manner.  And I

 5   believe the Court has done that.

 6          THE COURT:  I guess I'll say the following.  I'll

 7   elaborate what I said before.  Mr. Prado, do you understand

 8   that you're represented by Mr. Palmer?

 9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  Mr. Palmer is a very experienced, skillful

11   criminal defense lawyer.  Do you understand that?

12          THE DEFENDANT:  Yes, I agree with it.

13          THE COURT:  Do you understand that he now has the

14   authority to file a motion raising the issues that you're

15   raising in this, we'll call it Simonelli motion?

16          THE DEFENDANT:  Yes.

17          THE COURT:  As I recall, you've never gone to law

18   school, correct?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  And you're not a lawyer?

21          THE DEFENDANT:  No.

22          THE COURT:  Do you understand that if Mr. Palmer

23   prepared a motion based on these cases you've cited that it

24   might be a more persuasive motion?

25          THE DEFENDANT:  Yes, I understand that can be

1    possible.

2          THE COURT:  Do you understand you're taking a risk in

3    representing yourself on this issue that perhaps you'll

4    overlook some argument that could be made that might be

5    persuasive?

6          THE DEFENDANT:  Yes, Your Honor, I understand.

7          THE COURT:  Do you want to assume that risk and do

8    this yourself?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Do you understand that I believe you'll be

11   giving up your right to claim in the future that Mr. Palmer was

12   ineffective because he didn't file this motion for you?

13         THE DEFENDANT:  Yes, I do understand, Your Honor.

14         THE COURT:  Is there more you think I ought to ask?

15         MR. BASIL:  I believe that's sufficient, Your Honor.

16   Thank you very much.

17         THE COURT:  Thank you.  All right.

18         The next motion, Mr. Palmer's motion to amend the

19   protective order.  I've read the motion, but Mr. Palmer, I

20   think it would be valuable if you explain the motion, please,

21   to make sure I understand it accurately.

22         MR. PALMER:  Your Honor, the original protective order

23   was entered prior to my entry in the case.  The terms of the

24   order submits amendment of the order upon motion to the Court.

25   So I have filed a motion to amend protective order, and the

1   need arises from the fact that, as the Court knows, there's

2   voluminous discovery in this case.  The original protective

3   order would have required me to go down to Wyatt and supervise

4   the defendant's review of all --

5         THE COURT:  To be present whenever he was reviewing

6   discovery.  And that's burdensome?

7         MR. PALMER:  It's extremely burdensome.  So I have,

8   and the Court has graciously allowed the retaining of so-called

9   discovery counsel that has gone through all of the discovery in

10   this case and organized it in a fashion that helps me, but also

11   they're willing to put it on a disk or some sort of thumb drive

12   to send it directly to Wyatt, and I think the government -- for

13   the defendant to review at Wyatt by himself without my being

14   there.

15         THE COURT:  Well, I thought not by himself.  I thought

16   under the supervision of somebody at Wyatt.

17         MR. PALMER:  Wyatt puts him in a room, and they have a

18   security guard there with him.  So under those circumstances --

19   and he's not taking any of the discovery with him.  He's not

20   writing down notes of dates of birth or anything in the

21   discovery.  He's simply looking at the discovery and talking to

22   me about his thoughts about the discovery.

23         THE COURT:  So he's still -- the existing order, which

24   wasn't entered by me, it was enter entered by a magistrate

25   judge, prohibits the defendant from taking notes, and it still

1    would.

2            MR. PALMER:  Well, it would prohibit him from taking

3    notes about the discovery.  It wouldn't forbid him from writing

4    down his thoughts about it.

5            THE COURT:  Well, this is what I want to get clarity

6    on.  All right.  Paragraph 4A of the current protective order

7    says, "Nor may the defendant write down, photograph or

8    otherwise record the content of the confidential discovery

9    materials."  So your understanding of that is he can take notes

10   about his thoughts, but he can't write down anything that's

11   marked "Confidential."

12           MR. PALMER:  That's right.

13           THE COURT:  Mr. Prado, have you discussed this order,

14   proposed revision with Mr. Palmer?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Did you read the proposed amended

17   protective order?

18           THE DEFENDANT:  Yes, Your Honor.  He sent me a copy.

19           THE COURT:  And did you read it?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And is that agreeable to you?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Do you think you understand it?

24           THE DEFENDANT:  I do.

25           THE COURT:  And do you understand that this means that

1   you'll be able to review this at Wyatt and you'll be able to

2   write down your thoughts?  Do they let you take these papers

3   back to your cell, no?

4          THE DEFENDANT:  Everything on the computer.  We're

5   only allowed to look in the computer in the specifically room.

6          THE COURT:  But do you take notes when you review

7   materials?

8          THE DEFENDANT:  If we have to, yes.

9          THE COURT:  Have you reviewed some of the discovery

10  material so far?

11         THE DEFENDANT:  The only discovery I seen so far is my

12  bank statement and text message between me and Aguiar.  Nothing

13  else.

14         THE COURT:  That's all you've seen or all you haven't

15  seen?

16         THE DEFENDANT:  That's everything that's on the wire

17  right now, everything over there, the only thing I can see now.

18         THE COURT:  Mr. Palmer, explain this to me.  I'm not

19  familiar with discovery.  What has he seen to your knowledge?

20         (Defendant confering with counsel.)

21         MR. PALMER:  Okay.  He's seen the WhatsApp, exchanges

22  on WhatsApp between him and Aguiar, and he's seen his bank

23  statements.

