UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 21-cr-10158-7-MLW |
| THIAGO DE SOUZA PRADO, | |
| Defendant | |

**GOVERNMENT'S MOTION TO SEAL SELECT EXHIBITS**

In its July 12, 2023 trial brief (Dkt. 1060), the government proposed that trial exhibits containing victims' personal identifying information ("PII") be displayed to the Court, the jury, and the parties—but not to the gallery—during trial. Dkt. 1060 at 7. Following discussion at the final pretrial conference on September 6, 2023, and pursuant to the Court's September 7, 2023 order (Dkt. 1125), the government respectfully files this motion to seal select trial exhibits containing PII and to limit their display at trial.[1]

Background

In this case about identity theft, many of the records that the government intends to introduce contain PII of individuals whose names and information the defendant and co-conspirators used to create fraudulent driver accounts with Uber and Lyft. These exhibits include business records from Uber and Lyft showing dates of birth, Social Security numbers ("SSNs"), and driver's license information provided to the companies upon account sign-up; official records from the Massachusetts Registry of Motor Vehicles ("RMV") bearing individuals' dates of birth, addresses, driver's license information, and other personal information on file with the RMV; a table from the Social Security Administration ("SSA") confirming that specified SSNs are the

---

[1] Counsel for the defendant indicated at the September 6, 2023 hearing that the defendant does not object to the proposed limitation on displaying PII at trial.

valid SSNs that the SSA issued to individuals identified by name and date of birth; WhatsApp messages in which the defendant and co-conspirators exchanged SSNs and photographs of driver's licenses; and summary exhibits showing the information, including PII, used to create fraudulent accounts. These exhibits are listed and described in Exhibit 1 to this motion.

Based on this evidence, the government will ask the jury to find that the defendant committed, and conspired to commit, wire fraud by using stolen identities to sustain the accounts used to defraud the companies, and that he committed aggravated identity theft by stealing the actual identifiers of actual people. The jury will need to assess these identifiers, without redaction, to understand the scheme and confirm that the defendant and co-conspirators used real PII to perpetrate it. However, the public presentation of this PII inherently risks further victimization of the victims of identity theft by the defendant and his co-conspirators, including several victims who will testify as witnesses at trial. The government accordingly seeks to limit the presentation of sensitive PII at trial and protect against public access to this PII to the extent trial exhibits are filed with the Court (*e.g.*, for purposes of the appellate record).

## Applicable Law

The records and proceedings of federal courts are presumed to be public. *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013). This presumption stems from "a common-law right of access to 'judicial documents,' and a First Amendment right of access to certain criminal proceedings and materials submitted therein." *Id.* However, the presumption of public access is not absolute. The "privacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." *Id.* at 62, quoting *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 411 (1st Cir.1987). "Third party privacy interests, in particular, have been referred to as 'a venerable common law exception to the presumption of access,' and 'weigh heavily in a court's balancing equation.'" *Id.*, quoting *United*

2

*States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir.1995).

In considering third party privacy in the context of the public's right to access judicial proceedings, Courts have considered the extent to which information about a third party would be presented at trial and the potential harm that could result from public disclosure. For example, in *United States v. Robinson*, No. 08-10309-MLW, 2009 WL 1137319 (D. Mass. Jan. 20, 2009), this Court found that the victim's identity was not yet part of the judicial record, but noted, "If this case proceeded to trial and the victim testified, or his identity became relevant to the adjudicative process in some other way and is revealed to the court, the analysis would become more complicated." However, the Court observed that "even if the victim's identity were a part of the judicial record, public disclosure would not be automatic." *Id.* at*2 (citing *United States v. Salemme*, 985 F. Supp. 193, 195 (D. Mass. 1997) ("Among the countervailing factors favoring nondisclosure are … the privacy interests of third parties.")); *c.f. United States v. Gordon*, No. 1:19-CR-00007-JAW, 2019 WL 6112838, at *4 (D. Me. Nov. 18, 2019) (where fraud victims purchased inferior, unauthorized product from defendant, "the Court does not view the fraud victims in this case the same way the district judge viewed the extortion victim in *Robinson*" because "the Government has not shown that these victims would suffer embarrassment, shame, or opprobrium if their names were made public."). In assessing potential harm to third parties, courts also have distinguished between the mere identities of third parties and more sensitive information about those third parties. "The question turns on 'the degree to which the subject matter is traditionally considered private rather than public' and a balancing of the competing interests, including the nature ad degree of the injury to the party in question." *United States v. O'Brien*, No. 12–40026–FDS, 2014 WL 204695, at *2 (D. Mass. Jan. 17, 2014) (quoting *Kravetz*). Thus, in *O'Brien*, the Court granted a motion by the government to unseal certain filings containing names of job applicants because "only their names—not financial, health, or other more sensitive

information—are at issue." *O'Brien*, 2014 WL 204695, at *3.

Additionally, Federal Rule of Criminal Procedure 49.1 requires the redaction for privacy of certain information in documents that are filed with the Court. The rule provides:

> (a)  Redacted Filings.  Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, a financial-account number, or the home address of an individual, a party or nonparty making the filing may include only:
>
> > (1) the last four digits of the social-security number and taxpayer-identification number;
> >
> > (2) the year of the individual's birth;
> >
> > (3) the minor's initials;
> >
> > (4) the last four digits of the financial-account number; and
> >
> > (5) the city and state of the home address.

Section (d) of the rule provides that "[t]he court may order that a filing be made under seal without redaction." The advisory committee notes to the rule state: "Trial exhibits are subject to the redaction requirements of Rule 49.1 *to the extent* they are filed with the court." (Emphasis added). Thus, Rule 49.1 designates certain categories of PII for redaction or sealing with respect to documents that are filed with the Court.

