UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

THIAGO DE SOUZA PRADO,

    Defendant

No. 21-cr-10158-7-MLW

**GOVERNMENT'S MOTION FOR LEAVE TO FILE
OBJECTION TO DEFENDANT'S WIRE FRAUD INSTRUCTION**

    The United States respectfully asks this Court for leave to file the objection below to the defendant's proposed supplemental instruction on wire fraud (ECF 1131). As grounds for this request, the government states as follows.

    The defendant's proposed instruction asks the Court to instruct the jury that, to convict the defendant of wire fraud, in violation of 18 U.S.C. § 1343, the government must prove both that the defendant intended to get money from the rideshare companies he deceived and that the rideshare companies "actually . . . suffered monetary loss." Def.'s Suppl. Proposed Jury Instruction at 1 ("To defraud requires loss to the victim."). Those elements do not appear in the statute. *See* 18 U.S.C. § 1343. Neither of the First Circuit cases cited by the defendant stand for those propositions. Both *United States v. Martínez*, 994 F.3d 1 (1st Cir. 2021), and *United States v. Sawyer*, 85 F.3d 713 (1st Cir. 1996), are honest services fraud cases and do not concern monetary fraud, *i.e.*, obtaining money by false and fraudulent pretenses.

    In fact, the First Circuit rejected the defendant's first contention—that the wire fraud statute requires "convergence" between the party deceived and the party deprived of money or property—decades ago in *United States v. Christopher*, 142 F.3d 46 (1st Cir. 1998). The court explained, "Nothing in the mail and wire fraud statutes requires that the party deprived of money or property be the same party who is actually deceived." 142 F.3d at 54. In *Christopher*, the court held that

it was wire fraud when a defendant deceived regulators to get money that belonged to a third party. *Id*. The court recognized that the regulator was the gatekeeper of the money and that the defendant would not have obtained it but for his fraud on the regulator. *Id*. *Christopher* remains good law. *See United States v. Berroa*, 856 F.3d 141, 152 (1st Cir. 2017).

Moreover, as the Third Circuit recently noted when it also rejected the "convergence" theory of wire fraud, every circuit except the Ninth Circuit that has considered the issue has also rejected it. *See United States v. Porat*, No. 22-1560, 2023 U.S. App. LEXIS 20278, at *20 (3d Cir. Aug. 7, 2023) (citing *Christopher*, 142 F.3d at 54; *United States v. Greenberg*, 835 F.3d 295, 306-07 (2d Cir. 2016); *United States v. McMillan*, 600 F.3d 434, 449-50 (5th Cir. 2010); *United States v. Seidling*, 737 F.3d 1155, 1161 (7th Cir. 2013); *United States v. Blumeyer*, 114 F.3d 758, 767-68 (8th Cir. 1997); and *United States v. Kennedy*, 64 F.3d 1465, 1476 (10th Cir. 1995)).

Indeed, the First Circuit has rejected the notion that defrauders need to intend to deprive a specific victim of money or property. *United States v. Tum*, 707 F.3d 68, 76 (1st Cir. 2013) ("The fraud victim's identity is not an essential element of wire fraud."). Accordingly, the defendant is wrong that the government must prove that Prado intended to deprive the rideshare companies of money or property through his deception, rather than the riders, who got rides from the fraudulent accounts.[1]

The defendant's second contention that the government must prove a loss to prove wire fraud is also a dead letter in the First Circuit. As First Circuit explained in *United States v. Allard,* 926 F.2d 1237 (1st Cir. 1991), with respect to the analogous mail fraud statute:

---

[1] The government anticipates that the evidence at trial will establish that the defendant in fact intended both to deceive and to obtain money from the rideshare companies, which solely controlled approvals of drivers and payments for rides on their platforms. Nonetheless, the elements of wire fraud would still be met were the government to prove that the defendant intended to deprive another party, like a rider, of money through his fraud on the rideshare companies.

> The essence of a "scheme to defraud," within the meaning of that statute, is the existence of a plan that if carried out would constitute a fraud. It is not necessary to establish that the intended victim was actually defrauded. Nor is it a defense that the victim received something in exchange even if it was equivalent in value to what the victim was deceived into relinquishing. The relevant inquiry is whether there was an intent to mislead the victim by inducing an uninformed consent to part with money or property.

926 F.2d at 1242 (citations omitted); *see also United States v. Blasini-Lluberas*, 169 F.3d 57, 65 (1st Cir. 1999) (To prove a scheme to defraud a bank, the "government need not prove actual loss as a result of the scheme." (citing *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987)).

Indeed, *Allard* fully disposes of the defendant's contentions. That case involved a false representation that a person was qualified under state law to work as a medical intern and receive pay from the hospital for his services. The court explained, "The fact that Allard's scheme contemplated that Worcester Hospital would be the recipient of Allard's services or that such services were actually performed does not exonerate Allard from criminal responsibility for mail fraud." 926 F.2d at 1242 (citations omitted). The issue was whether the "scheme represented an effort to deceive the hospital into hiring him." *Id*. (citing *United States v. Richerson*, 833 F.2d 1147, 1156-57 (5th Cir. 1987)). The court concluded:

> In this case there is no question that the hospital could not and would not have hired Allard had it not been for his misrepresentations regarding his qualifications. Under Massachusetts law, a hospital is not permitted to hire an intern unless the applicant has completed not less than three and one-half years of study at an accredited medical school and holds at least a limited license to practice medicine. Mass. Gen. Laws Ann. ch. 112, § 9. Consequently, Allard cannot contend that his efforts to mislead the hospital into paying for his services as an intern were anything less than fraudulent.

*Id*. at 1242-43. In short, the issue was whether the defendant devised a scheme to obtain money under false or fraudulent pretenses. The analogy to Prado is almost perfect. The state had requirements for rideshare drivers, the rideshare companies had requirements for rideshare drivers, and there can be no question that the rideshare companies would not have allowed Prado to use accounts created using stolen identities. The fact that he intended someone to drive is irrelevant.

The issue in this case is whether Prado aimed to get money through deception. Proof of that is all that the wire fraud statute requires. The defendant's suggestion that the government must prove a loss to the rideshare companies is therefore legally wrong, and the Court should reject his proposed jury instruction in its entirety.

Before filing this motion, the government sought to confer with counsel for the defendant and shared a copy of the motion.

        Respectfully submitted,

        ZACHARY A. CUNHA
        United States Attorney
        Acting Under Authority
        Conferred by 28 U.S.C. § 515

By:   /s/Kriss Basil
       DAVID M. HOLCOMB
       KRISS BASIL
       Assistant United States Attorneys
       U.S. Attorney's Office
       District of Massachusetts

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

        /s/Kriss Basil
        KRISS BASIL
        Assistant U.S. Attorney