UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THIAGO DE SOUZA PRADO,<br><br>Defendant | 21-cr-10158-MLW<br><br>Violations:<br><br><u>Count One:</u>    Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)<br><br><u>Counts Two to Four:</u>  Wire Fraud (18 U.S.C. § 1343)<br><br><u>Counts Five to Seven:</u>    Aggravated Identity Theft (18 U.S.C. §§ 1028A(a)(l) and 2)<br><br><u>Forfeiture Allegation:</u><br>(18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461) |

<u>THIRD SUPERSEDING INDICTMENT</u>

At all times relevant to this Third Superseding Indictment:

<u>General Allegations</u>

1.  Defendant THIAGO DE SOUZA PRADO lived in Revere, Massachusetts.

2.  WEMERSON DUTRA AGUIAR, a coconspirator, lived in Lynn, Massachusetts and Woburn, Massachusetts.

3.  LUIZ NARCISO ALVES NETO, a coconspirator, lived in Revere, Massachusetts.

4.  FLAVIO CANDIDO DA SILVA, a coconspirator, lived in Revere and Framingham, Massachusetts.

<u>Other Relevant Entities</u>

5.  Uber was a ride-hailing company with offices in San Francisco, California that connected drivers with riders via a mobile phone application ("app"). Uber's computer servers were located in Arizona and in Virginia.

6. Uber Eats was an online food ordering and delivery service based in San Francisco, California that connected customers with restaurants via an app or website.

7. Lyft was a ride-hailing company based in San Francisco, California that connected drivers with riders via an app.

8. Collectively, Uber, Uber Eats, and Lyft are referred to herein as the "Rideshare Companies."

<u>General Background on the Rideshare Companies</u>

9. Each of the Rideshare Companies set minimum qualifications for drivers. Among other things:

    a. Uber required applicants to be at least 21 years old, have at least one year of driving history-or three years if under the age of 23-and pass a motor vehicle and criminal background check.

    b. Uber Eats required applicants applying to be at least 18 years old, have at least one year of driving history, and pass a motor vehicle and criminal background check.

    c. Lyft required applicants to be at least 25 years old, possess a valid driver's license, Social Security number ("SSN"), and vehicle insurance, have at least one year of driving history, and pass a motor vehicle and criminal background check.

10. Applicants seeking to drive for the Rideshare Companies submitted their information, including their names, dates of birth, SSNs, and driver's license information, via the Rideshare Companies' websites or apps.

11. Each of the Rideshare Companies used a third-party company to complete the motor vehicle and criminal background check on driver applicants. The third-party company checked each applicant based on the name, date of birth, and SSN that each of the applicants provided.

12. Drivers applying to drive for Rideshare Companies in Massachusetts were also required to pass a separate background check run by the Massachusetts Department of Public Utilities ("DPU"). The DPU ran its check based on the name, date of birth, driver's license number, and last six digits of the SSN provided by each driver applicant. The DPU completed a follow-up background check on all Uber and Lyft drivers in Massachusetts every six months based on this same information.

Overview of the Conspiracy and the Scheme to Defraud

13. From at least in or about January 2019 through at least in or about April 2021, in the District of Massachusetts and elsewhere, PRADO executed a scheme to defraud the Rideshare Companies by creating, using, renting out, and selling fraudulent driver accounts.

14. PRADO traded in and purchased others' means of identification, including driver's license data and SSNs, to create fraudulent Uber accounts for himself and for others, and to sell to others who were involved in schemes to defraud Rideshare Companies.

15. Using stolen identities, PRADO created fraudulent driver accounts for multiple Rideshare Companies. For example, PRADO created no fewer than 29 fraudulent Uber driver accounts using personal information, such as names, dates of birth, driver's license numbers, and SSNs, from persons in Massachusetts.

16. To perpetrate the scheme to defraud, and to obtain and to trade stolen identities to create fraudulent driver accounts, PRADO conspired with AGUIAR, ALVES NETO, DA SILVA, and others known and unknown.

