# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:21-CR-10158-MLW |
| -VS- ) | |
| ) | |
| THIAGO DE SOUZA PRADO ) | September 27, 2023 |

## DEFENDANT THIAGO DE SOUZA PRADO'S COMBINED MOTION AND MEMORANDUM OF LAW SEEKING JUDGMENT OF ACQUITTAL PER FED. R. CRIM. P. 29(a)

Thiago Prado, Defendant *pro se*, respectfully moves the Court to set aside the verdict of guilty returned in the above-named case on September 19, 2023 and enter judgment of acquittal pursuant to Fed. R. Crim. P. 29(a) of the Federal Rules of Criminal Procedure. As discussed in more detail below, Prado was deprived of his fundamental rights under the Fifth and Sixth Amendments to due process and notice of the charges he was called upon to defend, thus warranting that this Court's rare granting of post-trial relief under Rule 29 be exercised in this case.

### A. RELEVANT FACTS

Prado was brought into this case via the Second Superseding Indictment ("SSI"), and he filed a *pro se* motion seeking a bill of particulars, and a motion to dismiss count 7 (the only substantive count Prado was charged in) of the SSI for lack of notice, because it did not state the name of the alleged victim. Those are reflected in the docket of this case as Doc. 270 and Doc. 296.[1] (Prado Decl., ¶ 2).

In the government's opposition (Doc. 286) it stated that the SSI identified the specific victim by pseudonym ("Victim 9"), consistent with the victim's privacy rights, and by driver's license number (ending in 7244). The government also noted

---

[1] Cites preceded by "Doc." are to the entries in the docket of D. Mass Case No. 1:21-CR-10158-MLW.
Cites preceded by "Prado Decl." are to the declaration

1

that in the automatic discovery it provided, it identifies this victim by name for Mr. Prado. (Prado Decl., ¶ 3). The Court agreed with the government and found Prado's motions without merit and denied them both. (Doc. 296).(Prado Decl, ¶ 4).

On June 27, 2023 the government filed its Third Superseding Indictment ("TSI") charging Mr. Prado in seven counts. There was one count of conspiracy (Count 1) to commit wire fraud against Companies A, B, and C, three substantive counts (Counts 2, 3, and 4) of wire fraud against Company A using the identification of the Victims 1, 2, and 3, and also three substantive counts (Counts 5, 6, and 7) of aggravated identity theft as to Victims 2, 3, and 4. (Prado Decl., ¶ 5).

But the TSI did not identify the victims by name, initials, or any other identifier such as the last four digits of the victims' driver's licenses (like the SSI did). Prado had absolutely no information from the indictment to get an understanding as to the identities of any alleged victims so as to give me the minimum notice necessary to conduct the investigation necessary to aid my lawyer in preparing a meaningful defense. (Prado Decl., ¶ 6).

The automatic discovery previously provided by the government was useless in my effort to identify the alleged victims because there was nothing in the indictment, such as a partial driver's license number or partial social security number or anything else Prado could have used to identify any victims in issue in the TSI. (Prado Decl., ¶ 7).

From the moment Prado was provided with the TSI and could not get any understanding as to who the alleged victims were, he began asking his attorney, Mr. Palmer, for discovery or any other information to help Prado identify the alleged victims. From the time Prado was provided with the TSI in late July of 2023, he only had access to the electronic discovery provided to him through the "Evidence Coordinator" at the Donald Wyatt Detention Facility ("Wyatt") for no more than 6 hours prior the start of trial on September 11, 2023. (Prado Decl., ¶ 8).

Although the Court ordered that Prado was to be provided access to discovery

2

for 1 hour per day during trial days when he got back to Wyatt, and from 9 a.m. to 3 p.m. on non-trial days, as the Court was made aware more than once after trial started, Prado was not provided with any access at all on the non-trial days and he only got the 1 hour per day on the days of trial when he got back to Wyatt. (Prado Decl., ¶ 9).

The discovery provided to Prado is very voluminous and had names of over 100 people (that he was able to see so far but it could be more) that were potentially victims in the case but Prado had no information in the indictment to point him in any direction as to who within the names provided in discovery were the victims in the charges against him. (Prado Decl., ¶ 10).

During the entire trial there was no notice of the victims' identity as the government used the generic terms "Company A" and "Victim 1", "Victim 2", "Victim 3", and "Victim 4". After the government rested its case on September 15, 2023, the Court advised the government to add the names of the companies' in issue in the case to the indictment, which the government apparently did and also added the names of the victims and provided the same to Prado's attorney later that day when Prado was already back at Wyatt, according to what his attorney later told him. (Prado Decl., ¶ 11).

