UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THIAGO DE SOUZA PRADO,<br><br>Defendant | No. 21-cr-10158-7-MLW |

### GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
### *PRO SE* MOTION FOR JUDGMENT OF ACQUITTAL

The defendant Thiago Prado filed a *pro se* motion for a judgment of acquittal based on alleged violations of his right to due process and notice of the charges against him. Dkt. 1163 ("Motion"). The Motion asks the Court to set aside the jury's verdict because the Third Superseding Indictment returned by the grand jury ("TSI," Dkt. 1038) did not state the names of the specific victims of the charges. This request amounts to an untimely motion to dismiss the TSI based on an alleged defect, which Fed. R. Crim. P. 12(b)(3)(B) requires to be raised by pretrial motion absent "good cause" under Fed. R. Crim. P. 12(c).[1] Prado cannot show good cause for objecting to the TSI only after the close of evidence, and his arguments fail on their merits. The Court should deny the Motion.

### BACKGROUND

The government offers the following detailed background as relevant to both the timing of Prado's motion and to his claim that the TSI failed to provide him with sufficient notice.

---

[1] *See* Motion at 5 ("Point One: An acquittal should be granted since the TSI is subject to dismissal based on the clear violation of Prado's Fifth and Sixth Amendment rights to be charged by indictment and to sufficient notice of the charges against him arising from the omission from the TSI of any means of identification of the alleged victims in this wire fraud and aggravated identity theft prosecution.").

Prado was indicted with 17 other defendants on May 17, 2023. The indictment charged one count of conspiracy to commit wire fraud in relation to defendants' creation, distribution, and use of rideshare and delivery company driver accounts under the names and information of third-party victims of identity theft. Dkt. 37.[2]

On August 23, 2021, the Court appointed Attorney John F. Palmer to represent Prado following Attorney Joshua S. Levy's withdrawal as Prado's counsel. Dkt. 168.

On September 13, 2021, the grand jury returned a Second Superseding Indictment ("SSI," Dkt. 189), which added one count of aggravated identity theft with respect to Prado (Count Nine). The SSI identified the victim of the aggravated identity theft in Count Nine as "Victim 9."

Prado filed a motion to proceed *pro se* on November 29, 2021. Dkt. 236. At a hearing on the motion on December 17, 2021, the Court asked Prado to clarify whether he requested to represent himself "for all purposes in this case, including trial," and Prado represented to the Court that he "request[ed] *pro se* to represent myself for everything." Dkt. 272, 12/17/21 Tr. at 5:13-18. The Court granted Prado's motion and appointed Mr. Palmer as standby counsel "at least with regard to pretrial proceedings." Dkt. 257 at 2.

Thereafter, between December 23, 2021 and December 30, 2022, Prado filed nearly 20 *pro se* motions challenging the SSI, his pretrial detention, and the Court's ability to preside over the case. *See* Dkts. 262, 265, 270, 279, 303, 304, 322, 339, 358, 386, 461, 467, 515, 542, 546, 552, 605, 625.[3] At least ten of these motions purported to move for dismissal of the SSI or other relief under Fed. R. Crim P. 12(b). *See* Dkts. 262, 265, 270, 332, 339, 358, 467, 515, 605, 625.

---

[2] Prado was not, as his motion asserts, "brought into this case via the Second Superseding Indictment" (Motion at 1).

[3] As the Court later observed, "when [Prado was] *pro se*, [he] filed so many frivolous motions" that were "very hard – some of them were hard to understand." 9/18/23 Tr. at 57:19-22.

2

In one of these filings, titled a "motion to identify substantive offense of commercial dealings" (Dkt. 265), Prado purported to move under Fed. R. Crim P. 12(b) to require the government to "identify any and all commercial activities that the government actually claims the charged Defendant, Mr. Prado has done in all actuality." Dkt. 265 at 1. The motion effectively requested a bill of particulars on the grounds that "the government's charged indictment fails to inform Mr. Prado of the time, place, and date that the defendant committed any type of criminal conduct that may have affected interstate commerce." *Id.* at 2. In its opposition, the government defended the sufficiency of the SSI's allegations about the time and place, object, and manner and means of the charged conspiracy; Prado's own participation in the conspiracy; and the predicate conduct for the aggravated identity theft charge. Dkt. 266.

