UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 21-10158-MLW |
| | ) | |
| THIAGO DE SOUZA PRADO, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

WOLF, D.J. October 27, 2023

I. SUMMARY

On September 19, 2023, following a jury trial at which he was represented by counsel, Thiago De Souza Prado was convicted on three counts of Aggravated Identity Theft (18 U.S.C. §1028A(a)(1) and (2)), three counts of Wire Fraud (18 U.S.C. §1343), and one count of Conspiracy to Commit Wire Fraud (18 U.S.C. §1349). Clerk's Note (Dkt. No. 1148); Jury Verdict (Dkt. No. 1149). Prado now moves pro se for acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29"). See Prado Rule 29 Motion for Acquittal ("Prado Mot."; Dkt. No. 1163).

Prado argues that the Third Superseding Indictment ("TSI"; Dkt. No. 1038), which used aliases (e.g., "Victim 1") in place of victims' names, insufficiently apprised him of the charges against him, in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. See Prado Mot. at 1. The government argues in opposition that Prado's motion is untimely, that Prado was notified of the victims' identities

through counsel, and that the victims were adequately identified through the TSI's factual allegations and discovery materials provided by the government. Government Motion in Opposition ("Gov't Opp."; Dkt. No. 1177). Prado has also filed a motion for leave to file a response and to request oral argument (Dkt. No. 1168) and a reply to the government's opposition (Dkt. No. 1178).

For the reasons stated below, the court finds Prado's motion for acquittal, which is actually a motion to dismiss, unmeritorious. Although the court would ordinarily agree with the government's argument that Prado's motion should be dismissed on the grounds that it is untimely, the court told Prado that he could file his motion without considering the issue of timelines. Therefore, it is most appropriate to decide it on the merits. Prado's motion nevertheless fails on the merits for three reasons. First, the government provided Prado's counsel, John F. Palmer, with actual notice of the victims' identities. Mr. Palmer's notice is imputed to his client. Second, the TSI's factual allegations were sufficiently specific to give Prado constructive notice of the victims' names, which were included in discovery provided by the government. Finally, even if this court were to find the TSI deficient, Prado has not demonstrated that he was prejudiced by this deficiency.

The court finds the government's statement of the relevant facts and procedural history to be thorough and correct. See Gov't

Opp. at 1-8. It is, therefore, incorporated in this Memorandum. Certain facts are referenced as necessary in the legal analysis below.

## II. DISCUSSION

### A. Legal Standards

Under Rule 29, a defendant may move - after the close of the government's case or after all evidence has been submitted - for acquittal on the grounds that the evidence offered is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). In resolving a Rule 29 motion, the court must "'scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.'" United States v. Merlino, 592 F.3d 22, 29 (1st Cir. 2010) (quoting United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995)). A defendant is only entitled to acquittal if the evidence "could not have persuaded any trier of fact of the defendant's guilt." United States v. Bristol-Martir, 570 F.3d 29, 38 (1st Cir. 2009).

Although Prado's motion is styled as a Rule 29 motion for acquittal, he does not argue that the evidence introduced at trial is insufficient to sustain his conviction. Instead, Prado argues that the TSI provided him with insufficient notice of the charges against him, thus impeding his ability to adequately prepare for

trial in violation of his rights to Due Process and notice of the charges against him under the Fifth and Sixth Amendments. Prado Mot. at 1. Put differently, Prado challenges the sufficiency of the indictment, not the sufficiency of the evidence introduced against him at trial.

As the government argues, a challenge to the sufficiency of an indictment is properly brought under Federal Rule of Criminal Procedure 12 ("Rule 12"), rather than Rule 29. Gov't Opp. at 8-9. Under Rule 12, a motion to dismiss for "a defect in the indictment or information" should ordinarily be filed prior to the start of trial. Fed. R. Crim. P. 12(b)(3)(C). The court may consider an otherwise untimely Rule 12 motion, however, if the moving party shows good cause. Fed. R. Crim. P. 12(c)(3).

Under Federal Rule of Criminal Procedure 7 ("Rule 7"), an indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "In general, an indictment is sufficient if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy." United States v. Eirby, 262 F.3d 31, 38 (1st Cir. 2001) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)); see also United States v. Stringer, 730 F.3d 120, 124 (2d. Cir. 2013). Even if an indictment is deficient, however, a conviction will not

be reversed unless the defendant was prejudiced by the deficiency. See United States v. Yefsky, 994 F.2d 885, 894 (1st Cir. 1993); United States v. Brown, 295 F.3d 152, 155 (1st Cir. 2002); Stringer, 730 F.3d at 124.