24         THE COURT:  Okay.

25         But if you took notes, would Wyatt keep them rather

1   than let you bring them to your cell, do you know?

2          THE DEFENDANT:  No.

3          THE COURT:  No, you don't know or --

4          THE DEFENDANT:  No, they don't -- to be honest with

5   you, they don't care.  They don't care if we bring it to the

6   cell or not.  They just don't allow us to bring the discovery

7   with us.

8          THE COURT:  They don't care if you bring the notes.

9   You just can't bring the discovery.

10         THE DEFENDANT:  Yes.

11         THE COURT:  Have a seat for a moment.

12         Look, when I issue an order, I intend that it be

13   enforced.  And I don't want to have any litigation where

14   there's been a violation of the order and then there's not a

15   mutual understanding of what the order means.  So what's been

16   designated as confidential, and what's the government's view on

17   these notes, et cetera?

18         MR. BASIL:  Your Honor, we've been marking

19   confidential information that contains personal identifying

20   information of victims.  So that would be things like social

21   security numbers, dates of birth.  Quite often the defendant

22   exchanges with other co-conspirators images of driver's

23   licenses, things of that nature that could be used by others to

24   harm the victims again.  That's what has been marked as

25   confidential.  But in the case of -- we don't break down a

1    WhatsApp chat, Your Honor, between the cells that are
2    confidential and cells that are not.  We mark the entire
3    WhatsApp chat as confidential.
4         Our view is we agree with the defendant he needs to
5    review the discovery.  Our goal is to not have that
6    confidential information floating around in Wyatt.  And so if
7    the defendant is able to -- and we think he should be able to,
8    we agree with this part of the proposal, if he can, in a secure
9    environment, review the discovery and even, you know, take his
10   -- write down his impressions to assistant counsel in that
11   space but then leave it there and not go back in the general
12   population with this confidential information.  That's our
13   goal.  We don't want the information floating around Wyatt.
14        This is the same reason why, Your Honor, as part of
15   the protective order in my response that I filed, Your Honor,
16   we asked that the defense professionals that are specified not
17   include so-to-speak jailhouse lawyers or other people inside of
18   Wyatt.
19        Our understanding is this would allow the defendant to
20   review the discovery so he can be prepared for trial, to write
21   down what he needs to communicate to his counsel, but to do so
22   in a secure way that protects the interests of the victims.
23        THE COURT:  So here, now I'm looking at the proposed
24   amended protective order.  In paragraph 2 it says he can
25   "disclose the materials to persons assisting the defense."

1   Should that say "persons employed by Mr. Palmer assisting the

2   defense"?

3            MR. BASIL:  Yes, Your Honor.

4            THE COURT:  Is that agreeable, Mr. Palmer?

5            MR. PALMER:  That's agreeable, Your Honor.

6            THE COURT:  Do you understand that, Mr. Prado?

7            THE DEFENDANT:  Can you repeat, Your Honor, please.

8            THE COURT:  What's that?

9            THE DEFENDANT:  Can you repeat the last thing you

10  said.

11           THE COURT:  Mr. Palmer will show you the document.

12  Take it in your hand.  See on the first page, paragraph 2, it

13  says, "The defendant and defendant's counsel shall not disclose

14  any discovery materials directly or indirectly to any other

15  person, except those," it now says, "assisting the defense."

16  And I would add, I would say, "except those employed by Mr.

17  Palmer assisting the defense."  Okay?

18           THE DEFENDANT:  Okay.

19           THE COURT:  So I wrote, "except those employed by

20  defendant's counsel, John Palmer."  Then this discussion of

21  notes, all right.  So paragraph 4A on page 2 says, "No copy" --

22  it says, "Except as provided below, the defense shall maintain

23  possession of all copies of the confidential discovery

24  materials.  No copy may be left in the possession of the

25  defendant; nor may the defendant write down, photograph or

```
 1    otherwise record the content of confidential discovery
 2    materials."  So that means that, only by way of example, you
 3    can't write down the social security numbers and anything else
 4    marked as confidential.  But I think he could write down,
 5    whatever the date is, you know, September 1, 2019 chat, there's
 6    discussion of something.  That would be permissible?
 7              MR. BASIL:  Agreed.
 8              THE COURT:  Do you understand that, Mr. Prado?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Are there any other amendments to the
11    order that ought to be made in the parties' views?  No?
12              MR. PALMER:  No, Your Honor.
13              MR. BASIL:  No.
14              THE COURT:  All right.  I'm allowing, I hereby allow
15    the motion, not a magistrate judge.  We'll docket this, and
16    I'll give you this.
17              All right.  Is there anything else we ought to discuss
18    before we close the courtroom to discuss sealed materials?
19              MR. BASIL:  From the government's point of view, no,
20    Your Honor.
21              MR. PALMER:  No, Your Honor.
22              THE COURT:  All right.  All the people in the gallery
23    should leave.
24              (Hearing proceeded under seal.)
25
```

1                CERTIFICATE OF OFFICIAL REPORTER

2

3           I, Kelly Mortellite, Registered Professional

4  Reporter, Registered Merit Reporter and Certified Realtime

5  Reporter, in and for the United States District Court for the

6  District of Massachusetts, do hereby certify that the foregoing

7  transcript is a true and correct transcript of the

8  stenographically reported proceedings held in the

9  above-entitled matter to the best of my skill and ability.

10                Dated this 7th day of August, 2023.

11

12                /s/ Kelly Mortellite

13                _____

14                Kelly Mortellite, RPR, RMR, CRR

15                Official Court Reporter

16

17

18

19

20

21

22

23

24

25