<u>Discussion</u>

The defendant is charged with expropriating the names, dates of birth, driver's license information, and SSNs of other individuals, unbeknownst to them, and using that PII to create Uber and Lyft accounts and drive under those individuals' identities. The exact PII used is central to the charges against the defendant. At the same time, public disclosure of the PII that the defendant and co-conspirators used presents a risk of revictimization to those individuals whose PII already was unlawfully used in this scheme. Sealing of trial exhibits containing PII therefore

is appropriate.[2]

As in *Robinson*, public disclosure of the identity theft victims' PII "would inflict the very harm this prosecution seeks to punish[.]" *Robinson*, 2009 WL 1137319 at *2 ("In this case, disclosing the identity of the purported victim, who was allegedly threatened with public exposure in an effort to extort money, would inflict the very harm this prosecution seeks to punish and, at least as arguably, discourage similarly situated victims from cooperating with law enforcement."). The danger to those individuals' privacy rights is real, not just speculative.

The defendant and co-conspirators obtained PII from a variety of sources, including darknet markets selling PII harvested from publicly accessible records. The defendant's sources included court filings. Translated WhatsApp audio messages between the defendant and co-conspirator Flavio Da Silva include the following exchange from November 3, 2020, regarding Prado obtaining SSNs from darknet sources:

> DA SILVA: Would you be able to get me numbers for the DLs?
>
> PRADO: I can try. Sometimes they are available, though there haven't been many available lately. But every once in a while, they are available. There's a way to search… you pay $20… more… and you can look for *court stuff*. Usually you will find pictures-pictures of some documents.

*See* Proposed Ex. 93 (Excel file, lines 1622-1624), excerpt attached as <u>Exhibit 2</u> (emphasis added). The defendant's explanation of his own conduct makes clear that PII in court documents poses risks of identity theft to the individuals whose PII appears in those documents if not properly protected.

---

[2] The government expects that several of the victims will testify at trial and that these victims' names will be read in open court. Consistent with this Court's observation in *Robinson*, the government submits that redaction of these identity theft victims' names from the public transcript is appropriate. The fact that the defendant and co-conspirators used these victims' PII indicates that their PII has circulated in a manner that makes the PII susceptible to further misuse. The government does not intend to have these witnesses state their PII on the record.

The exhibits containing PII are incapable of redaction, for purposes of both the trial and the record.  The records from Uber and Lyft and the WhatsApp chats are voluminous and contain frequent appearances of PII.  For example, the Excel spreadsheet of translated WhatsApp messages between the defendant and Da Silva (proposed Exhibit 93) contain over 2,750 messages and include numerous exchanges of driver's license photographs and SSNs, both in the body of the messages and in embedded attachments (*e.g.*, photographs, screen shots, and audio files).  Excel spreadsheet records from Uber also contain "so much personal information that redaction would not be worthwhile[.]"  *Gordon*, 2019 WL 6112838, at *4 (with respect to Excel spreadsheets containing names and email addresses, "the Court agrees that there is no practical way to redact those exhibits.").

Moreover, even if all PII in these exhibits could be redacted, the Court and the jury would not be able to evaluate the facts and the charges in this case without viewing the underlying PII.  The PII contained in the identified exhibits is not merely incidental to the evidence.  For example, in order to prove Count Three of the Third Superseding Indictment, the government will present WhatsApp chats in which the defendant purchased a SSN for Victim 2 from Aguiar; Uber records demonstrating that the defendant used Victim 2's name, the SSN from Aguiar, and an edited photograph of a driver's license purportedly for Victim 2; and RMV and SSA documents establishing that the defendant used Victim 2's actual driver's license information and SSN to create the account.  The government will prove the aggravated identity theft counts in a similar manner.  The government's proposed summary exhibits summarize driver account information and RMV data from several voluminous records to show that the defendant used identity theft victims' actual driver's license information to create accounts for the scheme.  The Court and the jury would not be able to evaluate this proof if the personal identifiers were redacted.  The specific PII used by the defendant and co-conspirators is central to the offenses with which they are

6

charged.

Using redacted exhibits at trial therefore is not a workable option. For exhibits that end up filed with the Court, Rule 49.1(d) provides the Court with discretion to order that those filings be made under seal, in lieu of the redactions required in Rule 49.1(a). Based on the nature of this case and the centrality of the stolen PII to the charges, the government respectfully submits that the Court should exercise its discretion both to seal the exhibits containing PII that are eventually filed with the Court and to limit their display to the public during the trial, for the protection of the victims' sensitive personal information and for efficient presentation of the evidence at trial.

## Conclusion

For the foregoing reasons, the government respectfully submits that the privacy interests of the identity theft victims in this case, as well as the public's interest in preventing additional instances of identity theft, support reasonable limitations on the public's right to access trial exhibits containing PII. The government therefore requests that the Court permit the government to publish the trial exhibits described in Exhibit 1 only to the Court, jury, and the parties, and that the Court seal those same exhibits to the extent they are filed with the Court.

Respectfully submitted,

ZACHARY A. CUNHA
United States Attorney
Acting Under Authority
Conferred by 28 U.S.C. § 515

By:   /s/*David M. Holcomb*
DAVID M. HOLCOMB
KRISS BASIL
Assistant United States Attorneys
U.S. Attorney's Office
District of Massachusetts

7

## **CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 8, 2023.

/s/ *David M. Holcomb*
DAVID HOLCOMB
Assistant U.S. Attorney