Object and Purposes of the Conspiracy and the Scheme to Defraud

17. The principal object of the scheme to defraud and of the conspiracy was to commit wire fraud, in violation of Title 18, United States Code, Section 1343, by, among other things, creating fraudulent driver accounts with Rideshare Companies, and renting or selling the accounts to individuals who might not otherwise qualify to drive for those services, in order to obtain money and property. The principal purpose of the conspiracy was to enrich the coconspirators and to conceal their conduct from the Rideshare Companies, from law enforcement, and from individual victims' whose personal identifiers were used to open the fraudulent driver accounts.

Manner and Means of the Conspiracy

18. Among the manner and means by which PRADO, AGUIAR, ALVES NETO, DA SILVA, and coconspirators known and unknown to the Grand Jury carried out the conspiracy and scheme to defraud were the following:

    a. Trafficking in stolen personally identifiable information such as names, driver's license numbers, dates of birth, and SSNs, including for individuals named herein, who were persons living in Massachusetts;

    b. Editing images of driver's licenses, insurance documents, and other materials to submit to the Rideshare Companies in support of applications for fraudulent driver accounts;

    c. Creating fraudulent accounts to drive for the Rideshare Companies using those stolen identifiers;

    d.    Renting or selling the fraudulent driver accounts, including to people who might not otherwise qualify to drive for the Rideshare Companies; and

    e.    Sharing information about the scheme to defraud.

<u>Acts in Furtherance of the Conspiracy</u>

19.    Beginning no later than in or about January 2019 and continuing through in or about April 2021, PRADO, AGUIAR, ALVES NETO, DA SILVA, and others known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in furtherance of the scheme to defraud:

20.    AGUIAR sold SSNs to ALVES NETO, PRADO, and coconspirators known and unknown to the Grand Jury to use in creating fraudulent Rideshare Company driver accounts, for example:

    a.    On or about February 9, 2020, ALVES NETO asked AGUIAR by instant message for the price for obtaining SSNs on the Darknet and about what information he needed to provide for AGUIAR to get SSNs.

    b.    On or about the same day, AGUIAR sent ALVES NETO an image of the driver's license of a person from Framingham, Massachusetts, as an example of the necessary information.

    c.    On or about February 18, 2020, ALVES NETO sent AGUIAR an image of a driver's license belonging to a victim from Winchester, Massachusetts, and paid AGUIAR $250.

    d.    On or about that same day, AGUIAR sent ALVES NETO the SSN for the victim from Winchester, Massachusetts.

e. On or about February 23, 2020, PRADO sent AGUIAR by WhatsApp seven driver's licenses stolen from victims from Burlington, Carlisle, Lexington, Lynn, Saugus, and Woburn, Massachusetts, including a driver's license belonging to Christina Caruso.

f. On or about the same day, PRADO paid AGUIAR $1,000.

g. On or about the same day, AGUIAR, in return for the payment, obtained SSNs for the identity theft victims, including Christina Caruso, and sent them to PRADO.

h. On or about the same day, PRADO told AGUIAR that PRADO was renting out Uber accounts, identified his coconspirators to AGUIAR as including "Flavio" and "Luis," and told AGUIAR, "[W]e're going to do a lot of business together."

i. On or about March 4, 2020, PRADO messaged AGUIAR by WhatsApp and sent AGUIAR five driver's licenses stolen from victims from Billerica, Lexington, Saugus, Wakefield, and Winchester, Massachusetts, including Kevin Sweeney.

j. On or about the same day, AGUIAR told PRADO to pay him $500, and PRADO did so.

k. On or about the same day, AGUIAR sent PRADO SSNs for the identity theft victims, including Kevin Sweeney.

l. On or about March 13, 2020, ALVES NETO contacted AGUIAR, told him, "I partner with Thiago," and asked for a lower price for SSNs.

m. On or about March 14, 2020, ALVES NETO sent AGUIAR an image of the driver's license of a victim from Shirley, Massachusetts.