Prado did not learn the names of the victims involved in the charges he was tried on until the morning of September 18, 2023 when he was shown the newly amended TSI after asking his attorney if the government added the information to the indictment the Court told it to add. (Prado Decl., ¶ 12).

Prado brought the lack of notice of the victims to the Court's attention and the Court made Prado swear under oath he was telling the truth, which he did and explained everything to the Court relating to the lack of notice in the indictment. Although Prado framed the issue as a constructive amendment of the indictment and proffered prejudice, he did also very clearly state the lack of notice aspect of the issue. Mr. Palmer did not raise any objection regarding the lack of notice in the

3

indictment and/or the lack of notice to Mr. Prado in some other way, and he also never discussed the lack of notice issue with me before September 18, 2023, *i.e.*, after the lack of notice already ran its course through trial. (Prado Decl., ¶ 13).

After Prado explained the situation from his perspective, the Court asked the prosecutor (Kris Basil) if he provided Prado with any information as to the victims' identities, and the prosecutor said because Prado was represented by counsel he told Prado's lawyer on a phone call at some point after Mr. Palmer came back from vacation, what the victims' names were. (Prado Decl., ¶ 14).

Mr. Palmer confirmed what the prosecutor said about getting the names of the victims in a phone call, and in the dialogue that followed between the Court and Mr. Palmer on the question of whether he shared that information with Prado, Mr. Palmer did not provide any affirmative indication that he provided Prado with the names of the victims at any point prior to or during trial. Prado maintains that Mr. Palmer did not provide him with the names he got from the prosecutor identifying the victims' at any point prior to September 18, 2023. (Prado Decl., ¶ 15).

During his discussion with the Court, Prado also reminded the Court that he did in fact raise his concerns over the lack of notice in a *pro se* motion in the context of the SSI that the Court denied several months prior to trial via Doc. 296. (Prado Decl., ¶ 16).

On September 19, 2023 after the jury found Prado guilty on all counts, the Court recognized that Prado did in fact raise the issue of lack of notice issue in a *pro se* motion to dismiss the aggravated identity theft charge in the SSI (Count 7), (Doc. 270), and the Court then decided to allow Prado to file the instant Rule 29 motion as to the lack of notice in the TSI. (Prado Decl., ¶ 17).

### B. THE RULE 29 LEGAL STANDARD

While the notice issue Prado advances herein may not be the sort of issue typically advanced under Fed. R. Crim. P. 29, as this Court is well aware, it "has the inherent power to evaluate" issues outside the precise purview of Rule 29. "Use of

4

such power by application of the Rule 29 standard is not inconsistent with any of the Federal Rules of Criminal Procedure. *Cf. Carlisle v. United States*, 517 U.S. 416, 425-26, 134 L. Ed. 2d 613, 116 S. Ct. 1460 (1996) (noting that federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress, but holding that such inherent authority did not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure) (citing *United States v. Hasting*, 461 U.S. 499, 505, 76 L. Ed. 2d 96, 103 S. Ct. 1974 (1983))." *United States v. Sampson*, 335 F. Supp. 2d 166, at 200-201 (D. Mass. 2004)(Wolf, J.)(internal quotation marks omitted).

Because this Court appropriately invited Prado to file the notice issue advanced herein under Rule 29, Prado respectfully submits that the foregoing standard applies.

### C. ARGUMENT

#### POINT ONE

**AN ACQUITAL SHOULD BE GRANTED SINCE THE TSI IS SUBJECT TO DISMISSAL BASED ON THE CLEAR VIOLATION OF PRADO'S FIFTH AND SIXTH AMENDMENT RIGHTS TO BE CHARGED BY INDICTMENT AND TO SUFFICIENT NOTICE OF THE CHARGES AGAINST HIM ARISING FROM THE OMISSION FROM THE TSI OF ANY MEANS OF IDENTIFICATION OF THE ALLEGED VICTIMS IN THIS WIRE FRAUD AND AGGRAVATED IDENTITY THEFT PROSECUTION**

The Fifth Amendment requires that felony federal prosecutions be brought via indictment returned by a grand jury. "A constitutionally adequate indictment must sufficiently apprise the defendant of what he must be prepared to meet. *Russell v. United States*, 369 U.S. 749, 763, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962) (citations omitted). The Sixth Amendment requires the government to inform the accused of the nature and cause of the accusation, *United States v. Murphy*, 762 F.2d 1151, 1154 (1st Cir. 1985) (quoting *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir.