In another of these motions (Dkt. 270), Prado again invoked Fed. R. Crim. P 12(b) to argue for the dismissal of Count 9 of the SSI based in part on its omission of the name of the victim of the aggravated identity theft. Dkt. 270 at 3 ("It is clear that failure to give the petitioner notice of the names of the individuals involved that are to be considered as a 'victim' of 'aggravated identity theft' … violates the most rudimentary demands of due process of law."). In its opposition (Dkt. 286), the government noted that the SSI used a pseudonym ("Victim 9") to protect the victim's privacy; that the SSI included the last four digits of Victim 9's driver's license number; and that the discovery provided by the government identified Victim 9 by name for Prado. Dkt. 286 at 1. The government explained that this information, coupled with allegations about when, where, and how the aggravated identity theft occurred, gave Prado sufficient notice of the offense charged in Count 9. *Id.* at 1-2.

The Court denied each of these motions in an Order on February 1, 2022 (Dkt. 296), finding that, "[e]ssentially for the reasons asserted by the government, … each motion is without merit."

Dkt. 296 at 2.  Prado continued to file *pro se* motions throughout 2022, and the Court denied these motions following argument at a pre-trial conference on January 17, 2023.  Dkt. 658.

At the January 17, 2023 conference, Prado requested that the Court re-appoint counsel to represent him at trial.  Dkt. 720, 1/17/23 Tr. at 27:17-28:4, 39:13-15.  The Court accordingly reappointed Attorney John F. Palmer as Prado's counsel and continued Prado's trial from March 6, 2023 to September 11, 2023.  Dkts. 657, 658.

On June 27, 2023, the grand jury returned the Third Superseding Indictment ("TSI," Dkt. 1038), which charged Prado with one count of conspiracy to commit wire fraud, three counts of wire fraud, and three counts of aggravated identity theft.  Like the SSI, the TSI included pseudonyms or aliases in the place of the individual or corporate victims' names (*e.g.*, "Rideshare Company A" and "Victim 1").  Count One charged Prado with conspiring with others to commit wire fraud, and the TSI elsewhere described the scheme to defraud as "a scheme to defraud the Rideshare Companies by creating, using, renting out, and selling fraudulent driver accounts."  TSI ¶ 13.  The Rideshare Companies—Rideshare Company A, Delivery Company B, and Rideshare Company C—corresponded to three of the company victims previously alleged in the SSI.  The wire fraud counts (Counts Two through Four) related to the creation of fraudulent driver accounts in the names of Victims 1, 2, and 3, while the aggravated identity theft counts (Counts Five through Seven) related to the transmission of driver's license information or Social Security numbers of Victims 2, 3, and 4.

As described in the attached Affidavit of AUSA Kriss Basil (<u>Exhibit 1</u>), AUSA Basil spoke with Mr. Palmer about the TSI both before and after the grand jury returned the TSI.  On June 6, 2023, AUSA Basil informed Mr. Palmer of the government's intention to seek a superseding indictment and its expectation that one of the new counts would pertain to the same victim of Count 9 in the SSI, whom the government previously identified by name to the defense.  Ex. 1 ¶ 2.

4

Between June 27 and July 7, 2023, AUSA Basil told Mr. Palmer who the victims of the counts in the TSI were. *Id.* ¶¶ 3-4.

Meanwhile, Prado filed another motion to proceed *pro se* on July 17, 2023. Dkt. 1066. Mr. Palmer clarified in a later filing that Prado intended to request to proceed *pro se* solely for the purpose of filing and arguing pre-trial motions. Dkt. 1079.

On July 27, 2023 the government disclosed its witness list to Mr. Palmer. Ex. 1 ¶ 5. This list included Victims 1 through 4 by name, in addition to certain other identity theft victims referenced by alias in the TSI. *Id.* It also listed witnesses from Uber and Lyft. *Id.* At Mr. Palmer's request, AUSA Basil and AUSA Holcomb spoke with Mr. Palmer by phone on August 1, 2023 about the witness list and indicated which of the proposed witnesses were the victims referenced in the TSI. *Id.* ¶ 6; *see also* Affidavit of AUSA David Holcomb (Exhibit 2), ¶ 4.