B. Analysis

Prado claims that he was deprived of his right to Due Process and notice of the charges against him because the TSI did not identify the alleged victims by name. See Prado Mot. at 5. The government argues that Prado's motion fails for two reasons: (1) it is untimely under Rule 12 and (2) the indictment was sufficiently specific because the government disclosed the victims' names to Prado's counsel, the victims' names were included in automatic discovery, and the TSI's factual allegations put Prado on notice of the victims' identities. Gov't Opp. at 10, 12.

The court is not dismissing Prado's motion on the grounds that it is untimely under Rule 12. On September 19, 2023, after denying a pre-verdict Rule 29 motion filed by Prado's counsel, Clerk's Note (Dkt. No. 1148), this court gave Prado leave to file pro se a renewed Rule 29 motion "concerning his objection that the [TSI] . . . not including the victims' names violated his due process rights," Sept. 20, 2023 Order (Dkt. No. 1151). In granting Prado leave to file, the court acknowledged that Prado's proposed motion was "essentially a motion to dismiss" rather than a Rule 29 motion. 9/19/23 Tr. 72:15-73:3. Although the court did not consider

the timelines before informing Prado that he could file his motion, and although there is not good cause for the late filing of it, the court is deciding Prado's motion on the merits.

As indicated earlier, Prado's motion fails on the merits for three reasons. First, Prado's attorney had actual notice of the victims' identities, and clients are presumed to have notice of all facts of which their attorneys have notice. See Link v. Wabash R. Co., 370 U.S. 626, 634 (1962). Second, Prado had constructive notice of the victims' names, which were included in discovery provided by the government, through the TSI's specific factual allegations concerning each victim. Third, even if this court were to find the TSI deficient, Prado has not demonstrated that he was prejudiced, as required of defendants seeking to overturn their conviction on the ground that the indictment was constitutionally deficient.

1. Prado had sufficient notice of the identities of the victims in the TSI and of the charges against him.

   a. Prado had actual notice of the victims' identities through his attorney.

In an attorney-client relationship, the attorney functions as the client's agent. See Link, 370 U.S. at 634. Prado is, therefore, "considered to have 'notice of all facts, notice of which can be charged upon [his attorney].'" Id. (quoting Smith v. Ayer, 101 U.S. 320, 326 (1879)).

Prado was represented by Mr. Palmer from January 17, 2023, through the end of the trial on September 19, 2023. See Jan. 18, 2023 Order (Dkt. No. 658) (appointing Mr. Palmer as Prado's attorney). This fact is fatal to Prado's claim that he lacked notice of the identity of the victims named in the TSI, which the grand jury returned on June 27, 2023 (Dkt. No. 1038). While the court granted Prado leave to file certain pretrial motions pro se, see, e.g., Aug. 3, 2023 Order (Dkt. No. 1089), this did not disturb Mr. Palmer's role as Prado's counsel during this period. Prado did not represent himself at trial. Mr. Palmer did.

Prado does not dispute that Mr. Palmer was told by the government the names of the victims listed in the TSI by July 2023. See 9/18/23 Tr. 13:18-25 (Mr. Palmer stating that he had notice of the victims' identities); Basil Aff. ¶¶2, 4, 6 (Dkt. No. 1177-1); Holcomb Aff. ¶4 (Dkt. No. 1177-2); Prado Aff. ¶15 (Dkt. No. 1163-1 (acknowledging that Mr. Palmer had notice). Indeed, the government provided Mr. Palmer with this notice within days of the grand jury returning the TSI on June 27, 2023. Compare TSI (Dkt. No. 1038) (returned by the grand jury on June 27, 2023) with Basil Aff. ¶4 (stating that he informed Mr. Palmer of the victims' identities "on a date [Mr. Basil] cannot specify before July 7, 2023, but which [he] believe[s] to be June 30, 2023"). Prado instead argues that his conviction must be overturned because he claims he did not personally receive notice of the victims'

identities until September 18, 2023 - the day before trial ended. Prado Aff. ¶12. The date on which Prado personally received actual notice of the victims' identities is not material, however, because Mr. Palmer's knowledge of their identity is imputed to Prado. See Link, 370 U.S. at 634.