21. PRADO sold SSNs and identity information to AGUIAR and DA SILVA and coconspirators known and unknown to the Grand Jury to use in creating fraudulent Rideshare Company driver accounts, for example:

    a. On or about May 4, 2020, AGUIAR sent PRADO the name, address, and date of birth for Bradley Teeman, a person from Melrose, Massachusetts.

    b. On or about the same day, PRADO sent AGUIAR the SSN for Bradley Teeman.

    c. On or about May 7, 2020, AGUIAR used WhatsApp to send PRADO the name and date of birth for a person living in Needham, Massachusetts.

    d. On or about May 8, 2020, AGUIAR used WhatsApp to send PRADO eight driver's licenses stolen from victims in Bedford (Brad Sylvester), Lexington (Robert Balaban), Medford, Melrose, Methuen, and Saugus, Massachusetts and in Stamford, Connecticut.

    e. On or about the same day, PRADO sent AGUIAR SSNs for Brad Sylvester in Bedford, Robert Balaban in Lexington, the victims in Medford and Saugus, and the victim in Needham, Massachusetts, whose identifiers AGUIAR had sent to PRADO on or about May 7, 2020.

    f. On or about that same day, after receiving SSNs from PRADO, AGUIAR paid PRADO $250.

    g. On or about October 5, 2020, DA SILVA sent PRADO a driver's license stolen from a victim from Manchester, Massachusetts, and PRADO responded that he had sold 50.

    h. On or about that same day, DA SILVA sent PRADO two more driver's licenses, including one from a victim from Brookline, Massachusetts, and PRADO responded by providing DA SILVA with the SSNs for the victims from

Manchester and Brookline, Massachusetts.

    i.    On or about that same day, DA SILVA paid PRADO $200 for providing SSNs.

22.    PRADO, DA SILVA, and conspirators known and unknown to the Grand Jury exchanged Rideshare Company driver accounts and stolen personal information, for example:

    a.    On or about September 25, 2020, after DA SILVA asked for model driver's licenses from states other than Massachusetts, PRADO sent DA SILVA images of driver's licenses stolen from victims in Tennessee, Washington, Oregon, Texas, and Arizona, and PRADO commented, "All of them are virgins, ok; I haven't used them yet."

    b.    On or about October 5, 2020, PRADO paid DA SILVA $350 by Zelle for two accounts at Lyft.

    c.    On or about January 16, 2021, DA SILVA sent PRADO two driver's licenses stolen from victims in Virginia and Connecticut and instructed PRADO, "Try to create [a Uber] driver."

23.    PRADO created fraudulent Uber accounts using stolen identities, for example:

    a.    On or about June 18, 2019, PRADO used personal information for Christopher Rodday, a person from Somerville, Massachusetts, but PRADO's photograph and debit card, to create a driver account at Uber.

    b.    On or about February 26, 2020, using personal information that he obtained from AGUIAR, PRADO created a driver account in the name of Christina Caruso at Uber.

c. On or about March 7, 2020, using personal information that he obtained from AGUIAR, PRADO created a driver account in the name of Kevin Sweeney at Uber.

d. On or about May 9, 2020, PRADO used the stolen identity of Robert Carroll, a person in West Newton, Massachusetts, to create a driver account at Uber.

24. AGUIAR created fraudulent Uber accounts using stolen identities, for example:

a. On or about May 4, 2020, AGUIAR used personal information for Bradley Teeman, which he obtained from PRADO, to create a driver account in the name of Bradley Teeman at Uber.

b. On or about May 8, 2020, AGUIAR used personal information for Brad Sylvester, which he obtained from PRADO, to create a driver account in the name of Brad Sylvester at Uber.

c. On or about May 10, 2020, AGUIAR used personal information for Robert Balaban, which he obtained from PRADO, to create a driver account in the name of Robert Balaban at Uber.

25. ALVES NETO created fraudulent Uber accounts using stolen identities, for example:

a. On or about February 25, 2020, ALVES NETO used personal information for a victim in Winchester, Massachusetts, which he obtained from AGUIAR, to create a driver account at Uber; he linked the fraudulent account to a car registered to DA SILVA and uploaded a fake Massachusetts driver's license bearing a photograph of DA SILVA's wife.