1970)). And, the Fifth Amendment assures the defendant that the government will try him on the charges that the grand jury voted, not on some other charges that are not made in the indictment against him. *Stirone*, 361 U.S. at 217 (citations omitted). Thus, the indictment must contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend. *United States v. Serino*, 835 F.2d 924, 929 (1st Cir. 1987), (quoting *Hamling v. United States*, 418 U.S. 87, 117, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974)) (other citations omitted)." *United States v. Santa-Manzano,* 842 F.2d 1, at 2 (1st Cir. 1988)(internal quotation marks omitted). *See also, United States v. Savarese*, 686 F. 3d 1, at 6 (1st Cir. 2012)("In general, an indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy[,]" citing *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993)).

"Where guilt depends so crucially upon [] a specific identification of fact, [the Supreme Court's] cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Hamling*, 418 U.S. at 118 (quoting *Russell*, 369 U.S., at 764, internal quotation marks omitted).

"Each count in an indictment is regarded as if it was a separate indictment." *Dunn v. United States*, 284 U.S. 390, at 393, 52 S. Ct. 189 (1932). Thus, each count of an indictment must be sufficient standing alone. *United States v. Yefsky*, 994 F.2d 885, at 894 (1st Cir. 1993).

It is indisputable, and an uncontroversial point that in a case involving the theft and fraudulent use of a person's identity, the identity of that victim is a highly relevant fact to the overall prosecution and qualifies for the "specific identification" treatment called for by the Supreme Court in *Russell* and *Hamling* (both *supra*).

Indeed, it is not as if the government is unaware of the basic requirement of notice of alleged victims needed to be provided to Prado as the below chart comparison between the SSI, the TSI, and the version of the TSI as amended after

the government rested its case, demonstrates that in the SSI the government adhered to its obligation to ensure notice and clearly departed from that in the TSI, and corrected that departure in the amended TSI after it rested its case against Prado and conducted a full trial without notice:

### Second Superseding Indictment ("SSI")

| Count | Charged Defendant that plead guilty to the Victims | Victims Numbers | Last 4 digits of Drivers Licenses |
|---|---|---|---|
| 2 | (11) Itallo Correa | 1 | 7925 |
| 3 | (12) Julio Braga | 2 | 3083 |
| 13 | (14) Bruno Abreu | 3 | 7895 |
| 14 | (15) Oliver Oliveira | 4 | 7267 |

### Third Superseding Indictment ("TSI")

| Count | Charged Defendant | Victims Numbers | Victims' Names, Drivers Licenses, or SSN Numbers |
|---|---|---|---|
| 2 | Thiago Prado | 1 | none |
| 3 | Thiago Prado | 2 | none |
| 4 | Thiago Prado | 3 | none |
| 5 | Thiago Prado | 2 | none |
| 6 | Thiago Prado | 3 | none |
| 7 | Thiago Prado | 4 | none |

### Amended Third Superseding Indictment (after the government rested)

| Count | Charged Defendant | Victims Numbers | Victims' Names and Means of Identification (Drivers Licenses or SSN's) |
|---|---|---|---|
| 2 | Thiago Prado | **none** | Christopher Rodday (driver license) |
| 3 | Thiago Prado | **none** | Christina Caruso (drivers licenses) |
| 4 | Thiago Prado | **none** | Kevin Sweeney (drivers licenses) |
| 5 | Thiago Prado | **none** | Christina Caruso (drivers licenses) |
| 6 | Thiago Prado | **none** | Kevin Sweeney (drivers licenses) |
| 7 | Thiago Prado | **none** | Bradley Teeman (SSN) |

The fact that Prado did not have the ability to identify the particular victims in this case via other means such as discovery due to lapses by staff at Wyatt, despite a Court order specifically requiring access to discovery (Prado Decl., ¶¶ 8-9), coupled with lack of any information during trial or from his attorney regarding the identity of alleged victims prior to the conclusion of the government's case, (Prado Decl., ¶¶ 10-15); clearly demonstrates that Prado was not enabled to meaningfully defend himself as he had no ability to offer any of his own factual context relative to the alleged victims particularly in issue, nor did he have a basis to mount objections seeking to confine the government to presentation of evidence relative to the specific victims in issue.

The lack of ability for Prado or his counsel to be able to mount coherent objections seeking to confine the government to presentation of evidence specifically as to the particular victims in issue in this case, enabled and resulted in the government presenting evidence of a multitude of alleged victims during the course of trial and gives rise to whether or not the government simply filled in names of whom it thought it had the strongest basis for conviction after all the evidence was already in, rather than the specific victims the grand jury based its charges in the TSI on.