Prado was arraigned on the TSI on August 2, 2023. Dkt. 1080.

The Court held a hearing on Prado's motion to proceed *pro se* for pretrial motions also on August 2, 2023. Dkt. 1086. At that hearing, Prado notified the Court that he wished to file two specific motions *pro se*: a motion to dismiss the TSI on the theory that it failed to allege a scheme for which money or property was the object, and a motion related to his prior representation by Mr. Levy, now Acting United States Attorney for the District of Massachusetts. Dkt. 1099, 8/2/23 Tr. at 6.[4] Asked by the Court to confirm that he wished to file only these two *pro se* motions, Prado replied in the affirmative:

> THE COURT:         And then this is it?
>
> THE DEFENDANT:  That's it.
>
> THE COURT:         Just these two motions?

---

[4] Mr. Palmer declined to file these motions on Prado's behalf but reported to the Court at the hearing that he did not believe that Prado's motions were frivolous under the standard of Fed. R. Civ. P. 11. Dkt. 1099, 8/2/23 Tr. at 14.

      THE DEFENDANT:  (Nods.)

*Id.* at 20.  The Court then permitted Prado to file these two motions.  *Id.* at 22-23; Dkt. 1089.  Prado represented to the Court a second time that these were the last *pro se* motions he intended to raise:

      THE COURT:      But that's it, no more motions, right?

      THE DEFENDANT:  Yes.

      THE COURT:      Because I'm relying on that in exercising my discretion to let you do this.  Understand?

      THE DEFENDANT:  Yes, I do, Your Honor.

Dkt. 1099, 8/2/23 Tr. at 25.  Thereafter, Prado filed the two *pro se* motions (Dkts. 1088-1, 1093-1); the government opposed them (Dkts. 1094, 1102); and the Court denied those motions (Dkt. 1126).

      The government disclosed an updated witness list to Mr. Palmer on August 10, 2023.  This witness list also included Victims 1 through 4 by name.  Ex. 1 ¶ 8; Ex. 2 ¶ 6.  AUSAs Basil and Holcomb discussed the witness list with Mr. Palmer again by phone on August 15, 2023.  Ex. 1 ¶ 10; Ex. 2 ¶ 8.  On that call, counsel for the government indicated that it may call a relative of Victim 3 in lieu of calling Victim 3, based on Victim 3's physical condition.  Ex. 1 ¶ 10; Ex. 2 ¶ 8.  On August 29, 2023, the government disclosed an updated witness list to Mr. Palmer, specifically noting that Victim 3's daughter now appeared on the list in place of Victim 3.  Ex. 1 ¶ 11; Ex. 2 ¶ 9.  The government provided its witness list again to Mr. Palmer on September 6, 2023, when the government submitted its witness list to the Court.  Ex. 1 ¶ 12; Ex. 2 ¶ 10.

      Prado's trial commenced on September 11, 2023.  Dkt. 1136.  On September 15, 2023, prior to the close of evidence, the Court directed the government to submit a version of the TSI showing the names of the company and individual victims in place of the aliases.  *See* Dkt. 1143.

That afternoon, AUSA Holcomb emailed a de-anonymized version of the TSI to Mr. Palmer for his review and also emailed this version to the Courtroom Deputy Clerk. Ex. 1 ¶ 13; Ex. 2 ¶ 11.

On September 18, 2023, at a conference held after the close of evidence, Prado raised a *pro se* objection to the de-anonymized version of the TSI. Mr. Palmer did not join this objection. *For the first time*, Prado claimed that the TSI failed to give him notice of the names of the victims referenced in the wire fraud and identity theft counts. He claimed, "I find out through the trial that the Third Superseding Indictment didn't give me no notice here on the names for the identity theft charge." 9/18/23 Tr. at 8:09-11. Prado also alleged "a Fifth Amendment violation because the Third Superseding Indictment doesn't protect me for double jeopardy because I'm charged to victimize Person One, Person Two, Person Three, Person Four. Next month, they can reindict me and put in names of the people and we don't know what's going on." *Id.* at 9:10-15. AUSA Basil informed the Court that he had disclosed the identities of the victims to Mr. Palmer both before and after the grand jury returned the TSI. 9/18/23 Tr. at 11:14-12:5. Mr. Palmer confirmed that he had received notice of the names of the victims from his conversations with the government. *Id.* at 13:18-25. Following further discussion, the Court reserved on Prado's objection. *Id.* at 11:12-17:17, 22:04-23.