Moreover, Prado's conduct during this litigation calls into question the credibility of his claim that his efforts to determine the victims' identities were stymied because Mr. Palmer did not provide that information in response to Prado's requests for it.[1] See Prado Aff. ¶¶8-12 (Dkt. No. 1163-1). Prado claims that he "began asking [his] attorney, Mr. Palmer, for discovery or any other information to help [him] identify the alleged victims" from "the moment [he] was provided with the TSI" in July 2023. Id. ¶8 (emphasis added). Yet, Prado did not raise this issue with either the government or the court at any time prior to trial or during the government's presentation of its case. See Gov't Opp. at 10.

Prado only complained that the TSI was deficient after the court ordered the government on September 14, 2023 to insert the victims' names into the form of the TSI that would be provided to

[1] As explained below with regard to Prado's possible implicit claim of ineffective assistance of counsel, if the credibility of Prado's contention that Mr. Palmer did not tell him the names of the alleged victims, despite Prado's requests, were material, the court would order Mr. Palmer to file an affidavit and resolve any disputes. However, as explained in this Memorandum and Order, that issue is not material and, therefore, the court is not prolonging this already protracted case to address it.

the jury. 9/14/23 Draft Tr. 10:19-11:3; see also 9/18/23 Tr. at 10:16-20 (Prado informing the court that he did not start thinking about the issue of "fair notice" until the court issued this order). The court ordered the government to make these changes to facilitate the jury's deliberations, not because the court believed the indictment to be constitutionally deficient. 9/14/23 Draft Tr. 10:19-11:3.

Prado's own actions belie his claim that he did not start considering the issue of "fair notice" until the court ordered the government to submit a revised TSI on September 14, 2023. On January 3, 2022, while representing himself, Prado filed pro se a motion to dismiss a charge of Aggravated Identity Theft in the Second Superseding Indictment ("SSI") on the grounds that it "fail[ed] to inform [Prado] of his nature [sic] of charges that results to a clear violation of his Due Process rights to a fair notice." Prado Mot. to Dismiss SSI at 2 (Dkt. No. 270). Prado argued that the court should dismiss the charge because, among other reasons, the SSI failed "to identify the name of the Victim(s)." Id. at 3.

In response, the government argued that the SSI included the last four digits of each victim's driver's license number, with which Prado could have discerned each victim's full name from the automatic discovery documents provided to him. Gov't Opposition to Prado's Mot. to Dismiss SSI (Dkt. No. 286). On February 1, 2022,

the court denied Prado's motion "essentially for the reasons stated by the government." Order (Dkt. No. 296).

Prado's current contention is virtually identical to the argument he advanced in his January 2022 motion. See 9/19/23 Tr. 73:8-10 (court informing Prado, after allowing him leave to file a renewed pro se Rule 29 motion, "[t]his is essentially a reiteration of a motion that you made pro se before and that I denied"). As a result, there is no explanation for why Prado claims he did not start thinking about the issue of "fair notice" until his trial was already underway.

The credibility of this contention is further undermined by the fact that Prado filed a pro se motion to dismiss the TSI on August 2, 2023, as allowed by the court, despite the fact that Prado was represented by counsel. See Aug. 3, 2023 Order (Dkt. No. 1089) (granting Prado leave to file pro se motions); Prado Mot. to Dismiss TSI (Dkt. No. 1088); see also Sep. 7, 2023 Order (Dkt. No. 1126) (denying Prado's motion). In that motion, Prado argued that the TSI should be dismissed under Rule 12 for failure to state an offense. See id. Yet, he failed to argue that it provided deficient notice, despite now claiming that he began struggling to identify the victims in the TSI in late-July 2023. Prado Aff. ¶8.

b. Prado had constructive notice of the victims' identities through the TSI's specific factual allegations and discovery provided by the government.

Prado also had constructive notice of the victims' identities. The TSI alleged the dates on which Prado committed each offense, the co-defendants with whom he conspired, and pertinent texts and financial transactions that were associated with each charge. With this information, Prado and his counsel were sufficiently well-informed to identify the victims' names in the discovery materials provided by the government.[2] The TSI thus "fairly apprise[d]" Prado of the charges against him and "allow[ed] him to contest [them] without fear of double jeopardy." Eirby, 262 F.3d at 38.

For example, the TSI charged Prado with committing Wire Fraud and Aggravated Identity Theft by using Victim 2's identity. TSI

[2] Prado states that he had insufficient time to review discovery materials because he was detained before trial. Prado Aff. ¶¶8-10. This might have been an issue had Prado represented himself pro se throughout this case. See United States v. Bisong, 645 F.3d 384, 396 (D.C. Cir. 2011) (noting that "[e]ven assuming that pro se defendants have a Sixth Amendment right to discovery in preparing their defense," they cannot prevail on a constitutional challenge absent a showing of prejudice). However, as explained earlier, Prado was represented by Mr. Palmer, who did have ample time and resources to review all discovery materials. See Jan. 18, 2023 Order (Dkt. No. 658); May 26, 2023 Order (Dkt. No. 1014) (authorizing Mr. Palmer's ex parte motion for funds to retain up to 150 hours of expert assistance in reviewing discovery materials and preparing for trial).