26. PRADO and his co-conspirators exchanged information about their ongoing scheme to defraud Rideshare Companies, for example:

a. On or about February 23, 2020, PRADO sent AGUIAR a voice message in which PRADO explained his use of a program to defraud Rideshare Companies, stating in relevant part: "I charge 500 dollars to do either Uber or Lyft on the person's device, right? If the person does not have a device, I can get any kind of device for 150 extra, cool? And if you sell there--some over there, I can even sell it cheaper--if you sell about three or four, I can even make is for about 400 each for you so that you can make a little bit more."

b. On or about February 25, 2020, PRADO sent AGUIAR contact information for a co-conspirator who also wanted accounts.

c. On or about February 27, 2020, PRADO sent AGUIAR instructions on how to spoof GPS locations to cheat Uber, along with an image of communications with DA SILVA about spoofing Uber.

d. On or about the same day, PRADO sent AGUIAR images of two accounts for Lyft.

e. On or about March 12, 2020, PRADO used WhatsApp to show AGUIAR that PRADO had created a rideshare account in the name of Kevin Sweeney.

f. On or about April 1, 2020, PRADO gave AGUIAR the phone number for DA SILVA.

g. On or about May 11, 2020, PRADO sent AGUIAR an image showing that Uber had flagged a fraudulent account in the name of Robert Carroll for fraud.

h.       On or about July 2, 2020, AGUIAR sent PRADO a video showing a person logging into Uber driver accounts in multiple persons' names.

i.       On or about October 20, 2020, during a WhatsApp exchange regarding fraudulent accounts at Uber and Lyft, PRADO sent DA SILVA an image of the ongoing fraudulent Uber account rentals that PRADO had with ALVES NETO.

COUNT ONE
Conspiracy to Commit Wire
Fraud (18 U.S.C. § 1349)

The Grand Jury charges:

27. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 26(i) of this Third Superseding Indictment.

28. From in or about January 2019 through in or about April 2021, in the District of Massachusetts and elsewhere, the defendant,

THIAGO DE SOUZA PRADO,

conspired with others known and unknown to the Grand Jury, to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO TO FOUR
## Wire Fraud
## (18 U.S.C. § 1343)

The Grand Jury charges:

29. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 26(i) of this Third Superseding Indictment.

30. From in or about January 2019 through in or about April 2021, in the District of Massachusetts and elsewhere, the defendant,

## THIAGO DE SOUZA PRADO,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit, interstate wires creating Uber accounts in the names of the victims listed below.

| Count | Date | Uber Account |
|---|---|---|
| 2 | 6/18/2019 | Christopher Rodday |
| 3 | 2/26/2020 | Christina Caruso |
| 4 | 3/7/2020 | Kevin Sweeney |

All in violation of Title 18, United State Code, Section 1343.

COUNTS FIVE TO SEVEN
Aggravated Identity Theft
(18 U.S.C. §§ 1028A(a)(l) and 2)

The Grand Jury further charges:

31.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-26(i) of this Third Superseding Indictment.

32.     On or about the dates indicated below, in the District of Massachusetts and elsewhere, the defendant,

THIAGO DE SOUZA PRADO,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of the individuals below, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

| Count | Date | Victim | Means of Identification |
|---|---|---|---|
| 5 | 2/23/2020 | Christina Caruso | Massachusetts Driver's License |
| 6 | 3/4/2020 | Kevin Sweeney | Massachusetts Driver's License |
| 7 | 5/4/2020 | Bradley Teeman | Social Security Number |

All in violation of Title 18, United States Code, Sections 1028A(a)(l) and 2.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461(c))

33. Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count One, the defendant,

THIAGO DE SOUZA PRADO,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 246l(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

34. If any of the property described in Paragraph 33, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 33 above.

All pursuant to Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON


_____
KRISTEN A. KEARNEY
DAVID M. HOLCOMB
KRISS BASIL
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS


District of Massachusetts: June 27, 2023
Returned into the District Court by the Grand Jurors and filed.

/s/ Noreen A. Russo
DEPUTY CLERK    at 3:05 PM

16