The foregoing argument is consistent with the following observation by the First Circuit in *United States v. Murphy*, 762 F.2d 1151, at 1154 (1st. Cir. 1985):

> "As we stated in *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970):
> A vital function of an indictment is to provide "such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation * *." This principle is derived directly from the Sixth Amendment's guarantee of the right of an accused "to be informed of the nature and cause of the accusation * * *" and is basic to the proper functioning of our adversary system of justice. Without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an accused is at a material disadvantage in meeting the charge against him. (footnote omitted)."

<a>
</a>
<p>
</p>

In *Murphy* the lack of notice related to the failure to identify the specific proceeding in issue that the defendants there were charged with interfering with and the First Circuit determined that the lack of notice warranted correction via remand with instructions to dismiss the indictment under the plain error standard since it was raised for the first time after conviction, on appeal. *Id.*, 762 F.2d, at 1155.

Here, Prado did all he could to get the notice the TSI was lacking on victim identities but he did not get that information until after the government rested its case. The facts here warrant application of *Murphy* since the issue here should be reviewed on a standard less than plain error as Prado objected to the lack of notice which prompted the invitation from this Court for Prado to brief the issue. Per application of the reasoning and holding in *Murphy* and the additional authority cited above, Prado respectfully submits that this Court should exercise its rarely exercised authority and grant Prado Rule 29 relief in the form of setting aside the jury's verdict, dismissing the indictment, and ordering the immediate release of Prado.

## POINT TWO

### THE LACK OF NOTICE ISSUE HERE IS A STRUCTURAL ERROR THAT WARRANTS CORRECTION UNDER A PER SE STANDARD

Prado further submits that the error identified herein is a structural error that warrants per se reversal of the verdict since he is raising it at the trial court level. The error in the TSI in failing to provide Prado any notice of the most relevant facts in an identity theft and wire fraud prosecution, *i.e.*, the identity of the specific victims the grand jury based its charges upon, implicates the Fifth Amendment's protection that federal charges be brought only via an indictment returned by a grand jury and implicates the Sixth Amendment's notice requirement which also ensures that defendants are tried only on the charges actually brought by the grand jury. *See e.g.*,

9

*United States v. Santa-Manzano,* 842 F.2d 1, 2 (1st Cir. 1988)("The Fifth Amendment 'assures the defendant that the government will try him on the charges that the grand jury voted,' rather than other offenses.").

This precise question as to whether such error constitutes structural error warranting per se reversal was left open by *United States v. Mojica-Baez,* 229 F.3d at 292, at 310-11(1st Cir. 2000)(reserving the possibility that an indictment that omits an element might constitute structural error for failing to provide the defendant fair notice of the offense that he was charged with violating.).

Accordingly, Prado respectfully submits that the posture of this case fairly warrants assessment for the sort of structural error alluded to, but left open by, *Mojica-Baez,* and further warrants a finding that the error here was indeed structural error that justifies per se setting aside of the jury's verdict, dismissal of the indictment, and the immediate release of Prado.

## D. CONCLUSION

Prado's fundamental rights to notice of the charges he was required to defend and to be tried only on the charge brought by the grand jury have been violated in this case and the particular facts and circumstances in issue here warrants relief from this Court in the form of setting aside the jury's verdict and dismissal of the indictment. While it is known to Prado that this Court rarely grants post-trial relief, this is one of the rare situations where this Court's rare exercise of its authority is warranted and proper. For all the reasons set forth herein, this Court should grant the sought relief.

Respectfully submitted,

Thiago De Souza Prado
Fed. No. 44659-509
Donald Wyatt Detention Facility
950 High Street, Central Falls, RI 02863

10

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| -VS- ) | Case No. 1:21-CR-10158-MLW |
| ) | |
| THIAGO DE SOUZA PRADO ) | |

## DECLARATION OF THIAGO DE SOUZA PRADO

I, Thiago De Souza Prado, declare the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the defendant in the above referenced federal criminal matter, I am mentally competent to state the matters stated herein, and the matters stated herein are based on my first-hand knowledge and recollection of relevant events.

2. I was brought into this case via the Second Superseding Indictment ("SSI"), and I filed a *pro se* motion seeking a bill of particulars, and a motion to dismiss count 7 (the only substantive count I was charged in) of the SSI for lack of notice, because it did not state the name of the alleged victim. Those are reflected in the docket of this case as Doc. 270 and Doc. 296.[1]

3. In the government's opposition (Doc. 286) it stated that the SSI identified the specific victim by pseudonym ("Victim 9"), consistent with the victim's privacy rights, and by driver's license number (ending in 7244). The government also noted that in the automatic discovery it provided, it identifies this victim by name for me.