The jury convicted Prado on all seven counts of the TSI on September 19, 2023. Dkts. 1148, 1149.

After the Court discharged the jury, the Court denied the defense's motion under Fed. R. Crim. P. 29 for acquittal based on the sufficiency of the evidence. 9/19/23 Tr. at 97:2-10. With respect to Prado's *pro se* claim from the day before, the Court instructed as follows:

> Yesterday, Mr. Prado raised a pro se claim, Mr. Palmer didn't join in it. But I listened to him although I hadn't actually been asked to grant leave, but things were going fast. He claimed that the failure to name the victims in the Third Superseding Indictment deprived him of due process. That's not really a Rule 29 motion, it's essentially a motion to dismiss and if I thought about it more, I might have said it's

7

> too late. But I'm not saying that. I told you, Mr. Prado, you personally could file a motion as if it were on the Rule 29 schedules.
>
> So if you want to file a motion raising that one point that you didn't have fair notice of who the victims were, you shall do that by October 3, you shall file an affidavit that states under oath every fact on which you're relying.

9/19/23 Tr. at 97:15-98:3. The Court memorialized this ruling in an Order the following day, September 20, 2023. Dkt. 1151 ("Prado is granted leave to file, by October 3, 2023, a *pro se* motion concerning his objection that the [TSI] not including the victims' names violated his due process rights.").

## LEGAL FRAMEWORK

While Prado invokes Fed. R. Crim. P. 29, the Motion advances no argument that the evidence introduced at trial was insufficient to sustain the jury's verdict on any of the seven counts in the TSI. Instead—and consistent with the Court's observation on September 19, 2023—the Motion argues that the TSI's alleged failure to give him adequate notice of the charges against him calls for dismissal of the TSI. Accordingly, the Motion should be evaluated under Fed. R. Crim. P. 12. *See*, *e.g.*, *United States v. Berry*, 2022 WL 17336512, at *4 (S.D.N.Y. Nov. 30, 2022) ("Although Berry styles his motion as being under Rule 29 or Rule 33 of the Federal Rules of Criminal Procedure, the arguments he raises—that the Government is bound by the 2008 Plea Agreement not to prosecute him for the crimes charged in the current prosecution—are properly brought prior to trial under Rule 12."); *United States v. Wagoner*, 2022 WL 17418000, at *3 (W.D. Va. Dec. 5, 2022) ("Regardless of whether a challenge ... is stylized as a Rule 29 motion for judgment of acquittal or a Rule 12 motion to dismiss, the standard applied by the court is

determined not by the title of the motion but rather the argument within it." (internal quotation marks and citation omitted)).[5]

"In general, an indictment is sufficient if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy." *United States v. Eirby*, 262 F.3d 31, 38 (1st Cir. 2001) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(iii), a defendant must raise any claim that the indictment lacks specificity by pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(iii). However, Rule 12(c)(3) provides that a court may consider untimely Rule 12(b)(3) motions "if the [movant] shows good cause." Fed. R. Crim. P. 12(c)(3). A showing of "good cause" is "fact-specific" and requires that the movant provide "a good reason for failing to file a motion on time" and demonstrate "some colorable prospect of cognizable harm resulting from a failure to allow the late filing." *United States v. Santana-Dones*, 920 F.3d 70, 81 (1st Cir. 2019) (citing *United States v. Ayer*, 857 F.2d 881, 885 (1st Cir. 1988)).

## ARGUMENT

The defendant's motion must fail both because he has not shown "good cause" for raising it late and because the TSI, coupled with the disclosures and discovery provided to the defense, provided ample notice of the identity of the victims referenced in the TSI.

---

[5] Prado contends that the Rule 29 standard applies, because the Court has an "inherent power to evaluate" issues "outside the previse purview of Rule 29." Motion at 4-5. He relies on *United States v. Sampson*, 335 F. Supp. 2d 166, 200-201 (D. Mass. 2004), in which this Court exercised its inherent authority to apply the Rule 29 standard in the context of the penalty phase of a capital case. Prado fails to explain how this case presents an analogue to *Samson* or how the Court even could evaluate his notice-based claims under a sufficiency of the evidence standard.