¶¶29-32. Although the TSI did not provide Victim 2's name, it alleged that: (1) Prado sent Wemerson Dutra Aguiar, one of his co-defendants, Victim 2's driver's license on or about February 23, 2020, TSI ¶¶20(e), 32; (2) on the same day, Aguiar sent Prado Victim 2's social security number, id. ¶20(g); and (3) on February 26, 2020, Prado fraudulently created a rideshare account using Victim 2's identity, id. ¶30. In addition, the government provided Mr. Palmer with a witness list that included each alleged victim in the TSI on July 27, 2023. Basil Aff. ¶5; Holcomb Aff. ¶3.[3] Prado does not dispute that the victims' names were included in discovery materials. Nor does he allege that his attorney was unable to identify the discovery documents corresponding to each victim in the TSI. Consequently, the TSI's factual allegations were sufficient to put Prado on notice of the charges against him and protect him against double jeopardy. See Eirby, 262 F.3d at 38.

This case is analogous to United States v. Stringer, 730 F.3d 120 (2d Cir. 2013). Like Prado, Stringer argued that an indictment charging him with Aggravated Identity Theft was constitutionally deficient because it alleged that he used "one and [sic] more names" in carrying out his scheme. Id. at 122. The Second Circuit rejected this contention. Id. at 124. As in this case, the Stringer

[3] The government provided Mr. Palmer with revised witness lists in the weeks leading up to trial. See Basil Aff. ¶¶8, 11; Holcomb Aff. ¶¶6, 9.

indictment did not identify the alleged victims by name, but it provided "substantial additional detail" about Stringer's alleged crimes (e.g., by listing the banks used in his scheme) and the government's pretrial disclosures included the victims' names. Id. at 124. Consequently, the Second Circuit held that it was "beyond question that [the defendant] was sufficiently informed to defend against the charges and to be protected against the risk of double jeopardy." Id.

Similarly, in this case the TSI and discovery provided by the government sufficiently apprised Prado of the charges against him and protected him against double jeopardy. See also United States v. Miller, 883 F.3d 998, 1003 (7th Cir. 2018) (citing Stringer in holding that an indictment alleging mail fraud and aggravated identity theft was sufficient, despite not including the victims' names, because it contained other limiting details and because the victims' names were included in pretrial disclosures).

c. Prado was not prejudiced.

Even if the TSI were deficient, Prado has failed to show that he suffered the prejudice necessary to warrant reversing the jury's verdict. See Yefsky, 994 F.2d at 894. As the Second Circuit said in Stringer, "[w]hen the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, this court has repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for

lack of specificity." 730 F.3d at 124 (internal quotations omitted). Prado was not prejudiced by the fact that the TSI did not include the names of the victims for two reasons.

First, as explained earlier, Prado's counsel received actual notice of the victims' identities, and Prado had at least constructive notice of them. A First Circuit case, Yefsky, is instructive here. In Yefsky, the First Circuit affirmed a defendant's conspiracy conviction despite concluding that the indictment was defective because it failed to specify the "ultimate underlying offense." Id. at 893. The court reasoned that although the indictment was defective, the defendant "received ample notice before trial of the facts underlying it," including through discovery provided by the government. Id. at 894. The defendant "thus had ample opportunity to rebut the government's charges." Id. Similarly, in this case, in addition to the TSI's detailed factual allegations, the government informed Mr. Palmer of the victims' identities, and it included the victims' full names and other relevant information in the discovery materials that it provided to Prado and Mr. Palmer. In light of this, Prado has failed to show that he was prejudiced by the TSI's alleged defects.

Second, as the court acknowledged after the jury's verdict was read, the government introduced "overwhelming" evidence of Prado's guilt at trial. 9/19/23 Tr. 74:6-7 ("I think the evidence was overwhelming that the defendant was guilty . . . ."). For

example, the government presented evidence of WhatsApp messages between Prado and his coconspirators in which they exchanged victims' driver's licenses and social security numbers, Tr. Exs. 12-A, 12-B, 92-A, 92-B, 92-C, as well as Uber records of accounts created by Prado with victims' information, Tr. Exs. 28, 36, 40, 41, 57. In addition, one of Prado's co-defendants, Flavio Da Silva, testified for two days and provided detailed testimony concerning Prado's criminal conduct, which was corroborated by the government's documentary evidence. See Clerk's Notes (Dkt. Nos. 1138, 1140).