---

[1] Cites preceded by "Doc." are to the entries in the docket of D. Mass Case No. 1:21-CR-10158-MLW.

4. The Court agreed with the government and found my motions without merit and denied them both. (Doc. 296).

5. On June 27, 2023 the government filed its Third Superseding Indictment ("TSI") charging me in seven counts. There was one count of conspiracy (Count 1) to commit wire fraud against Companies A, B, and C, three substantive counts (Counts 2, 3, and 4) of wire fraud against Company A using the identification of the Victims 1, 2, and 3, and also three substantive counts (Counts 5, 6, and 7) of aggravated identity theft as to Victims 2, 3, and 4.

6. But the TSI did not identify the victims by name, initials, or any other identifier such as the last four digits of the victims' driver's licenses (like the SSI did). I had absolutely no information from the indictment to get an understanding as to the identities of any alleged victims so as to give me the minimum notice necessary to conduct the investigation necessary to aid my lawyer in preparing a meaningful defense.

7. The automatic discovery previously provided by the government was useless in my effort to identify the alleged victims because there was nothing in the indictment, such as a partial driver's license number or partial social security number or anything else I could have used to identify any victims in issue in the TSI.

8. From the moment I was provided with the TSI and could not get any understanding as to who the alleged victims were, I began asking my attorney, Mr. Palmer, for discovery or any other information to help me identify the alleged victims. From the time I was provided with the TSI in late July of 2023, I only had access to the electronic discovery provided to me through the "Evidence Coordinator" at the Donald Wyatt Detention Facility ("Wyatt") for no more than 6 hours

prior the start of my trial on September 11, 2023.

9. Although the Court ordered that I was to be provided access to discovery for 1 hour per day during trial days when I got back to Wyatt from court, and from 9 a.m. to 3 p.m. on non-trial days, as the Court was made aware more than once after trial started, I was not provided with any access at all on the non-trial days and I only got the 1 hour per day on the days of trial when I got back to Wyatt from court.

10. The discovery provided to me is very voluminous and had names of over 100 people (that I was able to see so far but it could be more) that were potentially victims in the case but I had no information in the indictment to point me in any direction as to who within the names provided in discovery were the victims in the charges against me.

11. During the entire trial there was no notice of the victims' identity as the government used the generic terms "Company A" and "Victim 1", "Victim 2", "Victim 3", and "Victim 4". After the government rested its case on September 15, 2023, the Court advised the government to add the names of the companies' in issue in the case to the indictment, which the government apparently did and also added the names of the victims and provided the same to my attorney later that day when I was already back at Wyatt, according to what my attorney later told me.

12. I did not learn the names of the victims involved in the charges I was tried on until the morning of September 18, 2023 when I was shown the newly amended TSI after I asked my attorney if the government added the information to the indictment the Court told it to add.

13. I brought the lack of notice of the victims to the Court's attention and the Court made me swear under oath I was telling the truth, which I did and I explained everything to the Court relating to the lack of notice in the indictment. Although I framed the issue as a constructive amendment of the indictment, I did clearly state the lack of notice aspect of the issue. Mr. Palmer did not raise any objection regarding the lack of notice in the indictment and/or the lack of notice to me in some other way, and he also never discussed the lack of notice issue with me before September 18, 2023, *i.e.*, after the lack of notice already ran its course through trial.

14. After I explained the situation, the Court asked the prosecutor (Kris Basil) if he provided me with any information as to the victims' identities, and he said because I was represented by counsel he told my lawyer on a phone call at some point after Mr. Palmer came back from vacation, what the victims' names were.

15. Mr. Palmer confirmed what the prosecutor said about getting the names of the victims in a phone call, and in the dialogue that followed between the Court and Mr. Palmer, Mr. Palmer did not provide any affirmative indication that he provided me with the names of the victims at any point prior to or during trial, and I again state here that he did not provide me with those names at any point prior to September 18, 2023.

16. During the discussion I also told the court that I did raise the lack of notice issue in a *pro se* motion in the context of the SSI that the Court denied several months prior. (Doc. 296).

17. On September 19, 2023 after the jury found me guilty on all counts, the Court recognized that I did raise the issue of lack of notice issue in a motion to dismiss the aggravated identity theft charge in the

SSI (Count 7), (Doc. 270), and the Court then decided to allow me to file a Rule 29 motion regarding the lack of notice in the TSI.

**END OF DECLARATION**

Executed this 27 day of September, 2023, at the Donald Wyatt Detention Facility, Central Falls, RI.

By: _____
Thiago De Souza Prado
Fed. No. 44659-509
Donald Wyatt Detention Facility
950 High Street
Central Falls, RI 02863