### I. Prado Cannot Show Good Cause for Raising an Alleged Indictment Defect at the Close of Evidence

The Motion attempts to use the government's submission of the de-anonymized version of the TSI as an excuse for claiming at the eleventh hour that the TSI had not given him notice of the identities of the victims referenced in the TSI. But *by his own admission*, Prado was aware that the TSI identified victims by alias rather than by name well before trial began. *See, e.g.*, Prado Affidavit, Dkt. 1163-1 ¶ 5 ("On June 27, 2023, the government filed its [TSI] charging me in seven counts. There was one count of conspiracy (Count 1) to commit wire fraud against Companies A, B, and C, three substantive counts (Counts 2, 3, and 4) of wire fraud against Company A using the identification of the Victims 1, 2, and 3, and also three substantive counts (Counts 5, 6, and 7) of aggravated identity theft as to Victims 2, 3, and 4."); *id*. ¶ 8 ("From the moment I was provided with the TSI"—"in late July of 2023"—"and could not get any understanding as to who the alleged victims were, I began asking my attorney, Mr. Palmer, for discovery or any other information."). If Prado truly was not personally aware of the victims' identities, he at least had enough time and opportunity to raise that issue between receiving the TSI (in July, according to Prado) and proceeding to trial in September. Prado offers no explanation for why, knowing that the TSI did not show the victims' names, he did not move to dismiss the indictment on that basis prior to trial, as required by Fed. R. Crim. P. 12(b)(3)(B)(iii).

Prado's record of *pro se* filings in this case demonstrates that he personally scrutinized the indictments, formulated a variety of theories about how they were deficient, and knew how to raise those theories with the Court under Rule 12(b). His *pro se* motion to dismiss Count Nine of the SSI (Dkt. 270) advanced a nearly identical argument about the SSI's use of an alias in place of the identity theft victim's name. In fact, that single motion alleged lack of specificity (the failure to charge "exactly how" Prado committed aggravated identity theft), failure to state an offense (based on the alleged omission of the time, place, and location of the offense), and duplicity (charging

10

more than one offense in Count Nine)—three different prongs of Fed. R. Crim P. 12(b)(3), all required to be raised before trial.  Prado filed at least nine other *pro se* motions invoking Rule 12(b).  Prado was practiced at alleging defects in the indictment by the time the grand jury returned the TSI.

Prado could have challenged the sufficiency of the allegations in the TSI before trial, either through counsel or in a *pro se* filing.[6]  Instead, when the Court asked Prado at the August 2, 2023 hearing whether Prado had any other arguments he intended to raise *pro se*, Prado represented to the Court: "That's it."  Although Prado already was aware that the TSI referred to victims by aliases, Prado did not move to dismiss the TSI as defective on that basis.  Instead, Prado waited to raise the issue until after the jury was empaneled, after the government rested its case, and after the defense indicated that it would not put on evidence.

The only explanation Prado offered for raising his notice arguments for the first time on September 18, 2023 was the amendment of the TSI to include the victims' names.  9/18/23 Tr. at 10:11-20 ("Until today, I had no idea who was the victims on the identity theft charge. … And I start thinking about the issue, Your Honor, I think it was last Tuesday when you told the Government to put the names of the companies on the indictment, that's when I start thinking about it, fair notice.  Plus I do have the right to be trial by indictment.").  But the amendment of the TSI cannot have been a revelation to Prado about what the TSI had and had not contained all along.

This Motion represents a last-ditch effort after two years of unsuccessful *pro se* attempts to dodge the charges in this case.  Prado fails to show good cause for claiming that the TSI failed

---

[6] Mr. Palmer represented Prado at all times since the filing of the TSI in June 2023.  While the Court never adopted a "hybrid representation" arrangement (*i.e.*, authorizing Prado to represent himself alongside counsel), the Court permitted Prado to file two pre-trial motions *pro se* in the month leading up to trial, as described above.

11

to give him sufficient notice of the charges for the first time on the penultimate day of trial. His motion should be denied as untimely on that basis alone.