Prado does not argue that he would have been able to effectively challenge the witnesses' testimony and voluminous documentary evidence against him if the victims' names had been included in the indictment. See Prado Mot. at 9 (merely arguing, incorrectly, that the allegedly deficient indictment "is a structural error that warrants per se reversal of the verdict"); Prado Aff. ¶¶7-10 (Prado stating that he personally could not discern the victims' identities, but not stating how he would have presented a different or more successful defense if he had known their identities).

In essence, Prado has not identified a single specific way in which he was allegedly prejudiced because the TSI did not include the victims' names. Therefore, even assuming without finding that the TSI were deficient, Prado has failed to show that the TSI's

alleged deficiencies were prejudicial, as required to justify disturbing the jury's verdict in this case. See Yefsky, 994 F.2d at 894.

2. Prado was not deprived of effective assistance of counsel.

Prado does not explicitly claim that Mr. Palmer's representation of him was deficient and that he was denied effective assistance of counsel. However, as Prado has filed the motion to dismiss pro se, his pleadings must be liberally construed. See Gilday v. Boone, 657 F.2d 1, 2 (1st Cir. 1981). In assuming that Mr. Palmer did not provide Prado the identities of the alleged victims in the TSI, Prado may be implicitly Raising a claim of ineffective assistance of counsel. Indeed, in his Reply, Prado states in a footnote that he is not waiving any claim to ineffective assistance. See Prado Reply at 5 n.2 (Dkt. No. 1178). If Prado is indeed raising such a claim, it is unmeritorious.

"To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [a movant] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687); see Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). "The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). "[T]here is no reason for a court deciding an ineffective

assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

"In order to satisfy the 'deficient performance' prong, [a movant] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" Peralta, 597 F.3d at 79 (quoting Strickland, 466 U.S. at 688). The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

As to the second prong, "[u]nder Strickland, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Porter v. McCollum, 558 U.S. 30, 40 (2009) (quoting Strickland, 446 U.S. at 694).

As explained earlier, there are many reasons to doubt that Prado asked Mr. Palmer for the identities of the alleged victims in the TSI and that Mr. Palmer did not provide Prado with the requested information. In making this claim, Prado has waived the

attorney-client privilege. See, e.g., Bittaker v. Woodford, 531 F.3d 715, 716 (9th Cir. 2003). The court could order Mr. Palmer to file an affidavit addressing this issue, but that would, again, only prolong this protracted 18-defendant case. As the Supreme Court has written, "[i]f it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which [it] expect[s] will often be so, that course should be followed. Strickland, 466 U.S. at 697.

This is such a case. Prado has not alleged, let alone provided evidence to prove, prejudice. Nor has he specified how his defense might have differed if he, in addition to Mr. Palmer, knew the identities of the victims. In any event, as the court said in denying Prado's Rule 29 motion following the verdict, the evidence against him was "overwhelming." 9/19/23 Tr. 74:6-7. Among other things, it consisted of voluminous evidence of texts with Prado's own statements, and the testimony of his co-defendant, Da Silva, who corroborated those statements. Prado has not proven that there is a reasonable possibility that the result of the trial would have been different if Mr. Palmer had told him the identities of the alleged victims. That alone is fatal to any claim of ineffective assistance of counsel.

However, in the interest of completeness, the court reiterates that Mr. Palmer did excellent work in a very difficult case to defend. As the court said at the conclusion of the trial:

> Mr. Palmer, despite the result, did a very good job. It's a difficult case. Your client had every right to go to trial and I think you brought your experience, your commitment, your skill to the task, and I think the evidence was overwhelming that the defendant was guilty and given what you had to work with, you sort of acknowledged what, I think, was well within the scope of professionally reasonable conduct and, . . . argued largely that if Mr. Prado committed any crime, it wasn't the crime charged in the indictment. That was a very reasonable thing to do in view of the evidence.

9/19/23 Tr. 74:3-13.

III. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Prado's motion for leave to file a reply is ALLOWED, but his motion for oral argument is DENIED (Dkt. No. 1168).

2. Prado's motion for acquittal under Rule 29 (Dkt. No. 1163) is DENIED.

UNITED STATES DISTRICT JUDGE