## II.     The TSI Provided Adequate Notice of the Charges and Specific Victims

Even if Prado could show good cause for his untimely motion to dismiss the indictment, his claims are meritless. Prado had adequate notice of the identity of the victims from the TSI's allegations, the government's disclosure of victim identities directly to Prado's counsel, and the discovery provided by the government.

First, the TSI itself contained enough detail to notify Prado of the victims implicated in each count. The TSI identified each of the victims by a unique alias. It described the locations, businesses, and practices of the company victims. TSI ¶¶ 5-12. The Motion raises no serious argument that Prado did not have notice of which companies the TSI referenced.

Counts Two through Four charged wire fraud in connection with the creation of three specific Rideshare Company A accounts and, in each case, specified the date of creation and the alias for the individual victim whose name and information was used to create the account (Victim 1, Victim 2, and Victim 3). *Id.* ¶ 30. Counts Five through Seven charged aggravated identity theft in connection with the transfer, possession, or use, on specified dates, of Victim 2's Massachusetts Driver's License, Victim 3's Massachusetts Driver's License, and Victim 4's Social Security Number. *Id.* ¶ 32.

The "Manner and Means" section of the TSI included specific allegations about when Prado or a co-conspirator transmitted each individual victim's information and/or created a driver account in the victim's name. For example, the TSI specified that, on or about June 18, 2019, Prado "used personal information for Victim 1, a person from Somerville, Massachusetts, but PRADO's photograph and debit card, to create a driver account at Rideshare Company A." *Id.* ¶ 23(a). With respect to Victim 2, the TSI alleges that Prado sent Aguiar Victim 2's driver's

12

license on or about February 23, 2020 (¶ 20(e)); that Aguiar sent Prado the Social Security number for Victim 2 the same day (¶ 20(g)); and that Prado used the personal information he obtained from Aguiar to create a driver account with Rideshare Company A in Victim 2's name (¶ 23(b)). The TSI includes a similar level of detail concerning the other individual victims. These allegations put the defense on notice of the specific transaction covered by each charge and permitted the defense to locate the relevant evidence in the discovery and defend against the charge.[7] Moreover, they foreclosed double jeopardy on those transactions.[8] Indictments are required to do no more. *See Eirby*, 262 F.3d at 38.

    Second, the government disclosed the identities of the victims to the defense well before trial. Rideshare Company A (Uber), Delivery Company B (Uber Eats), and Rideshare Company C (Lyft) were common to all of the indictments returned in this case. As described in the accompanying affidavits, counsel for the government had multiple conversations with defense counsel about who the individual victims in the TSI were and how the government expected them to testify at trial. The victims' names were on the initial and updated witness lists the government disclosed to the defense in the lead-up to trial. At the September 18, 2023 conference, Mr. Palmer stated unequivocally to the Court that he had been on notice of the identities of the victims. 9/18/23 Tr. at 13:18-25.[9]

---

[7] The Motion complains that the TSI did not include the last four digits of the victims' driver's license numbers, as the SSI had done. Motion at 2. But unless the defendant has memorized those identifiers, they would have provided no greater notice of who the victims were than did the detailed information about when and how the victims' information was used.

[8] The TSI's specificity about the use of each victim's information leaves no room for Prado's speculation that, at trial, the government "simply filled in names of whom it thought it had the strongest basis for conviction after all the evidence was already in" (Motion at 8).

[9] In his Motion, Prado claims that he was "not enabled to meaningfully defend himself" based on limited access to discovery at Wyatt and an alleged lack of information from his attorney.

13

Third, the discovery provided by the government illustrated the conduct for which Prado was charged in each of the counts that referenced individual victims. The discovery included the WhatsApp messages in which Prado or Wemerson Dutra Aguiar sent the relevant victims' driver's licenses and/or Social Security numbers, which were admitted at trial. *See* Tr. Exs. 12-A, 12-B, 92-A, 92-B, and 92-C (original and translated WhatsApp messages between Prado and Aguiar). It also included Uber's records for the accounts Prado and Aguiar created with these victims' information. *See*, *e.g.*, Tr. Ex. 28 (account creation information, including names and sign-up dates); Tr. Exs. 36, 40, 41, 57 (documents uploaded with the Uber accounts created with the information of Victim 1, Victim 2, Victim 3, and Victim 4). Prado did not have "absolutely no information" to understand who these victims were, as he claims multiple times in his motion (Motion at 2, 3); he had all the critical information to understand the charged counts.[10]

Especially in light of the information in the discovery, the TSI's allegations are more than sufficient to meet the pleading requirements and afford the defense with notice of the charges. *See*, *e.g.*, *United States v. Wells*, 766 F.2d 12, 22 (1st Cir. 1985) ("Viewed in its entirety, an indictment is sufficient if it describes all of the elements of the charged offense using the words of the relevant criminal statute.").

In fact, at least two circuits have held that an indictment charging aggravated identity theft is not constitutionally defective even if it fails to specify the victim of the identity theft. *See United*

---

Motion at 8. Those assertions are irrelevant to this motion. Prado did not represent himself at the trial. As described above, twice before trial, Prado made clear to the Court that he wished to have counsel represent him at trial. At no time did the Court authorize "hybrid representation." *See* 9/18/23 Tr. 13:05-09 (THE COURT: "Mr. Palmer, … you said hybrid representation. I authorized him to file two motions.").

[10] Prado also falsely states in his motion that, "[d]uring the entire trial there was no notice of the victims' identity as the government used the generic terms 'Company A' and 'Victim 1', Victim 2', 'Victim 3', and 'Victim 4'." Motion at 3. From the beginning of the trial, the government identified victims by name during testimony and in the documentary evidence.

14

*States v. Stringer*, 730 F.3d 120, 123-27 (2d Cir. 2013); *United States v. Miller*, 883 F.3d 998, 1002-04 (7th Cir. 2018) (adopting reasoning from *Stringer*). In *Stringer*, the indictment alleged that the defendant "knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, *one and more names*, during and in relation to … the bank fraud charged in Count One of this Indictment." *Stringer*, 730 F.3d at 122 (emphasis added). The indictment at issue in *Miller* alleged that the defendant "knowingly possessed, without lawful authority, means of identification of another person, namely a notebook containing more than 200 names, dates of birth, and Social Security numbers for various persons" during and in relation to mail fraud and bank fraud. *Miller*, 883 F.3d at 1001. In finding that the lack of specific identification of victims did not make the respective indictment insufficient, each court stressed that the indictment contained "limiting detail," including the means by which the defendant committed the offense. *Stringer*, 730 F.3d at 124 (by "creat[ing] counterfeit checks drawn on an account at JP Morgan Chase in Manhattan, which he deposited into fraudulently created accounts at SunTrust Bank in Florida."); *Miller*, 883 F.3d at 1003. Both courts also cited the government's pretrial disclosure to the defense of the names of the victims. *Stringer*, 730 F.3d at 124-25; *Miller*, 883 F.3d at 1003. *C.f. United States v. Tomasetta*, 429 F.2d 978, 979-80 (1st Cir. 1970) (dismissing indictment for failing to name victim of extortion, but cautioning, "what is a fair description of a crime for purposes of permitting an adequate defense necessarily varies with the nature of the offense and the peculiarities of defending against the kind of charge involved.").

By contrast, the TSI gave Prado a greater degree of notice by actually specifying victims, even by alias. The TSI contained "limiting detail" about the conduct charged, including the dates and manner in which the victims' means of identification were transferred or used. *See*, *e.g.*, TSI ¶ 20(i) (describing Prado's sending of Massachusetts driver's licenses, including Victim 3's, to Aguiar on March 4, 2020), ¶ 20(k) (describing Aguiar's sending of Social Security numbers,

15

including Victim 3's, to Prado that same day), and ¶ 23(c) (describing Prado's creation of a driver account using Victim 3's personal information). And, as demonstrated, the government provided the defense with the victims' names through several pretrial disclosures and through discovery. Prado cannot now claim, credibly, that he lacked the notice that the TSI manifestly provides.

### III. Amendments to the TSI for Jury's Deliberations Were Proper

Finally, the government addresses Prado's *pro se* objection in Court on September 18 to the amendment of the TSI to add the victims' names prior to submitting the TSI to the jury.[11]

At the conference on September 18, the Court summarized case law regarding variances—"when the facts proved at trial differ materially from those alleged in the indictment without altering the crime charged"—and constructive amendments—"where the crime charged has been altered, either literally or in effect, without returning the indictment to the grand jury." 9/18/2023 Tr. at 14:15-15:04 (citing *Stirone v. United States*, 361 U.S. 212, 215–16 (1960) and *United States v. Mubayyid*, 658 F.3d 35, 48-50 (1st Cir. 2011)). Under the Presentment Clause of the Fifth Amendment, "after an indictment has been returned[,] its charges may not be broadened through amendment except by the grand jury itself." *Stirone*, 361 U.S. at 215–16. While constructive amendments that broaden the charges are generally impermissible, the Fifth Amendment is not violated by a variance that "narrow[s] the indictment" or "add[s] nothing new to the grand jury's indictment and constitute[s] no broadening[.]" *Mubayyid*, 658 F.3d at 48-50 (citing *United States v. Miller*, 471 U.S. 130, 144 (1985)).

The Court also cited case law in which the First Circuit has "made clear that variances and amendments to an indictment are acceptable so long as they are merely a matter of form." *Id.* at

---

[11] The Motion fails to advance Prado's initial objection to the amendment. Moreover, the Court's September 20, 2023 Order appears to grant Prado leave to file a *pro se* motion only addressing his notice-based due process arguments. However, the government addresses the amendment to the TSI in the event it remains an open issue.

15:05-18 (citing *United States v. Dowdell*, 595 F.3d 50, 67 (1st Cir. 2010) and *Eirby*, 262 F.3d at 37). The First Circuit has "allowed ministerial corrections of clerical errors in names, dates, and citations, so long as the change would not deprive the defendant of notice of the charges against him." *Dowdell*, 595 F.3d at 68 (collecting cases). When an amendment "le[aves] the substance of the charge unaffected, the switch d[oes] not usurp the prerogative of the grand jury." *Id.* (quoting *Eirby*, 262 F. 3d at 38); *see also Williams v. United States*, 179 F.2d 656, 659 (5th Cir. 1950) ("If a defendant is in no sense misled, put to added burdens, or otherwise prejudiced by an amendment, such an amendment ought to be considered and treated as an amendment of form and not of substance, and therefore, allowable, even though unauthorized by the grand jury.").

In this case, the amendments to the TSI plainly fall into the latter category. The amendments neither altered the crimes charged by the grand jury nor varied the government's proof of those crimes. Rather, they de-anonymized the charging instrument to reflect the names of the specific victims who were already the subject of the charges that the grand jury returned, and of the government's evidence of those charges at trial. The TSI charged Prado with wire fraud and aggravated identity theft involving specific, non-fungible victims. While the use of aliases for the victims in the TSI was intentional, the substitution of the real names in the TSI provided to the jury had the same, or even less, consequence as a ministerial correction. They clarified for the jury which individuals corresponded to the specific counts without at all altering the grand jury's determinations or the government's trial evidence. *C.f. Williams*, 179 F.2d at 659 ("amendment of the indictment by inserting the name 'Dania Supply Company, a corporation, doing business as Lindsley Lumber Co.' in lieu of the words 'Lindsley Lumber Co., a corporation', was without the slightest prejudice to the appellant."); *United States v. Rivera-Ruiz*, 244 F.3d 263, 271 (1st Cir. 2001) (finding permissible amendments to the indictment that corrected transposed references to "UCC No. 1" and "UCC No. 2"). As addressed above, the defense already had notice of the

specific names that corresponded to the aliases in the original TSI. Amending the TSI to reflect those names did not change the charges and did not prejudice Prado.

## CONCLUSION

For the reasons stated above, the defendant's motion for judgment of acquittal and dismissal of the indictment should be denied, and the jury's verdict finding him guilty of all charges should be upheld.

Respectfully submitted,

ZACHARY A. CUNHA
United States Attorney
Acting Under Authority
Conferred by 28 U.S.C. § 515

By: /s/ *David M. Holcomb*
DAVID M. HOLCOMB
KRISS BASIL
Assistant United States Attorneys
U.S. Attorney's Office
District of Massachusetts

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                  */s/ David M. Holcomb*
                                                  DAVID M. HOLCOMB
                                                  Assistant U.S. Attorney